Lauren M. Hausman (CA Bar No. 349514)
**COPYCAT LEGAL PLLC**
113 N San Vicente Blvd
Suite 232
Beverly Hills, CA 90211
T: (877) 437-6228
E: lauren@copycatlegal.com

Jonathan Alejandrino, *pro hac vice*
**COPYCAT LEGAL PLLC**
3111 North University Drive
Suite 301
Coral Springs, FL 33065
T: (877) 437-6228
E: jonathan@copycatlegal.com

Attorneys for Plaintiff
Michael Grecco Productions, Inc.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL GRECCO PRODUCTIONS, INC., | Civil Action No. 2:24-cv-04837-FLA-MAR |
| Plaintiff, | **PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | **(OPPOSED)** |
| TIKTOK, INC., | DATE: September 26, 2025 |
| Defendant. | TIME: 1:30 P.M. |
| | JUDGE: Fernando L. Aenlle-Rocha |

## <u>TABLE OF CONTENTS</u>

**<u>INTRODUCTION</u>**.................................................................................**5**

**<u>ARGUMENT</u>** ....................................................................................**6**

    **I. Legal Standard** ........................................................................**6**

    **II. Plaintiff's Takedown Notices Complied with the DMCA** .................**7**

    **III. Defendant Failed to Comply with the Requirement of the DMCA 8**

    **IV. Plaintiff is Entitled to Partial Summary Judgment on its Claim of**
    **Secondary Liability for Copyright Infringement** ...............................**14**
        A. Elements of Copyright Infringement................................. 14
            **a)  Ownership of a Valid Copyright** ........................ 14
            **b)  Copying of Constituent Elements** ...................... 19
            **c)  Defendant's Affirmative Defense – Fair Use** ........ 20
        B. Defendant Committed Contributory Infringement ........................... 24
            **a)  Defendant had Knowledge** ................................ 25
            **b)  Simple Measures** ............................................. 29
            **c)  Defendant Materially Contributed** ...................... 30

**<u>CONCLUSION</u>** .................................................................................**32**

**<u>LOCAL RULE 7.3 CERTIFICATE</u>** ...................................................**33**

COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

# TABLE OF AUTHORITIES

**Cases**

A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004 (9th Cir. 2001).......14, 26, 32

Als Scan v. Cloudflare, Inc., No. CV 16-5051-GW (AFMx) (C.D. Cal. Mar. 30, 2018)................................................................................................30

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)...........................................7

Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith, 598 U.S. 508 (2023) ................................................................................................21

Aquarian Found., Inc. v. Lowndes, 127 F.4th 814 (9th Cir. 2025) ......................15

BackGrid USA, Inc. v. Twitter, Inc., No. CV 22-9462-DMG (ADSx) (C.D. Cal. June 7, 2024) ................................................................................31

Bibbero Sys, Inc. v. Colwell Sys., Inc., 893 F.2d 1104 (9th Cir. 1990)...............15

BMG Rts. Mgmt. (United States) LLC v. Joyy Inc., 716 F. Supp. 3d 835 (C.D. Cal. 2024) .........................................................................................32, 33

Brighton Collectibles, Inc. v. RK Tex. Leather Mfg., No. 10-CV-419-GPC (WVG) (S.D. Cal. Dec. 13, 2012).....................................................16

Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569 (1994) .................................24

Celotex Corp. v. Catrett, 477 U.S. 317 (1986). .................................................6, 7

Changing World Films, LLC v. Parker, No. CV 22-9021-DMG (PVCx), 2025 U.S. Dist. LEXIS 5464 (C.D. Cal. Jan. 10, 2025) ...................................7

Dr. Seuss Enters., L.P. v. ComicMix LLC, 256 F. Supp. 3d 1099 (S.D. Cal. 2017) ................................................................................................22

Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc., 109 F.3d 1394 (9th Cir. 1997).................................................................................................23

Edge Sys. LLC v. Ageless Serums LLC, No. 2:20-cv-09669-FLA (PVCx), 2023 U.S. Dist. LEXIS 53267 (C.D. Cal. Mar. 28, 2023)...............................7

Ellison v. Robertson, 357 F.3d 1072 (9th Cir. 2004) .........................9, 26, 27, 31

Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340 (1991) .................15, 18

Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259 (9th Cir. 1996) ..................25

JCW Investments, Inc. v. Novelty, Inc., 482 F.3d 910 (7th Cir. 2007)...............18

Kim v. Shein Distribution Corp., No. CV 23-8251-GW-JCx, (C.D. Cal. May 17, 2024)................................................................................................20

Lenz v. Universal Music Corp., 815 F.3d 1145 (9th Cir. 2016)................8, 11, 12

Lifetime Homes, Inc. v. Residential Dev. Corp., 510 F. Supp. 2d 794 (M.D. Fla. 2007)................................................................................................16

Luvdarts, LLC v. AT & T Mobility, LLC, 710 F.3d 1068 (9th Cir. 2013)....25, 26

COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

Madaluxe Grp., LLC v. Kok Han Wee, No. 8:22-cv-01926-WLH-KES, 2025 LX 285640 (C.D. Cal. June 10, 2025) ........................................................ 20

Mattel Inc. v. Walking Mt. Prods., 353 F.3d 792 (9th Cir. 2003) ................. 22, 23

Maui Jim v. Smartbuy Guru Enters., 459 F. Supp. 3d 1058 (N.D. Ill. 2020) ...... 19

Menjivar v. JVCKenwood USA Holdings, Inc., No. CV 24-0448-CBM(AJRx), 2024 U.S. Dist. LEXIS 71349 (C.D. Cal. Apr. 17, 2024) ................................ 15

Nat'l Ass'n of Optometrists & Opticians v. Harris, 682 F.3d 1144 (9th Cir. 2012) ................................................................................................................. 7

Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146 (9th Cir. 2007) ................ 26

Perfect 10, Inc. v. Giganews, Inc., 847 F.3d 657 (9th Cir. 2017) ........................ 30

Rentmeester v. Nike, Inc., 883 F.3d 1111 (9th Cir. 2018) .................................. 20

Robinson v. Binello, 771 F. Supp. 3d 1114 (N.D. Cal. 2025) ..................... 25, 26

Seltzer v. Green Day, Inc., 725 F.3d 1170 (9th Cir. 2013) ................................. 24

Southall v. Force Partners, LLC, No. 1:20-cv-03223, 2021 U.S. Dist. LEXIS 164680 (N.D. Ill. Aug. 31, 2021) ................................................................. 17

Stross v. Twitter, Inc., No. 2:21-cv-8360-SVW (C.D. Cal. Feb. 28, 2022) ......... 30

UMG Recordings, Inc. v. Shelter Capital Partners Ltd. Liab. Co., 718 F.3d 1006 (9th Cir. 2013) .................................................................................... 9, 32

Ventura Content, Ltd. v. Motherless, Inc., 885 F.3d 597 (9th Cir. 2018) ............ 32

Von Der Au v. Michael G. Imber, Architect, PLLC, No. SA-20-CV-00360-XR, 2021 U.S. Dist. LEXIS 55298 (W.D. Tex. Mar. 24, 2021) ............................... 22

**Statutes**

17 U.S.C. § 512 (LexisNexis, Lexis Advance through Public Law 119-20, approved June 20, 2025) ............................................................................... 10

17 U.S.C. § 512(c)(3)(A) ...................................................................................... 8

17 U.S.C. § 512(f) ................................................................................................. 8

17 U.S.C. § 512(g)(1)–(2) .................................................................................. 11

17 U.S.C. § 512(g)(2)(B)–(C) ............................................................................ 12

17 U.S.C. § 512(g)(3)(C) .................................................................................... 12

Fed. R. Civ. P. 56(a) ............................................................................................. 6

**Other Authorities**

4 Nimmer on Copyright § 13.05 (2025) ............................................................. 24

COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

Plaintiff hereby moves for entry of partial summary judgment against defendant TikTok, Inc. ("Defendant"), and states as follows:

## INTRODUCTION

The Digital Millenium Copyright Act ("DMCA") removal process is a straightforward one: a notice is sent, the content is removed, the user is notified, and an opportunity is given for counter-notice. Despite the DMCA providing a one-track line, Defendant made itself the conductor and derailed clear procedure. Plaintiff abided by the law to police and protect its property, while Defendant determined it was appropriate to insert itself as the arbiter of fair use and opted to not remove infringing content.

The law is clear: Defendant was not and is not afforded the right to make these types of determinations—and certainly not *months* after DMCA notices are sent as Defendant did here. The DMCA requires service providers, such as Defendant, to adhere to strict guidelines upon notice of infringing content on its platform. Defendant cannot have its cake and eat it too. After shirking its responsibilities under the DMCA, Defendant now expects this Court to allow it to avail itself to the safe harbor protection under the very statute it has defied. The Court should decline to do so.

# ARGUMENT

## I.    Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Material facts are those that may affect the outcome of the case." See Changing World Films, LLC v. Parker, No. CV 22-9021-DMG (PVCx), 2025 U.S. Dist. LEXIS 5464, at *5–6 (C.D. Cal. Jan. 10, 2025) (referencing Nat'l Ass'n of Optometrists & Opticians v. Harris, 682 F.3d 1144, 1147 (9th Cir. 2012)). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmovant." Edge Sys. LLC v. Ageless Serums LLC, No. 2:20-cv-09669-FLA (PVCx), 2023 U.S. Dist. LEXIS 53267, at *6 (C.D. Cal. Mar. 28, 2023) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

"The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment." Edge Sys. LLC v. Ageless Serums LLC, No. 2:20-cv-09669-FLA (PVCx), 2023 U.S. Dist. LEXIS 53267, at *5–6 (C.D. Cal. Mar. 28, 2023). "If the moving party meets its initial burden, the opposing party must then set out specific

COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

facts showing a genuine issue for trial to defeat the motion." <u>Id</u>. at 6. "Summary judgment must be granted for the moving party if the nonmoving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Id</u>. (quoting <u>Celotex</u>, 477 U.S. at 322).

## II.    Plaintiff's Takedown Notices Complied with the DMCA

A service provider's expeditious removal must follow the receipt of a takedown notification from a copyright holder. "Section 512(c)(3)(A) sets forth the elements that such a 'takedown notification' must contain. These elements include identification of the copyrighted work, identification of the allegedly infringing material, and, critically, a statement that the copyright holder believes in good faith the infringing material 'is not authorized by the copyright owner, its agent, or the law." <u>Lenz v. Universal Music Corp.</u>, 815 F.3d 1145 (9th Cir. 2016) (quoting 17 U.S.C. § 512(c)(3)(A)).

In this case, Plaintiff sent twenty-five (25) takedown notices to Defendant via its designated DMCA email address: copyright@tiktok.com.[1] Each takedown

---

[1] See the August 22, 2025 Declaration of Jonathan Alejandrino (the "<u>Alejandrino Decl.</u>"), at ¶ 3, Exhibit A, at Boutros Tr. at 47:9-47:17; 53:13-53:17; 56:16-56:21; 57:14-57:19; 59:9-59:14; 60:5-60:9; 61:1-61:5; 62:6-62:11; 69:15-69:21; 70:18-70:23; 71:16-71:21; 72:16-72:20; 73:12-73:16; 74:10-74:14; 75:7-75:11; 76:4-76:8; 76:24-77:3; 77:22-77:25; 78:16-78:20; 79:8-79:13; 80:6-80:10; 81:3-81:7; 81:25-82:4; 82:22-83:2; See the August 22, 2025 Declaration of Michael Grecco (the "<u>Grecco Decl.</u>"), at ¶ 35.

COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

notice contained the required information, including the identity of the copyrighted work, the location of the infringing material, and a statement of good faith.[2] Further, as required by 17 U.S.C. § 512(f), prior to each take-down notice being sent to Defendant, Plaintiff (or an agent authorized to act on behalf of Plaintiff) subjectively considered whether Defendant's user's use of each photograph was fair use.[3] Plaintiff and/or the agent authorized to act on Plaintiff's behalf determined that each unauthorized use would not qualify as fair use.[4] ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████.[5] Moreover, Defendant admitted that it received Plaintiff's takedown notices.[6] Thus, the burden shifted and obligated Defendant to take the next steps as required by the DMCA.

### III.    Defendant Failed to Comply with the Requirement of the DMCA

"Difficult and controversial questions of copyright liability in the online world prompted Congress to enact Title II of the DMCA, the Online Copyright Infringement Liability Limitation Act (OCILLA)." <u>Ellison v. Robertson</u>, 357 F.3d

---

[2] <u>Grecco Decl.</u>, at ¶ 36.

[3] <u>Id.</u>, at ¶ 37.

[4] <u>Id</u>.

[5] <u>Alejandrino Decl.</u>, at ¶ 3, Exhibit A, at Boutros Tr. at 44:11-44:21.

[6] <u>Id.</u>, at ¶ 5, Exhibit C, No. 9-13.

COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

1072, 1076 (9th Cir. 2004). "To that end, OCILLA created four safe harbors that preclude imposing monetary liability on service providers for copyright infringement that occurs as a result of specified activities." UMG Recordings, Inc. v. Shelter Capital Partners Ltd. Liab. Co., 718 F.3d 1006, 1014 (9th Cir. 2013). For a "service provider" like Defendant to be protected under the safe harbor of § 512(c), there are numerous requirements Defendant must have met (that it did not). In relevant part, the statute provides that:

> c) Information residing on systems or networks at direction of users. —
> (1) In general. — A service provider shall not be liable for monetary relief, or, except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider, if the service provider —
> (A)
>> (i) does not have actual knowledge that the material or an activity using the material on the system or network is infringing;
>> (ii) in the absence of such actual knowledge, is not aware of facts or circumstances from which infringing activity is apparent; or
>> (iii) **upon obtaining such knowledge or awareness, acts expeditiously to remove, or disable access to, the material**

17 U.S.C. § 512 (LexisNexis, Lexis Advance through Public Law 119-20, approved June 20, 2025) (emphasis added).

COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

1 ████████████████████████████████████████████

2 ████████████████.[7] Defendant admits that it did not remove the infringing

3 material for at least a year.[8] In other words, ██████████████, it failed

4 to expeditiously remove the infringing material. Even more appalling, Defendant

5 did not remove *any* of the infringing material after receipt of the takedown notices.

6 As of the submission of this motion, Defendant did not remove any unauthorized

7 display of the Work (as identified in Plaintiff's DMCA Takedown Notices) as a

8 result of the DMCA Takedown Notices.[9] Defendant testified that eight

9 infringements identified in Plaintiff's DMCA Takedown Notices are no longer

10 displayed.[10] However, Defendant *admits* that it is not the one who removed seven

11 (7) of the eight (8) infringing materials.[11] Moreover, the one that *was* removed by

12 Defendant was done so for an unrelated reason.[12] Without reservation, there is no

13 doubt that Defendant had knowledge or awareness of the infringements and

14 ***deliberately*** chose not to remove the infringements at all—let alone

15 expeditiously—as required by law.

16

17

---

[7] Id. at ¶ 3, Exhibit A, at Boutros Tr. at 17:8-17:15.

18 [8] Id. at ¶ 5, Exhibit C, No. 9-13.

[9] Id. at ¶ 3, Exhibit A, at Boutros Tr. at 126:23-127:8; 58:12-58:25; 67:6-67:13

19 [10] Id. at ¶ 3, Exhibit A, at Boutros Tr. at 58:12-22.

[11] Id. at ¶ 3, Exhibit A, at Boutros Tr. at 58:12-58:25; 67:6-67:13; 106:5-106:25

20 [12] Id. at ¶ 3, Exhibit A, at Boutros Tr. at 106:5-106:25

COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

1    After expeditious removal of the content that is the subject of the takedown

2    notification, and to avoid liability for disabling/removing content, the online

3    service provider must notify the user of the takedown. <u>Lenz</u>, 815 F.3d at 1151; 17

4    U.S.C. § 512(g)(1)–(2). After the service provider gives notice to the user of the

5    content's removal, "[t]he user then has the option of restoring the content by

6    sending a counter-notification, which must include a statement of 'good faith belief

7    that the material was removed or disabled as a result of mistake or misidentification

8    … .'" <u>Lenz</u>, 815 F.3d at 1151 (quoting 17 U.S.C. § 512(g)(3)(C)). Again,

9    Defendant ***failed*** to remove the content that was subject of the DMCA takedown

10    notices. Thus, Defendant did not have ***any*** communication with ***any*** of its users

11    that posted infringing materials named in the takedown notices.[13] Accordingly, the

12    users were not given any opportunity to provide a counter-notification and it goes

13    without saying that no such counter-notice was ever received by Defendant.

14    Defendant failed to comply with this step, as required by the DMCA. Defendant's

15    misconduct—first originating with the failure to expeditiously remove and then

16    compounded by Defendant subjectively inserting its own judgment (a year later)

17    to not remove the photographs from its website/platform—served as an

18    impediment to the entire takedown process required by the DMCA.

19

20

---

[13] <u>Id</u>. at ¶ 3, Exhibit A, at Boutros Tr. at 66:12-67:1.

COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

Lastly, once the service provider receives a valid counter-notification, "the service provider must inform the copyright holder of the counter-notification and restore the content within 'not less than 10, nor more than 14, business days,' unless the service provider receives notice that the copyright holder has filed a lawsuit against the user seeking to restrain the user's infringing behavior." Id. (quoting 17 U.S.C. § 512(g)(2)(B)–(C)). Here, Defendant did not communicate with Plaintiff to provide notice that the infringing materials would not be removed.[14] Additionally, Defendant failed to remove the work despite being served the Complaint, which clearly sought an injunction to restrain the user's infringing behavior.[15]

Defendant's conduct after receiving Plaintiff's takedown notices can only be described as a deliberate and consistent failure. The procedures laid out in the DMCA are crystal clear about the steps a service provider is required to take after receiving a takedown notice, yet Defendant failed to comply at every single step. Notably, ███████████████████████████████████████████ ████████████████[16]

---

[14] Grecco Decl. at ¶ 38.

[15] Complaint [D.E. 1]; First Amended Complaint [D.E. 23]; Second Amended Complaint [D.E. 46].

[16] Alejandrino Decl. at ¶ 3, Exhibit A, at Boutros Tr. at 51:3-51:23; 64:2-64:12.

COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

1    Rather than comply with the objective requirements of the DMCA,

2    ███████████████████████████████████████████████████████

3    ███████████████████████████████████████.[17]  ███████████████

4    ████████████████████████████████████.[18] In determining that the

5    photographs at issue should not be removed from its website/platform was a clear

6    contravention of the mandatory/objective nature of the DMCA. By doing so,

7    Defendant derailed the entire sequence of what the DMCA required of it. Because

8    Defendant did not expeditiously remove the content (or at all), Defendant did not

9    inform the users in this case that their content was removed/disabled. Because the

10   users were never informed that their content was removed/disabled, the users were

11   never able to respond with a counter notice. Because a counter notice was never

12   sent, Defendant never had to communicate with Plaintiff or comply with the

13   DMCA's "put-back procedures."

14       To avail itself to the safe harbor, Defendant was ***required*** to engage in

15   specific, ***detailed*** conduct. Defendant decided it would not do so. Defendant failed

16   to comply with the DMCA requirements and thus cannot be shielded from liability

17   for infringement.

18

19   ───────────────────

[17] Id. at ¶ 3, Exhibit A, at Boutros Tr. at 19:23-20:5; 94:7-94:20; 111:21-112:4; 112:10-17; 125:23-126:8; 127:1-127:8

20   [18] Id. at ¶ 3, Exhibit A, at Boutros Tr. at 19:23-20:5; 125:23-126:8; 127:1-127:8

COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

### IV.    Plaintiff is Entitled to Partial Summary Judgment on its Claim of Secondary Liability for Copyright Infringement

"Secondary liability for copyright infringement does not exist in the absence of direct infringement by a third party." A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1013 n.2 (9th Cir. 2001). Accordingly, for Plaintiff to establish contributory copyright infringement, it must first establish that Defendant's end-users directly infringed.

#### A.    Elements of Copyright Infringement

"'To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" Menjivar v. JVCKenwood USA Holdings, Inc., No. CV 24-0448-CBM(AJRx), 2024 U.S. Dist. LEXIS 71349, at *6 (C.D. Cal. Apr. 17, 2024) (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)).

#### a)  Ownership of a Valid Copyright

##### 1.  Photographs 1–7, 13–16, 18, 22

"The Copyright Act provides that '[i]n any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.' 17 U.S.C. § 410(c) (emphasis added)." Aquarian Found., Inc. v. Lowndes, 127 F.4th 814, 819 (9th Cir. 2025). When the certificate of copyright registration constitutes prima facie evidence of

1   copyrightability, "the burden [shifts] to the defendant to demonstrate why

2   the copyright is not valid." <u>Bibbero Sys, Inc. v. Colwell Sys., Inc.</u>, 893 F.2d 1104,

3   1106 (9th Cir. 1990).

4       Here, Plaintiff published the specified photographs (The First Photograph,

5   Second Photograph, Third Photograph, Fourth Photograph, Fifth Photograph,

6   Sixth Photograph, Seventh Photograph, Thirteenth Photograph, Fourteenth

7   Photograph, Fifteenth Photograph, Sixteenth Photograph, Eighteenth Photograph

8   and Twenty-Second Photograph) comprising part of the Work and registered those

9   photographs within five years of first publication.[19] Plaintiff owns the

10  photographs.[20] As a result, there is a presumption of a valid registration/protectable

11  elements.

12          **2. Photographs 8–12, 17, 19–21**

13      The Eighth Photograph, Ninth Photograph, Tenth Photograph, Eleventh

14  Photograph, Twelfth Photograph, Seventeenth Photograph, Nineteenth

15  Photograph, Twentieth Photograph, and Twenty-First Photograph were not

16  registered until later than five (5) years from first publication.[21] The registration

17  certificate therefore does not constitute "prima facie" evidence of validity, but it

18

19  _____

    [19] Grecco Decl., at ¶ 40, Exhibit C.

20  [20] <u>Id</u>. at ¶ 6.

    [21] <u>Id</u>. at ¶ 40, Exhibit C.

COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

certainly is evidence enough to satisfy the first element of an infringement claim. See Brighton Collectibles, Inc. v. RK Tex. Leather Mfg., No. 10-CV-419-GPC (WVG), at *8 (S.D. Cal. Dec. 13, 2012) ("The Copyright Act allows the district court the discretion to determine the evidentiary weight accorded to a certificate when the only flaw is the passage of time. 17 U.S.C. § 410(c). Most courts conclude that untimely certificates constitute prima facie evidence."); Lifetime Homes, Inc. v. Residential Dev. Corp., 510 F. Supp. 2d 794, 801 (M.D. Fla. 2007) ("Although Plaintiff did not file the copyright registration within the five year time period, Plaintiff has produced the certificate of registration for the Model A and Defendants have not pointed to any evidence indicating that Plaintiff's certificate of registration is not valid. Further, Defendants make no argument nor present any evidence to support a finding that Plaintiff does not in fact own the copyright for the Model A plans.").  As succinctly explained in Southall v. Force Partners, LLC, No. 1:20-cv-03223, 2021 U.S. Dist. LEXIS 164680, at *7 (N.D. Ill. Aug. 31, 2021):

> The last sentence is crucial here: Section 410(c) confers discretion on the court on how to treat a certificate obtained five years after publication. In other words, the statute mandates a presumption of validity for pre-five-year certificates, but the statute does not *forbid*[22] a presumption of validity for post-five-year certificates. Post-five-year certificates are still eligible to qualify as prima facie evidence of a valid copyright.  Yurman

---

[22] Emphasis in original.

COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

<u>Design, Inc. v. Golden Treasure Imps., Inc.</u>, 275 F. Supp. 2d 506, 515-16 (S.D.N.Y. 2003) (holding that late registrations can be considered prima facie evidence of valid copyright<u>); Telerate Sys., Inc. v. Caro</u>, 689 F. Supp. 221, 227 n. 7 (S.D.N.Y. 1988) (explaining "[e]ven if the certificate were ... issued more than five years after the actual date of first publication, the court would be inclined to give the certificate the weight of prima facie evidence, as permitted under Section 410(c)."). ***In any event, the strength of the presumption is not a matter that should be resolved at the pleading stage. The parties must develop facts in discovery before the certificate's evidentiary weight can be presented to the Court for decision***.[23] The copyright-infringement claim survives.

Here, Plaintiff registered the specified photographs comprising part of the Work pursuant to 17 U.S.C. § 411(a) with the Register of Copyrights as set forth above.[24] Plaintiff owns the photographs.[25] Additionally, Defendant has not produced any evidence to challenge Plaintiff's registration/ownership of a valid copyright.[26]

"Some minimal degree of creativity," or "the existence of ... intellectual production, of thought, and conception" is required for copyright protection. <u>JCW Investments, Inc. v. Novelty, Inc.</u>, 482 F.3d 910, 914–15 (7th Cir. 2007) (quoting <u>Feist Publications, Inc</u>, 499 U.S. at 362). "[T]he requisite level

---

[23] Emphasis added.

[24] Grecco Decl., at ¶ 40, Exhibit C.

[25] <u>Id</u>. at ¶ 6.

[26] Alejandrino Decl. at ¶ 3, Exhibit A, at Boutros Tr. at 93:10-93:12.

COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

of creativity is **extremely low**; even a slight amount will suffice.  The vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be." Feist Publ'ns, Inc., 499 U.S. at 345 (emphasis added).  With respect to the creativity/originality of photographs, one court recently explained:

> Courts have found that photographs, even if taken partly for informative purposes, can still be creative. See, e.g., Balsley v. LFP, Inc., 691 F.3d 747, 760 (6th Cir. 2012) (finding that amateur photograph of a wet t-shirt contest had "a mixed nature of fact and creativity"); Kelly v. Arriba Soft Corp., 336 F.3d 811, 820 (9th Cir. 2003) ("Photographs that are meant to be viewed by the public for informative and aesthetic purposes . . . are generally creative in nature."). Even photographs of "mundane articles of furniture" have been found to have a creative nature for copyright purposes. See Ashley Furniture Indus., Inc. v. Am. Signature, Inc., No. 2:11-CV-427, 2014 WL 11320708, at *9 (S.D. Ohio 2014) ("although the copyrighted photographs at issue in this case depict comparatively mundane articles of furniture, they are at least as creative as the surreptitious grab shot at issue in Balsley.").

Maui Jim v. Smartbuy Guru Enters., 459 F. Supp. 3d 1058, 1102 (N.D. Ill. 2020). In that case, the court concluded that the photographs at issue (of Maui Jim sunglasses) were sufficiently creative to meet the minimum threshold: "although the 93 Photographs are mundane depictions of Maui Jim's sunglasses, we find that the process of creating those photographs necessarily included decisions about lighting, camera angle and distance, shadowing, and post-production editing.

COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

Additionally, creative judgment was necessarily exercised in selecting which photographs to use on Maui Jim's advertisements." Id.

Defendant cannot seriously dispute that the photographs at issue meet the minimum levels of creativity required for copyright registration. The photographs here were taken of well-known celebrities (generally in private/studio settings where general members of the public would not have access), involve complex elements of lighting/staging, and cannot be recreated.[27]

### b) Copying of Constituent Elements

The copying element of an infringement claim has two components. Madaluxe Grp., LLC v. Kok Han Wee, No. 8:22-cv-01926-WLH-KES, 2025 LX 285640, at *11 (C.D. Cal. June 10, 2025). The two components are 'copying' and 'unlawful appropriation.' See Kim v. Shein Distribution Corp., No. CV 23-8251-GW-JCx, (C.D. Cal. May 17, 2024). "To prove copying, the similarities between the two works need not be extensive, and they need not involve protected elements of the plaintiff's work. They just need to be similarities one would not expect to arise if the two works had been created independently." Rentmeester v. Nike, Inc., 883 F.3d 1111, 1117 (9th Cir. 2018). "To prove unlawful appropriation, on the other hand, the similarities between the two works

---

[27] Grecco Decl., at ¶ 42.

COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

must be 'substantial' and they must involve protected elements of the plaintiff's

work." Id.

Here, Defendant's users displayed duplicate copies of Plaintiff's Work on

their profiles/pages on Defendant's website.[28]   The screenshots of the respective

post (including a profile photo) displaying Plaintiff's photographs on Defendant's

website unequivocally show Defendant's end users copying of the Work.[29]

### c)  Defendant's Affirmative Defense – Fair Use

Defendant's fifth affirmative defense is that any alleged infringement of the

Work (by its users) constitutes fair use.   Setting aside for the moment that

Defendant was not itself entitled to consider fair use in availing itself of the DMCA

safe harbor, the point remains that Defendant's assertion of fair use here is both

flawed and misguided.  "To determine whether a particular use is 'fair,' the statute

sets out four factors to be considered: (1) the purpose and character of the use,

including whether such use is of a  commercial nature or is for nonprofit

educational purposes; (2) the nature of the copyrighted work; (3) the amount and

substantiality of the portion used in relation to the copyrighted work as a whole;

---

[28] Complaint [D.E. 46], at ¶¶ 12, 14, 16, 18, 20, 22, 24, 26, 28, 30, 32, 34, 36, 38, 40, 42, 44, 46,
48, 50, 52, 54, and Exhibit N.
[29] Id.

COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

and (4) the effect of the use upon the potential market for or value of the copyrighted work." See Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith, 598 U.S. 508, 527 (2023).

## 1. Purpose and Character of the Use

"The central purpose of this [factor] is to see . . . whether the new work merely 'supersede[s] the objects' of the original creation; it asks, in other words, whether and to what extent the new work is 'transformative.'" Dr. Seuss Enters., L.P. v. ComicMix LLC, 256 F. Supp. 3d 1099, 1105 (S.D. Cal. 2017) (cleaned up). "Another element of the first factor analysis is whether the work's 'purpose' was commercial or had a non-profit aim." Mattel Inc. v. Walking Mt. Prods., 353 F.3d 792, 803 (9th Cir. 2003).

In evaluating the first factor, it weighs in favor of Plaintiff. Defendant's users displayed Plaintiff's Work. The photographs were not transformed nor unrecognizable. Further, the usage of the Work did not have a non-profit aim. And, whether Defendant actually profited from its display of the Work is not the relevant test.  As the Court in Von Der Au v. Michael G. Imber, Architect, PLLC, No. SA-20-CV-00360-XR, 2021 U.S. Dist. LEXIS 55298, at *11 (W.D. Tex. Mar. 24, 2021) stated:

> The parties miss the issue. The Supreme Court has noted that '[t]he crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but

whether the user stands to profit from exploitation of the copyrighted material without paying the customary price.' <u>Harper & Row, Publishers, Inc. v. Nation Enters.</u>, 471 U.S. 539, 562 (1985). Here, Defendant asserts that the Website, www.michaelgimberblog.com, is intended to be used for educational purposes, while the Defendant promotes its architectural services at a separate website, www.michaelgimber.com. Imber Decl. ¶¶ 2, 4. Even though the Defendant did not produce the Photograph for individual sale or profit, it surely stood to profit indirectly from the publicity gained by publication of a blog that used the Photograph. That is, increased patronage of the blog is likely good for Defendant's for-profit business, and the use of the Photograph is likely intended to increase web traffic to the blog. Such use is commercial in character.

Setting aside whether Defendant itself profited, Defendant testified that users of its platform can make money by being in the creator fund.[30] An unspecified number of users who utilized Plaintiff's photographs were members of the creator fund.[31] Defendant's users certainly had the ability to profit from using Plaintiff's Work without paying the customary price.

### 2.  The Nature of the Copyrighted Work

"The second factor in the fair use analysis 'recognizes that creative works are closer to the core of intended copyright protection than informational and functional works.'" <u>Walking Mt. Prods.</u>, 353 F.3d at 803 (quoting <u>Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.</u>, 109 F.3d 1394, 1402 (9th Cir. 1997)

---

[30] Alejandrino Decl. at ¶ 3, Exhibit A, at Boutros Tr. at  24:7-24:12.

[31] <u>Id</u>. at ¶ 3, Exhibit A, at Boutros Tr. at 25:12-26:12.

COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

(internal quotations omitted)). While courts have traditionally found this factor to not be the most heavily weighted in a fair use analysis, this factor would weigh in favor of Plaintiff. The Work is comprised of photographs featuring various celebrities and television show characters. The Work at bar is not factual, but creative.

### 3. The Amount and Substantiality of the Portion Used

"The third factor looks to the quantitative amount and qualitative value of the original work used in relation to the justification for that use." Seltzer v. Green Day, Inc., 725 F.3d 1170, 1178 (9th Cir. 2013). The third factor does not support a finding of fair use, either. Defendant's users utilized substantial portions of the Work that is clearly identifiable from a comparison to the Work.

### 4. The Effect of the Use Upon the Potential Market

"The fourth fair use factor is 'the effect of the use upon the potential market for or value of the copyrighted work.' § 107(4). It requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also 'whether unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in a substantially adverse impact on the potential market' for the original." Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 590 (1994) (quoting 4 Nimmer on Copyright § 13.05 (2025)). This factor weighs in favor of Plaintiff. Plaintiff strives to be a "boutique high-end licensor of

COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

high-quality imagery."[32] Plaintiff is selective about what photographs get licensed
and to whom for the purpose of not wanting to undermine the market.[33] Plaintiff
has no way to control how its photographs operate in the market when the
photographs are being infringed and may lose licensing revenue.[34]

When viewed in totality, the four fair use factors all militate toward a finding
in favor of Plaintiff. Defendant's users use of the Work was not educational, to
report on the news, or for any purpose traditionally tied to a fair use analysis. As
such, this Court should find that the unauthorized uses of Plaintiff's photographs
were not fair use.

## B. Defendant Committed Contributory Infringement

"Although the Copyright Act does not expressly impose liability on anyone
other than direct infringers, courts have long recognized that in certain
circumstances, vicarious or contributory liability will be imposed." Fonovisa, Inc.
v. Cherry Auction, Inc., 76 F.3d 259, 261 (9th Cir. 1996).

"To state a claim for contributory copyright infringement, a plaintiff must
allege that the defendant '(1) knew of the direct infringement; and (2) [ ] either

---

[32] Id. at ¶ 4, Exhibit B, at Grecco Tr. at 318:19-318:20.

[33] Id. at ¶ 4, Exhibit B, at Grecco Tr. at 321:14-321:25.

[34] Id. at ¶ 4, Exhibit B, at Grecco Tr. at 133:12-134:1.

COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

induced, caused, or materially contributed to the infringing conduct.'" Robinson v.

Binello, 771 F. Supp. 3d 1114, 1124 (N.D. Cal. 2025) (quoting Luvdarts, LLC v.

AT & T Mobility, LLC, 710 F.3d 1068, 1072 (9th Cir. 2013)).

"The first element 'requires more than a generalized knowledge by the

[defendant] of the possibility of infringement. The plaintiff must allege 'actual

knowledge of specific acts of infringement.'" Id. at 1124 (quoting Luvdarts, LLC,

710 F.3d at 1072); see also A&M Records, Inc., 239 F.3d at 1021 (cleaned up)

("[I]f a computer system operator learns of specific infringing material available

on his system and fails to purge such material from the system, the operator knows

of and contributes to direct infringement…..").Where an online provider has actual

knowledge of infringement, and could take simple measures to prevent further

damage to the copyright holder's works (e.g., removal of the content), but fails to

take those steps, that online provider could be held contributorily liable. See

Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1172 (9th Cir. 2007).

### a) *Defendant had Knowledge*

"We have interpreted the knowledge requirement for contributory copyright

infringement to include both those with *actual knowledge* and those who *have*

*reason to know* of direct infringement." Ellison, 357 F.3d at 1076.

COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

Here, Defendant had actual knowledge. Defendant received compliant DMCA takedown notices and has had every opportunity to comply. Notably, Plaintiff's takedown notices were addressed and submitted to Defendant's designated DMCA email address.[35] The takedown notices also provided a direct link to the infringement.[36] Pointedly, Defendant has admitted to receiving the notices yet leaving the infringements up for at least a year.[37]

Moreover, ████████████████████████████████████
██████████████████████████████████████████████████████
███████████████████████████████████. As succinctly stated in <u>Ellison</u>, 357 F.3d at 1076:

> The district court found that AOL did not have actual knowledge of the infringement before Ellison filed his copyright infringement action … We agree. AOL changed its contact e-mail address … in the fall of 1999, but waited until April 2000 to register the change with the U.S. Copyright Office. Moreover, AOL failed to configure the old e-mail address so that it would either forward messages to the new address or return new messages to their senders. In the meantime, complaints … went unheeded, and complainants were not notified that their messages had not been delivered. … Because

---

[35] Alejandrino Decl. at ¶ 3, Exhibit A, at Boutros Tr. at 47:9-47:17; 53:13-53:17; 56:16-56:21; 57:14-57:19; 59:9-59:14: 60:5-60:9; 61:1-61:5; 62:6-62:11; 69:15-69:21; 70:18-70:23; 71:16-71:21; 72:16-72:20; 73:12-73:16; 74:10-74:14; 75:7-75:11; 76:4-76:8; 76:24-77:3; 77:22-77:25; 78:16-78:20; 79:8-79:13; 80:6-80:10; 81:3-81:7; 81:25-82:4; 82:22-83:2; Grecco Decl., at ¶ 35.

[36] <u>Grecco Decl.</u>, at ¶ 36.

[37] <u>Alejandrino Decl.</u>, at ¶ 5, Exhibit C, No. 9-13.

COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

there is evidence indicating that AOL changed its e-mail address in an unreasonable manner and that AOL should have been on notice of infringing activity we conclude that a reasonable trier of fact could find that AOL had reason to know of potentially infringing activity occurring within its USENET network.

Defendant *should* have known about the infringements. ███████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████[38]

████████████████████████████████████████████████

████████████████████████████████████████████████

████[39] ████████████████████████████████████████

████████████████████.[40] █████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████[41] Similar to AOL's conduct, Defendant approached the takedown notices in an unreasonable manner. ████████████████████████

---

[38] Id. at ¶ 3, Exhibit A, at Boutros Tr. at 44:15-44:21.

[39] Id. at ¶ 3, Exhibit A, at Boutros Tr. at 64:9-65:21; Id. at ¶ 6, Exhibit D, No. 12.

[40] Id. at ¶ 3, Exhibit A, at Boutros Tr. at 64:9-65:21.

[41] Id. at ¶ 3, Exhibit A, at Boutros Tr. at 117:1-118:24

COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

1　███████████████████████████████████████

2　███████████████████████████████████████

3　███████████████████████████████████████

4　█████████████████████████████████████ Defendant

5　should have been on notice of infringing activity.

6　　　Even if the Court is not inclined to find that Defendant should have known

7　of the infringements, or that the takedown notices conferred actual knowledge,

8　Defendant's actual knowledge is established by the service of the Complaint.

9　Defendant was served the Complaint on June 14, 2024.[42] The Complaint contains

10　screenshots and links to the infringing materials. Defendant testified that it

11　received notice of this lawsuit. ██████████████████████

12　███████████████████████████████████████

13　█████[43] Evidently, Defendant believed it should not remove the content.

14　Defendant has been on notice about the infringements for well over a year and has

15　deliberately and consistently chosen not to comply with the DMCA requirements.

16　Thus, it is indisputable that Defendant has actual knowledge.

17

18

19

20

---

[42] Proof of Service [D.E. 11].

[43] Alejandrino Decl. at ¶ 3, Exhibit A, at Boutros Tr. at 19:23-20:5; 94:7-94:20; 111:21-112:4; 112:10-17;125:23-126:8; 127:1-127:8; Alejandrino Decl. at ¶ 6, Exhibit D, No. 12.

COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

### b) *Simple Measures*

"To prevail on its contributory copyright infringement claim, Plaintiff must also demonstrate that [a service provider could] 'take simple measures to prevent further damage to copyrighted works, yet continued to provide access to infringing works.' In other words, Plaintiff must show that [the service provider] could have, and failed to take simple measures to block access to the infringing images on [its platform]." Als Scan v. Cloudflare, Inc., No. CV 16-5051-GW (AFMx), at *27 (C.D. Cal. Mar. 30, 2018) (cleaned up).

The ability for a service provider to take simple measures is predicated on knowledge of the infringing work. Stross v. Twitter, Inc., No. 2:21-cv-8360-SVW, (C.D. Cal. Feb. 28, 2022). Where defendant has knowledge of the infringing works, takedown notices providing links to the infringing material constitute simple measures. Id. As explained herein, Defendant had actual knowledge of the infringements. Moreover, Plaintiff's takedown notices contain direct links to the infringing material.[44] See Stross, No. 2:21-cv-8360-SVW, (C.D. Cal. Feb. 28, 2022) (finding that the service provider had the ability to take simple measures because the takedown notices provided links to the infringing materials).

---

[44] Grecco decl. at ¶ 36.

COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

Additionally, ███████████████████████████████████████

████████████.[45] ████████████████████████████████████████

████████████████████████████████.[46] <u>Contra</u> <u>Perfect 10, Inc. v.</u>

<u>Giganews, Inc.</u>, 847 F.3d 657 (9th Cir. 2017) (holding that there were no simple

measures available to remove the works because the generalized takedowns

required spending more than 20 hours processing 565 Message-IDs which was

onerous and unreasonably complicated). That Defendant ██████████████████

██████████████████████████████████████████████████████████████

███ was provided direct links to the infringing content vis-à-vis Plaintiff's

takedown notices, Defendant had simple measures to remove the infringing

content… and still decided not to.

### c) Defendant Materially Contributed

"The second element a plaintiff must prove to succeed on a claim of

contributory copyright infringement is that the defendant materially contributed to

another's infringement." <u>Ellison</u>, 357 F.3d at 1077. "As for material contribution,

Ninth Circuit authority instructs that actual knowledge automatically establishes a

'material contribution' theory of contributory infringement." <u>BackGrid USA, Inc.</u>

<u>v. Twitter, Inc.</u>, No. CV 22-9462-DMG (ADSx) at *11 (C.D. Cal. June 7, 2024).

---

[45] Alejandrino Decl. at ¶ 3, Exhibit A, at Boutros Tr. at 17:16-24; 30:12-20.

[46] <u>Id</u>. at ¶ 3, Exhibit A, at Boutros Tr. at 16:14-16:16; 17:16-17:24; 30:12-30:20: 31:13-31:25; 124:2-124:22; 125:22-126:7.

COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

In this case, as explained herein, Plaintiff has established Defendant's actual
acknowledge. As such, a material contribution is automatically established.

Alternatively, Defendant's actions and refusal to comply with its
requirement under the DMCA constitute a material contribution. "Applying Sony
to the Internet context, we held … that 'if a computer system operator learns of
specific infringing material available on his system and fails to purge such material
from the system, the operator knows of and contributes to direct infringement.'"
UMG Recordings, Inc., 718 F.3d at 1021 (quoting A&M Records, Inc., 239 F.3d
at 1021); See also Ventura Content, Ltd. v. Motherless, Inc., 885 F.3d 597, 604
(9th Cir. 2018) ("A service provider must delete or disable access to … material
for which he receives a statutorily compliant takedown notice."). Defendant
learned of infringing content on its platform/system (whether from Plaintiff's
DMCA takedown notices or the Complaint) and **failed** to purge the material from
its system or disable access to the content (a failure that is ongoing). Defendant
therefore knows of and continues to contribute to direct infringement.

Additionally, "operating a service that allows for the posting of infringing
material satisfies the requirement for substantial involvement." See BMG Rts.
Mgmt. (United States) LLC v. Joyy Inc., 716 F. Supp. 3d 835, 843 (C.D. Cal.
2024). Defendant operates a platform that allows for the posting of infringing
material. As already illustrated, Defendant, at the very least, had reason to know

COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

1    about the infringing activity, yet took no action on said knowledge. And, rather

2    than comply with its requirements under the DMCA, ████████████████████

3    ███████████████████████████████████████████.[47]

4        Moreover, by conducting a fair use analysis (rather than simply removing

5    the material and providing its user the opportunity to engage in the 'put-back

6    procedures'), Defendant involved itself in the matter and released any pretense of

7    neutrality afforded to service providers. In other words, Defendant's actions

8    constitute a substantial participation in the infringement. Id. ("A third party can be

9    liable for materially contributing to infringement only where its participation in the

10   infringing conduct of the primary infringer is substantial."). Consequently,

11   Defendant's actions after receiving notice of the infringement—in direct defiance

12   of the DMCA—constitute  material contribution.

13   **<u>CONCLUSION</u>**

14       For the foregoing reasons, Plaintiff respectfully request that the Court enter

15   an Order: (a) granting partial summary judgment in favor of Plaintiff with respect

16   to secondary liability on its claim for contributory copyright infringement

17   (including finding that Plaintiff's DMCA takedown notices were compliant,

18

19

20

---

[47] Id. at ¶ 3, Exhibit A, at Boutros Tr. at 19:23-20:5; 94:7-94:20; 111:21-112:4; 112:10-17; 125:23-126:8; 127:1-127:8; Alejandrino Decl. at ¶ 6, Exhibit D, No. 12.

COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

Defendant's users committed direct infringement, and that fair use does not

apply);[48] and (b) for such further relief as the Court deems proper.

### **LOCAL RULE 7.3 CERTIFICATE**

Before filing this Motion, undersigned counsel conferred with counsel for

Defendant on August 15, 2025. Defendant opposes this motion.

Dated: August 22, 2025.                    **COPYCAT LEGAL PLLC**
                                           3111 N. University Dr.
                                           Suite 301
                                           Coral Springs, FL 33065
                                           Telephone: (877) 437-6228
                                           jonathan@copycatlegal.com

                                           *Attorney for Plaintiff*

                                           By: /s/ Jonathan Alejandrino
                                           Jonathan Alejandrino, Esq. (*pro hac vice*)


                                           **COPYCAT LEGAL PLLC**
                                           113 North San Vicente Boulevard
                                           Suite 232
                                           Beverly Hills, CA 90211
                                           Telephone: (877) 437-6228
                                           lauren@copycatlegal.com

                                           *Attorney for Plaintiff*

---

[48] The sole remaining issue for trial on Plaintiff's claim for contributory infringement would thus be damages.

COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

By: /s/ Lauren M. Hausman
Lauren M. Hausman, Esq.


**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 22, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will electronically serve all counsel of record.

/s/ Lauren M. Hausman
Lauren M. Hausman, Esq.

COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228