DORSEY & WHITNEY LLP
J. Michael Keyes (SBN 262281)
 *keyes.mike@dorsey.com*
Connor J. Hansen (*pro hac vice*)
 *hansen.connor@dorsey.com*
Dylan J. Harlow (*pro hac vice*)
 *harlow.dylan@dorsey.com*
701 Fifth Avenue, Suite 6100
Seattle, WA 98104
Telephone: 206.903.8800
Facsimile: 206.903.8820

DORSEY & WHITNEY LLP
Kent J. Schmidt (SBN 195969)
 *schmidt.kent@dorsey.com*
600 Anton Boulevard, Suite 200
Costa Mesa, CA 92626
Telephone: 714.800.1400
Facsimile: 714.800.1499

*Attorneys for Defendant TikTok, Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL GRECCO PRODUCTIONS INC., <br><br> *Plaintiff,* <br><br> v. <br><br> TIKTOK, INC., <br><br> *Defendant.* | Case No. 2:24-CV-04837-FLA-MAR <br><br> **DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT** <br><br> Hon. Fernando L. Aenlle-Rocha <br> Date: September 26, 2025 <br> Time: 1:30pm <br> Courtroom: 6B <br><br> Filed concurrently with: <br> (1) Notice of Motion and Motion; <br> (2) Defendant's Statement of Uncontroverted Facts <br> (3) Declaration of Jemili Boutos; <br> (4) Declaration of J. Michael Keyes; and <br> (5) [Proposed] Order |

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................. 1

II.   FACTUAL BACKGROUND ................................................................ 2

    A.    Defendant's TikTok Entertainment Platform and Services.................. 2

    B.    Plaintiff's Copyright Litigation Business and the Asserted Works ......................................................................................... 3

    C.    The Alleged Infringement At Issue ...................................... 4

III.  LEGAL STANDARD ....................................................................... 6

IV.   ARGUMENT ................................................................................... 7

    A.    Plaintiff's Takedown Notices are Ineffective Because Plaintiff Admittedly Did Not Consider Fair Use as Required by The DMCA and Ninth Circuit Precedent ....................................... 7

        1.    Binding Ninth Circuit Precedent Requires Consideration of Fair Use Before Sending a "Takedown Notice ..................... 7

        2.    Plaintiff's Takedown Notices are Ineffective as a Matter of Law Because Plaintiff Admittedly Did Not Consider Fair Use .......................................................................... 9

        3.    Plaintiff's Ineffective Takedown Notice Cannot Serve As Evidence of Defendant's Knowledge of or Ability to Identify the Alleged Infringement Under the DMCA's Exclusionary Rule ................................................................ 11

    B.    Summary Judgment is Appropriate on Plaintiff's Vicarious Copyright Infringement Claim Because TTI Obtained No Direct Financial Benefit From the Alleged Infringement.............................. 12

    C.    Plaintiff is Not Entitled to Recover Defendant's Profits or Actual Damages ...................................................................... 15

        1.    Plaintiff is Not Entitled to Recover Defendant's Profits Because There are No Profits Attributable to the Alleged Infringement ............................................................. 15

        2.    Plaintiff has No Objective and Non-Speculative Evidence of its Actual Damages............................................ 18

V.    CONCLUSION ................................................................................ 21

-i-

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*A&M Records v. Napster, Inc.*,
   239 F.3d 1004 (9th Cir. 2001) ................................................................ 13

*Arista Records, Inc. v. MP3Board, Inc.*,
   No. 00 Civ. 4660 (SHS), 2002 U.S. Dist. LEXIS 16165
   (S.D.N.Y. Aug. 28, 2002) ...................................................................... 12

*Associated Residential Design, Ltd. Liab. Co. v. Molotky*,
   226 F. Supp. 2d 1251 (D. Nev. 2002) ................................................... 16

*Attachmate Corp. v. Health Net, Inc.*,
   No. C09-1161 MJP, 2010 U.S. Dist. LEXIS 156918
   (W.D. Wash. June 18, 2010) ................................................................. 19

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ................................................................................. 6

*Cleaveland v. Pol'y Mgmt. Sys., Corp.*,
   526 U.S. 795 (1999) ................................................................................. 6

*Corbis Corp. v. Amazon.com, Inc.*,
   351 F. Supp. 2d 1090 (W.D. Wash. 2004) ........................................... 11

*Davis v. Gap, Inc.*,
   246 F.3d 152 (2d Cir. 2001) ............................................................ 16, 17

*Dongxiaoyue v. Chordiant Software*,
   No. C 08-00019 JW, 2010 U.S. Dist. LEXIS 159634
   (N.D. Cal. Apr. 22, 2010) ..................................................................... 19

*Ellison v. Robertson*,
   357 F.3d 1072 (9th Cir. 2004) ............................................................... 13

*Evox Prods., LLC v. Cal. Rent-A-Car, Inc.*,
   No. CV-15-8046-MWF, 2016 U.S. Dist. LEXIS 194720
   (C.D. Cal. July 26, 2016) ...................................................................... 16

*Golden v. Michael Grecco Prods.*,
   524 F. Supp. 3d 52 (E.D.N.Y. 2021) ...................................................... 3

*Griffo v. Oculus Vr*,
  No. SA CV 15-1228-DOC MRWx, 2018 U.S. Dist. LEXIS 237382
  (C.D. Cal. Sep. 18, 2018) ................................................................... 16

*Hendrickson v. Amazon.com, Inc.*,
  298 F. Supp. 2d 914 (C.D. Cal. 2003) ................................................ 11

*Jarvis v. K2 Inc.*,
  486 F.3d 526 (9th Cir. 2007) ........................................................ 18, 19

*Latin Am. Music Co. v. Spanish Broad. Sys., Inc.*,
  232 F. Supp. 3d 384 (S.D.N.Y. 2017) ............................................ 19, 20

*Lenz v. Universal Music Corp.*,
  815 F.3d 1145 (9th Cir. 2016) ................................................... 7, 8, 9

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*,
  591 F. Supp. 2d 1098 (N.D. Cal. 2008) ................................. 13, 14, 15

*Mackie v. Rieser*,
  296 F.3d 909 (9th Cir. 2002) ................................................ 15, 17, 18

*McGucken v. Shutterstock, Inc.*,
  No. 22 Civ. 00905 (JHR), 2023 U.S. Dist. LEXIS 177213
  (S.D.N.Y. Sep. 30, 2023) .................................................................. 11

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*,
  210 F.3d 1099 (9th Cir. 2000) ............................................................ 6

*Oracle Corp. v. SAP AG*,
  765 F.3d 1081 (9th Cir. 2014) ...................................................... 18, 20

*Perfect 10, Inc. v. CCBill LLC*,
  488 F.3d 1102 (9th Cir. 2007) ........................................... 7, 8, 11, 12

*Perfect 10, Inc. v. Giganews, Inc.*,
  No. CV 11-07098-AB, 2014 U.S. Dist. LEXIS 183590 (C.D. Cal.
  Nov. 14, 2014) .................................................................................. 14

*Perfect 10, Inc. v. Giganews, Inc.*,
  847 F.3d 657 (9th Cir. 2017) ........................................................ 13, 14

*Polar Bear Prods., Inc. v. Timex Corp.*,
  384 F.3d 700 (9th Cir. 2004) ................................................ 16, 17, 18

-iii-

*Religious Tech. Ctr. v., NetCom On-Line Comm. Servs.*,
   907 F. Supp. 1361 (N.D. Cal. 1995)............................................................... 11, 12

*Rossi v. Motion Picture Ass'n of Am. Inc.*,
   391 F.3d 1000 (9th Cir. 2004)........................................................................ 9

*UMG Recordings, Inc. v. Shelter Capital Partners Ltd. Liab. Co.*,
   718 F.3d 1006 (9th Cir. 2013)........................................................................ 11

*Ventura Content, Ltd. v. Motherless, Inc.*,
   885 F.3d 597 (9th Cir. 2018)...................................................................... 9, 10

*VHT, Inc. v. Zillow Group, Inc.*,
   918 F.3d 723 (9th Cir. 2019)..................................................................... 11, 12

**Statutes**

17 U.S.C. § 107........................................................................................... 1, 8

17 U.S.C. § 504(b)....................................................................................... 15

17 U.S.C. § 504(c)....................................................................................... 15

17 U.S.C. § 512(c)................................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 56(a) .................................................................................... 6

H.R. Rep. No. 105–551, pt. 2 ............................................................... 7, 8, 11

S. Rep. 105-190 (1998)................................................................................ 8

# I.    <u>INTRODUCTION</u>

Plaintiff Michael Grecco Productions, Inc. ("Plaintiff" or "MGP")—and its sole owner, Mr. Michael Grecco ("Grecco")—are serial litigants that have filed hundreds of copyright infringement cases in federal court.  Plaintiff purports to own the copyrights to various photographs of celebrities—captured by Grecco in the 1980s to early 2000s.  Plaintiff weaponizes threats of and actual litigation to force third parties to pay inflated fees to "license" Plaintiff's images.  Its latest target is Defendant TikTok, Inc. ("Defendant" or "TTI").

Plaintiff alleges TTI infringed 22 of its photographs, yet the photographs appear for a fleeting second or two in short transformative mash-up videos posted by individual users on the TikTok platform.  A handful of the rest are small "thumbnail" profile images.  It is undisputed TTI did not generate *any* revenue from these videos or thumbnails.  And, there is no evidence to suggest this content impacted Plaintiff's ability to license these photographs.  In fact, nearly all Plaintiff's purported prior licenses are coerced settlements that have no bearing on the value of the photographs or Plaintiff's ability to license them in the open market.  The transformative short videos and thumbnails at issue are quintessential "fair use" under Section 107 of the Copyright Act.[1]  Given these undisputed facts, TTI moves for summary judgment on three issues.

<u>*First*</u>, Grecco admitted in his deposition he did not consider fair use at all before demanding TTI take down the content at issue.  Grecco has such disdain for the fair use doctrine that he calls it the "FU defense" and claims it is "BS."  The Ninth Circuit disagrees.  As explained in its seminal *Lenz* decision, fair use is enshrined in the Copyright Act and provides substantive rights to those that post content online.  As such, copyright owners have an affirmative duty to consider fair use before sending takedown notices.  This is not a superfluous or trivial obligation.  Plaintiff's

---

[1] Defendant understands Plaintiff plans to move for summary judgment and will address the fair use factors in response to that motion.

MEMO OF POINTS AND AUTHORITIES ISO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT        Case No. 2:24-CV-04837-FLA-MAR

refusal and failure to consider fair use makes the notices invalid and ineffective at putting TTI on "actual notice" of the alleged infringement. Therefore, TTI is entitled to summary judgment on all of Plaintiff's claims.

*Second*, summary judgment is necessary on Plaintiff's claim for vicarious infringement because there is *zero* evidence that TTI received direct financial benefit from the alleged direct infringement by its users. The use of Plaintiff's images for a matter of seconds in user-generated videos and in a handful of thumbnails did not draw consumers or otherwise generate revenue for TTI. This is fatal to Plaintiff's claim.

*Third*, even if Plaintiff were to prevail on liability—it will not—Plaintiff is not entitled to recover actual damages. The undisputed facts show TTI did not derive any revenue from the alleged infringement, so Plaintiff cannot recover TTI's profits. In addition, because Plaintiff failed to produce any evidence of what a willing licensee like TTI or its users would pay to license the photographs at issue, Plaintiff's actual damages are entirely speculative. Instead, Plaintiff relies on a "shopping cart tool" it admits *no one has ever used*, as well as coerced "retroactive licenses" entered into under threat of litigation. TTI is entitled to partial summary judgment on Plaintiff's claim for actual damages.

## II.    FACTUAL BACKGROUND

### A.    Defendant's TikTok Entertainment Platform and Services

TTI provides the popular TikTok entertainment platform ("Tiktok") in the United States. Defendant's Statement of Uncontroverted Facts ("DSOUF") No. 1. ███████████████████████████████████████████████ ███████████████████████████████████ *Id.* Nos. 4–5. Through Tiktok, users can interact with videos and other content relating to a wide variety of topics, including politics, comedy, educational content, news, and more. *Id.* No. 6.

TTI has no interest in permitting copyright infringement by Tiktok users and has implemented policies and procedures that prohibit infringing content. Tiktok

users are subject to TTI's Copyright Policy. *Id.* No. 7; Boutros Decl., Exh. 1 at 5 ("As a condition of your access to and use of [TikTok], you agree to the terms of the Copyright Policy"). The Copyright Policy informs users that TTI does "not allow any content that infringes copyright" and establishes procedures for reporting infringement. DSOUF Nos. 8–11. Namely, copyright owners are directed to "file a Copyright Infringement Report to request the removal of alleged infringing content from TikTok via [an] online form or in-app" and are advised that such reports must comply with the Digital Millenium Copyright Act ("DMCA") and must meet all "the statutory requirements necessary for reporting copyright infringement." DSOUF Nos. 10–12; Boutros Decl., Exh. 2 at 2. The Copyright Policy also instructs that copyright owners "should consider whether the content you want to report may be a permissible use of your copyright" and "submitting a misleading or fraudulent report will result in your report being denied." DSOUF No. 13–14; Boutros Decl., Exh. 2 at 2. TTI received over 400,000 copyright takedown notices in 2023 and over 500,000 in 2024, approximately 60% of which were deemed meritorious and complied with. DSOUF Nos. 15–18. ██████████████

████████████████████████████████████████████

███████████████ *Id.* Nos. 19–21.

Subject to certain requirements, TikTok users can join the TikTok Creator Program. *Id.* No. 74. Through this Program, TikTok users can monetize their content on TikTok. *Id.* No. 75. However, TTI itself does not generate profits from the Program. *Id.* Nos. 76–79.

## B. Plaintiff's Copyright Litigation Business and the Asserted Works

Plaintiff is "a litigious and opportunistic copyright holder." *Golden v. Michael Grecco Prods.*, 524 F. Supp. 3d 52, 65 (E.D.N.Y. 2021). It has no employees; it merely holds and enforces copyrights for photographs created by its sole owner Grecco. DSOUF No. 26, 28, 34. Plaintiff has filed well over 100 copyright litigation

-3-

lawsuits. *Id.* No. 34. It relies on an army of independent contractors—most located overseas—to find alleged infringements, paying them commissions per infringing use identified. *Id.* No. 38. Grecco's wife manages Plaintiff's team to discover infringement claims and receives a commission from each settlement or court order resulting therefrom. *Id.* No. 39. Plaintiff's administrator, Ms. Torina Yamada, also receives commissions for each alleged act of infringement she locates. *Id.* Nos. 39–40. Plaintiff has generated at least $5 million from its litigation tactics. *Id.* No. 35. The vast majority of this revenue comes from settlement agreements and default judgments. *Id.* No. 37. Plaintiff has never tried any of its copyright claims to a verdict. *Id.* No. 36.

Plaintiff alleges it owns copyrights to 22 photographs at issue here, which Plaintiff refers to as the First Photograph through the Twenty-Second Photograph (collectively the "Asserted Works"). *Id.* No. 29. The Asserted Works are photographs of celebrities that Grecco captured in the 1980s, the 1990s, or early 2000s. *Id.* Nos. 30–31. Examples include Lucy Lawless in her *Xena Warrior Princess* costume, David Duchovny and Gillian Anderson from *The X-Files*, Michael Jackson performing at a concert, the bands *Til Tuesday* and *En Vogue*, and headshots of actors Andy Garcia, Morgan Freeman, and Jet Li. Dkt. 46 ¶¶ 12–54. Grecco was commissioned by third parties (generally, film and television studios or magazines) to capture each of the Asserted Works. Dkt. 46 at ¶¶ 12–55; DSOUF No. 33.[2]

## C. The Alleged Infringement At Issue

Plaintiff alleges 25 TikTok users have posted content to Tiktok that include the Asserted Works. DSOUF Nos. 43–44. Twenty TikTok users allegedly infringed by including an Asserted Work, or portions thereof, for a few seconds within videos

---

[2] These promotional photographs were commissioned by studios for the purpose of widely publicizing the films and television shows at issue. Having planted seeds of this widespread dissemination long ago, Grecco has, without a hint of irony, made a multi-million-dollar business out of scanning the internet and suing anyone who unwittingly used these promotional photographs.

MEMO OF POINTS AND AUTHORITIES ISO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT        Case No. 2:24-CV-04837-FLA-MAR

they posted to TikTok. *Id.* No. 46. Additionally, five TikTok users allegedly infringed by using a cropped version of an Asserted Work as their thumbnail profile pictures. *Id.* No. 47.

It is undisputed that TTI neither created nor posted any of Asserted Works.[3] *Id.* Nos. 44–45. Rather, each alleged infringement is user-created content posted to TikTok by the user. *Id.* Nos. 44–47. TTI did not and does not derive any revenue from the alleged infringement. *Id.* Nos. 76–79. None of the allegedly infringing uses of the Asserted Works are advertisements, nor been used to promote or sell any products. *Id.* Nos. 71–73.

Plaintiff sent TTI takedown notices for each alleged infringement.[4] *Id.* No. 48. Each takedown notice was prepared by Plaintiff's contractors with a template using the same boilerplate language. *Id.* Nos. 51–58. Grecco himself is responsible for determining whether a use of Plaintiff's works is fair use and approving all of Plaintiff's takedown notices before they are sent. *Id.* No. 61. However, Grecco did not even review each alleged act of infringement before his contractors sent the takedown notices. *Id.* No. 63. Nor did Grecco review the takedown notices. *Id.* No. 62. Most importantly, Grecco expressly *did not consider* fair use before his contractors submitted the takedown notices. *Id.* No. 64. In fact, Grecco testified the fair use defense is "BS" and referred to by Plaintiff as the "FU defense." *Id.* Nos. 65–66.

Plaintiff's failure to consider fair use is further demonstrated by the "automated" system it uses for sending takedown notices to TTI. *Id.* Nos. 59. If Plaintiff's contractors find content on TikTok featuring one of Plaintiff's photographs, the contractors are authorized to send a takedown notice if the use is

---

[3] Plaintiff's direct copyright infringement claim was dismissed for this reason. *See* Dkt. 45 at 6.

[4] Plaintiff claimed in discovery it has no documents relating to its decision to send the takedown notices to TTI. Keyes Decl., Exh. 9 (Response to Request for Production No. 23).

MEMO OF POINTS AND AUTHORITIES ISO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT                Case No. 2:24-CV-04837-FLA-MAR

not licensed. *Id.* Nos. 60. That is exactly what happened here and, as repeatedly admitted by Grecco, Plaintiff did not consider fair use before submitting takedown notices. Yet, Plaintiff submitted takedown notices to TTI and, as it has with hundreds of other defendants, initiated this litigation in attempt to extract a settlement.[5]

## III. <u>LEGAL STANDARD</u>

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the factual record that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Summary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [its] case, and on which it will bear the burden of proof at trial." *Cleaveland v. Pol'y Mgmt. Sys., Corp.*, 526 U.S. 795, 805–06 (1999) (quoting *Celotex*, 477 U.S. at 322). Accordingly, summary judgment is appropriate on any issues for which plaintiff "does not have enough evidence of an essential element to carry its burden of persuasion at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

///

///

///

----

[5] ██████████████████████████████████████████ DSOUF Nos.
20–21. ████████████████████████████████████████████
*Id.* Nos. 22–23. ████████████████████████████████
██████████████████████████████████████████ TTI determined the alleged acts of infringement are fair use and did not need to be removed (although many were since removed for other reasons). *Id.* No. 24.

## IV.  **ARGUMENT**

### A.  **Plaintiff's Takedown Notices are Ineffective Because Plaintiff Admittedly Did Not Consider Fair Use as Required by The DMCA and Ninth Circuit Precedent**

Plaintiff's takedown notices do not comply with the Sections 512(c)(3)(A)(v) and (vi) of the DMCA as a matter of law because Plaintiff admittedly did not consider fair use before sending them.  The legally defective notices were insufficient to trigger an online service provider's expeditious removal requirement under the DMCA because "fair use is 'authorized by the law' and a copyright holder _must_ consider the existence of fair use before sending a takedown notification under § 512(c)." *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1153 (9th Cir. 2016) (emphasis added).  Summary judgment is therefore appropriate on Plaintiff's secondary liability claims.

#### 1.  *Binding Ninth Circuit Precedent Requires Consideration of Fair Use Before Sending a "Takedown Notice*

Section 512(c)(3) of the DMCA establishes several requirements for "takedown notices" to be "effective," including in relevant part:

> (v) A statement that the complaining party *has a good faith belief that use of the material in the manner complained of is not authorized by* the copyright owner, its agent, or *the law.*

> (vi) *A statement that the information in the notification is accurate,* and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

17 U.S.C. 512(c)(3)(A)(v)–(vi) (emphasis added).  The DMCA also provides an "exclusionary rule" under Sections 512(c)(3)(B):

> [A] notification from a copyright owner or from a person authorized to act on behalf of the copyright owner that fails to *comply substantially* with the provisions of subparagraph (A) *shall not be considered under paragraph (1)(A) in determining whether a service provider has actual knowledge or is aware of facts or circumstances from which infringing activity is apparent.*

17 U.S.C. 512(c)(3)(B) (emphasis added).  This Circuit has relied on the DMCA's legislative history to hold "[t]he statute [] signals that substantial compliance means substantial compliance with *all* of § 512(c)(3)'s clauses, not just some of them." *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102 (9th Cir. 2007) (citing H.R. Rep., at 56).  Indeed, the legislature explained why the exclusionary rule applies to the kinds of deficient notices like those sent by Plaintiff.  S. Rep. 105-190 (1998) confirms "neither actual knowledge nor awareness of a red flag may be imputed to a service provider based on information from a copyright owner or its agent that does not comply with the notification provisions." *Id*. at 45.  This Circuit has similarly defined the statute's "substantial compliance" standard as follows:

> Compliance is not "substantial" if the notice provided complies with only some of the requirements of § 512(c)(3)(A). . . . In order to substantially comply with § 512(c)(3)'s requirements, a notification must do more than identify infringing files. The DMCA requires a complainant to declare, under penalty of perjury, that he is authorized to represent the copyright holder, and that he has a good-faith belief that the use is infringing. This requirement is not superfluous.

*CCBill*, 488 F.3d at 1112 (examining Section 512(c)(3)(B)(ii) on appeal of a district court granting a motion for summary judgment).  Thus, the Ninth Circuit is clear that a claimant must comply with *all* of Section 512(c)(3)'s requirements in order to substantially comply for purposes of the exclusionary rule, including the good-faith belief requirement. *Id*.

*Lenz v. Universal Music Corp.* emphasized that if a copyright holder fails to contemplate fair use before submitting a takedown notice, it cannot meet the good-faith belief requirement under Section 512(c)(A)(v).  815 F.3d 1145 (9th Cir. 2016).  "[B]ecause 17 U.S.C. § 107 created a type of non-infringing use, fair use is 'authorized by the law' and a copyright holder *must* consider the existence of fair use before sending a takedown notification under § 512(c)." *Id*. at 1153 (emphasis added).  The validity of a plaintiff's good-faith belief "lies not in whether a court

1  would adjudge the video as a fair use, but whether [the copyright holder] formed a

2  good-faith belief that it was not." *Id*. at 1153 (citing *Rossi v. Motion Picture Ass'n*

3  *of Am. Inc*., 391 F.3d 1000, 1004 (9th Cir. 2004)).  This inquiry, although fact

4  intensive, may be resolved on summary judgment when the circumstances do not

5  present any triable issue of fact as to "whether the analysis [the plaintiff] did conduct

6  of the [alleged infringing material] was sufficient . . . to form a subjective good-faith

7  belief the video was infringing on [the] copyright." *See id.* at 1154 n.3.

8      This Circuit has held that "to trigger the expeditious removal requirement"

9  under the DMCA in the first instance, "a copyright owner's notification [to the

10 internet service provider] must substantially comply with the requirements of

11 subsection [512](c)(3)(A). . . ." *Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d

12 597, 612 (9th Cir. 2018).  In other words, an internet service provider has no

13 obligation to remove material if it receives ineffective takedown notices.  *See id*.

14         2.    *Plaintiff's Takedown Notices are Ineffective as a Matter of Law*
               *Because Plaintiff Admittedly Did Not Consider Fair Use*
15

16     Although whether a party formed a good-faith belief of infringement is often

17 fact dependent, here it is undisputed.  Grecco squarely admitted that he *did not*

18 *consider fair use* before Plaintiff sent the takedown notices.  Indeed, he did not even

19 review the allegedly infringing content or the takedown notices.  Those admissions

20 preclude him from having formed a good-faith belief of infringement at the time

21 Plaintiff sent its takedown notices, rendering the notices ineffective as a matter of

22 law.

23     Plaintiff's takedown notices were created using a template and include the

24 same boilerplate language:

25         *I have a good-faith belief that the use of the material that appears on*
          *the service is not authorized by me, by my agent, or by operation of law.*
26        I declare under penalty of perjury, pursuant to the laws of the United
          States of America, *that this notification is true and accurate*. . . .
27

28

MEMO OF POINTS AND AUTHORITIES ISO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT         Case No. 2:24-CV-04837-FLA-MAR

DSOUF Nos. 55, 57; Keyes Decl., Exh. 12.  However, Grecco provided the following testimony at his deposition:

> Q: And it's your position that the allegations of infringement in these DMCA notices were true and accurate even though you did not consider fair use before sending these DMCA notices; right?
>
> . . . .
>
> A: Correct.  I still don't consider fair use; correct.

Grecco Depo. at 260:18–21, 23–24; DSOUF No. 64.  In fact, Grecco testified he did not even review each of the alleged infringements.  DSOUF No. 63.  He went on to criticize the fair use doctrine:

> [T]hat's a BS defense that every infringer [who] has no defense uses and we hear every day.  That's like—we call it the FU defense for a reason.

Grecco Depo. at 211:6–8; DSOUF Nos. 65–66.  Finally, Grecco testified Plaintiff's process for sending takedown notices to TTI is "automated," and the only factor Plaintiff considers is whether the TikTok user has a license from Plaintiff.  DSOUF Nos. 59–60; Grecco Depo. at 209:6–7 ("its automated that, if there's no license, [then] they send a takedown notice").  Grecco's testimony demonstrates Plaintiff knew about the fair use doctrine, did not consider it when submitting its takedown notice, and consciously refused to do so.

Grecco's frank admissions render Plaintiff's notices deficient and ineffective as a matter of law because no reasonable jury could find that Plaintiff formed a subjective good-faith belief about each video's lack of fair use before the notices were sent.  Grecco's admissions that Plaintiff did not consider fair use *or even review each of the allegedly infringing videos* refutes the boilerplate "good faith" attestation and accuracy statements in Plaintiff's takedown notices.

Because Plaintiff admittedly failed to comply with Section 512(c)(A)'s good-faith belief and accuracy requirements, Plaintiff's notices are ineffective under the DMCA and did not trigger any obligation owed by Defendant.  *Ventura Content, Ltd.*, 885 F.3d at 612.

3. *Plaintiff's Ineffective Takedown Notice Cannot Serve As Evidence of Defendant's Knowledge of or Ability to Identify the Alleged Infringement Under the DMCA's Exclusionary Rule*

The Ninth Circuit explained "'[a] service provider shall not be liable for monetary relief' if it does not know of infringement." *CCBill*, 488 F.3d at 1111 (quoting Section 512(c)); *see VHT, Inc. v. Zillow Group, Inc.*, 918 F.3d 723, 746 (9th Cir. 2019) (the control prong for vicarious copyright infringement requires the ability to "identify infringing [] photos among the many photos that users saved or uploaded daily"). A takedown notice can generally serve as evidence of the service provider's knowledge; however, "[a] service provider may . . . refute th[at] knowledge by showing that the notice failed to substantially comply with the DMCA's notice requirements." *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090 (W.D. Wash. 2004) (citing 17 U.S.C § 512(c)(3)(B)); *see also Hendrickson v. Amazon.com, Inc.*, 298 F. Supp. 2d 914, 917–918 (C.D. Cal. 2003). For example, a service provider may invoke Section 512(c)(3)(B)'s exclusionary rule that prohibits consideration of deficient notices for purposes of "determining whether a service provider has actual knowledge or is aware of facts and circumstances from which infringing activity is apparent." *UMG Recordings, Inc. v. Shelter Capital Partners Ltd. Liab. Co.*, 718 F.3d 1006, 1022 (9th Cir. 2013) (citing 17 U.S.C. § 512(c)(3)(B)(i) and H.R. Rep. No. 105–551, pt. 2, at 56).

As explained, Plaintiff's notices contain false good-faith belief and accuracy statements. "Where [a defendant] cannot reasonably verify a claim of infringement, either because of a possible fair use defense . . . or the copyright holder's failure to provide the necessary documentation to show that there is a likely infringement, the operator's lack of knowledge will be found reasonable and there will be no liability for contributory infringement for allowing the continued distribution of the works on its system." *Religious Tech. Ctr. v. NetCom On-Line Comm. Servs.*, 907 F. Supp. 1361, 1364 (N.D. Cal. 1995). Such is the case here. *See McGucken v. Shutterstock,*

*Inc.*, 2023 U.S. Dist. LEXIS 177213, at *24 (S.D.N.Y. Sep. 30, 2023) (holding an improper DMCA notice does not "trigger[ a d]efendant's Section 512(c)(1)(C) obligation to 'expeditiously . . . remove, or disable access to, the material that is claimed to be infringing.'"); *Arista Records, Inc. v. MP3Board, Inc.*, 00 Civ. 4660 (SHS), 2002 U.S. Dist. LEXIS 16165, at *24–30 (S.D.N.Y. Aug. 28, 2002) (holding that certain attempted DMCA notices were insufficient and therefore failed to put the defendant on notice of any infringement for purposes of contributory infringement). This result is appropriate because this Circuit "do[es] not require a service provider to start potentially invasive proceedings if the complainant is unwilling to state . . . that he has a good-faith belief that the material is unlicensed." *CCBill*, 488 F.3d at 1112.

In sum, the law requires an online service provider to be on notice of the infringement to be held liable for secondary infringement. *VHT*, 918 F.3d at 745–746. A takedown notice can put the defendant on notice, but only if the notice is "effective," i.e., fully compliant with Section 512(c) of the DMCA. That requires, *inter alia*, attesting to a good-faith belief that the use was not authorized by law. 17 U.S.C. § 512(c)(3)(A); *CCBill*, 488 F.3d at 1112. Plaintiff's notices were ineffective because Plaintiff did not consider fair use at all, let alone in good faith, before sending them. The ineffective takedown notices cannot confer knowledge on TTI and Plaintiff's claims for contributory and vicarious copyright infringement fail as a matter of law.

### B. Summary Judgment is Appropriate on Plaintiff's Vicarious Copyright Infringement Claim Because TTI Obtained No Direct Financial Benefit From the Alleged Infringement

Even if Plaintiff's notices were effective at putting TTI on notice of the alleged infringement—they were not—TTI is still entitled to partial summary judgment on Plaintiff's claim for vicarious infringement. For vicarious copyright infringement, in addition to establishing direct infringement, Plaintiff must prove TTI "has (1) the

right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity."[6] *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 673 (9th Cir. 2017) (citation omitted).  The "essential aspect" of a "direct financial benefit" is the existence of a "causal relationship" between the financial benefit to the defendant and the infringing activity at issue.  *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004).

Plaintiff alleges TTI received financial benefits from the alleged infringement because the "use/display of the Work on the Defendant's platform . . . acted as a draw for other customers/end-user to engage with Defendant," allegedly resulting in "increased traffic" to TikTok, which allegedly increased advertising revenue and sales on TikTok Shop.  Dkt. 46 ¶ 76.  After discovery, Plaintiff has no evidence to support this tenuous allegation.

While a financial benefit may exist "where the availability of infringing material acts as a draw for customers," *e.g. A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001), there must be "a causal relationship between the infringing activity" and the "draw" to consumers.  *Ellison*, 357 F.3d at 1079.  In the online service provider context, "use of Defendants' services for direct infringement alone is insufficient to establish a causal relationship between the underlying infringing activity and Defendant's financial benefit."  *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 591 F. Supp. 2d 1098, 1110 (N.D. Cal. 2008) (citing *Ellison*, 357 F.3d at 1079).  Rather, "a plaintiff must show that 'customers either subscribed *because of the available infringing material* or canceled subscriptions because it was no longer available.'"  *Id.* (quoting *Ellison*, 357 F.3d at 1079) (emphasis added); *Giganews, Inc.*, 847 F.3d at 674 (holding "Perfect 10 was required to provide

---

[6] Plaintiff cannot establish direct infringement in this case because each of the alleged acts of infringement constitutes fair use.  Defendant will address this issue in response to Plaintiff's motion for summary judgment.

MEMO OF POINTS AND AUTHORITIES ISO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT          Case No. 2:24-CV-04837-FLA-MAR

evidence that customers were drawn to Giganews's services because of the infringing [] material at issue").

Plaintiff has *zero* evidence that users were drawn to TikTok due to use of the Asserted Works. Indeed, Grecco admitted Plaintiff has "no facts to suggest they were drawn to TikTok because of these videos." Grecco Dep. at 254:14–20, 233:20–23; DSOUF No. 69. Grecco testified Plaintiff has no idea when or why users joined TikTok, much less whether they joined because of the alleged infringement. *Id.* Nos. 67–70. Grecco further testified that "no one goes to TikTok for one video[, t]hey go to be entertained" and that users are "on TikTok to be on TikTok to look at what TikTok – what content TikTok has to offer." Grecco Depo. at 222:16–17, 248:12–14; DSOUF Nos. 70. That users are allegedly drawn to TikTok to view a panoply of content is insufficient—there are billions of videos on Tiktok and the use of single photographs for a matter of seconds in 20 videos and a handful of profile picture thumbnails simply does not move the needle. *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB (SHx), 2014 U.S. Dist. LEXIS 183590, at *11 (C.D. Cal. Nov. 14, 2014) (finding that because the universe of content available on Giganews' website is "broad and diverse . . . any conclusion that subscribers were 'drawn' to Giganews' services as a result of the availability of [plaintiff's] content would be pure speculation"), *aff'd Giganews, Inc.*, 847 F.3d 657.

Courts in this circuit routinely grant summary judgment on vicarious copyright infringement on these facts. *E.g., Giganews, Inc.*, 847 F.3d at 674 (granting summary judgment where "there was no evidence indicating that anyone subscribed to Giganews because of infringing Perfect10 material"); *see also Louis Vuitton Malletier*, 591 F. Supp. 2d at 1110 (granting summary judgment where plaintiff did not "offer any evidence showing that customers sought or abandoned Defendants' services" based on the infringement).

Plaintiff also alleges TTI profited from advertising and sales through TikTok Shop. Dkt. 46 ¶ 76. However, these theories are premised on the alleged

-14-

infringement being a draw to users, which Plaintiff admittedly cannot prove. DSOUF Nos. 67–70.  Plaintiff further concedes the Asserted Works have not been used in advertisements on TikTok.  *Id.* No. 71.  Finally, none of the Asserted Works were used on TikTok Shop or to sell any products.  *Id.* Nos. 72–73.

The only other potential revenue stream that Plaintiff identified is the TikTok Creator Program.  *See* DSOUF No. 74–75.  But the undisputed facts show that even if Program participants can potentially earn revenue from their TikTok posts, TTI itself does not generate profit from such content.  *Id.* Nos. 74–76.

In sum, Plaintiff has no "evidence showing that [TTI] made more money" by "allow[ing] infringement to continue" and its vicarious infringement claim fails. *Louis Vuitton Malletier*, 591 F. Supp. 2d at 1110.

## C. Plaintiff is Not Entitled to Recover Defendant's Profits or Actual Damages

Copyright owners may elect to recover either (1) "actual damages" and "any profits from the infringer that are attributable to the infringement and are not taken into account in computing the actual damages" or (2) statutory damages. 17 U.S.C. §§ 504(b)–(c).  This Circuit has determined that recoverable profits may include both "direct profits—those that are generated by selling an infringing product—and indirect profits—revenue that has a more attenuated nexus to the infringement." *Mackie v. Rieser*, 296 F.3d 909, 914 (9th Cir. 2002).  Actual damages are "the extent to which the market value of a copyrighted work has been injured or destroyed by an infringement."  *Id.* at 917 (quotation omitted).

### 1. Plaintiff is Not Entitled to Recover Defendant's Profits Because There are No Profits Attributable to the Alleged Infringement

Plaintiff asserts entitlement to "disgorgement of Defendant's profits from infringement of the Work." Dkt. 46 ¶¶ 80, 99.  "[T]o survive summary judgment on a demand for indirect profits, . . . a copyright holder must proffer sufficient non-speculative evidence to support a causal relationship between the infringement and

-15-

the profits generated indirectly from such an infringement." *Mackie*, 296 F.3d at 915–916.  The causal nexus requires that the infringement "caused the profits that the infringer generated." *Id.* at 911.  Even where a causal connection is shown, "the copyright owner is required to do more initially then toss up an undifferentiated gross revenue number." *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004); *see also Davis v. Gap, Inc.*, 246 F.3d 152, 160 (2d Cir. 2001) (the plaintiff has the burden to establish "revenues reasonably related to the infringement, not unrelated revenues").

Discovery confirmed TTI did not earn any direct or indirect profits from the alleged infringement.  It is undisputed TTI has not "sold" anything in connection with the alleged infringement or otherwise derived any profits from the third-party use of the Asserted Works.  DSOUF Nos. 77–79.  None of the Asserted Works was used in any advertisements, nor to sell products on TikTok Shop.  *Id.* Nos. 71–73.  There are no "direct profits" at issue in this case.  *See Griffo v. Oculus Vr*, No. SA CV 15-1228-DOC MRWx, 2018 U.S. Dist. LEXIS 237382, at *24–25 (C.D. Cal. Sep. 18, 2018) (finding at the summary judgment phase that plaintiff "cannot recover the direct profits of the infringer" where the infringer did not sell the copyrighted video but used it to promote other products); *Associated Residential Design, Ltd. Liab. Co. v. Molotky*, 226 F. Supp. 2d 1251, 1255–56 (D. Nev. 2002) (finding at summary judgment there were no "direct profits" where defendant used plaintiff's copyrighted architectural plans but had not sold the plans or a home embodying the plans).  *Evox Prods., LLC v. Cal. Rent-A-Car, Inc.*, No. CV-15-8046-MWF (RAOx), 2016 U.S. Dist. LEXIS 194720, at *34 (C.D. Cal. July 26, 2016) (granting summary judgment on direct profits where defendant used plaintiff's photographs of cars but did not sell or license those photographs).  Summary judgment is appropriate on TTI's non-existent direct profits attributable to the alleged infringement.

As for indirect profits, Plaintiff merely contends TTI derives revenue from advertisements on TikTok.  Dkt. 46 ¶ 76.  But Plaintiff's only "evidence" relating to

-16-

these revenues is Grecco's self-serving testimony regarding the amount of TTI's projected revenues for a single year, which he purportedly obtained online from an undisclosed source.[7]  DSOUF Nos. 80–83.  Evidence of TTI's projected or total advertising revenues, even if properly before the Court, is insufficient to show any relation between those revenues and the alleged infringement. *Polar Bear*, 384 F.3d at 711 (the "copyright owner is required to do more initially than toss up an undifferentiated gross revenue number"); *Davis*, 246 F.3d at 160 (affirming summary judgment on defendant's profits where plaintiff only offered defendant's total revenues).

As discussed above, Plaintiff has no evidence that the alleged infringement drew users to Tiktok or otherwise had any effect on TTI's revenues.  Plaintiff has no evidence of how TTI's revenues changed over time, how much of TTI's revenues are attributed to user-generated content, and, most importantly, whether any of TTI's advertising revenues are attributed to use of the Asserted Works.  DSOUF Nos. 80–83.  Plaintiff's contention that the Asserted Works led to increased advertising revenues for TTI is therefore entirely speculative, especially in light of the billions of videos on TikTok, as well as Grecco's testimony that users join TikTok for a variety of reasons completely unrelated to his photographs. *See Mackie*, 296 F.3d at 916 (granting summary judgment because plaintiff's indirect profits theory was speculative where there are "endless permutations to account for an individual's decision to subscribe to [defendant's] series, reasons that have nothing to do with the artwork in question").  Plaintiff fails to establish a causal connection between the alleged infringement and any of TTI's revenues.

In sum, Plaintiff has not presented any evidence to show any direct or indirect profits attributable to the alleged infringement, and the Court should grant summary judgment on this issue.

---

[7] Grecco's testimony summarizing an unknown source is clearly inadmissible hearsay.

-17-

2.    *Plaintiff has No Objective and Non-Speculative Evidence of its Actual Damages*

Plaintiff bears the burdens of proving actual damages and a causal connection between the alleged infringement and those damages. *Polar Bear*, 384 F.3d at 708. Actual damages are "the extent to which the market value of a copyrighted work has been injured or destroyed by an infringement." *Mackie*, 296 F.3d at 917 (quotation omitted). Market value is determined by a hypothetical license approach, looking at what a willing buyer would have been reasonably required to pay to a willing seller for the copyrighted work. *Id.* "[T]he market value approach is an objective, not a subjective, analysis" and "speculative claims of damages are to be rejected." *Jarvis v. K2 Inc.*, 486 F.3d 526, 534 (9th Cir. 2007) (citing *Mackie*, 296 F.3d at 917). Absent objective evidence relating to a "history of granting similar licenses" or benchmark industry licenses, the copyright owner's actual damages are speculative. *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1093 (9th Cir. 2014) (affirming judgment granted as a matter of law where plaintiff "failed to provide sufficient objective evidence of the market value of the hypothetical license"). Plaintiff has failed to produce objective evidence to support its actual damages.

Plaintiff claims its damages are calculated "by multiplying the license it would have charged by the number of years the photographs were published." DSOUF No. 84; Keyes Decl., Ex. 7. The only method disclosed by Plaintiff for determining the "license it would have charged" is by considering "the license fee . . . as calculated by the shopping cart tool on Plaintiff's website." DSOUF No. 85; Keyes Decl., Ex. 8 (Response to Interrogatory Nos. 4 and 5 ("Plaintiff's actual damages consists of the licensing fees shown by the shopping cart feature on Plaintiff's website.")). Yet, Plaintiff admits "no one uses the cart" and Plaintiff granted *zero* licenses through the cart in the years 2021–2024. DSOUF Nos. 86–90. In fact, Plaintiff admits "in the entire history" of offering licenses through the website there was "only one time someone used the cart" for an unrelated and irrelevant

1   image of an Olympic athlete.  Grecco Depo. at 266:25–267:5, 267:1–8; DSOUF Nos.

2   91–92.  In addition, Plaintiff has not disclosed or produced any evidence showing

3   what the purported license rate shown in the cart is, stating only that it depends on

4   the user.  Keyes Decl., Ex. 8 (Response to Interrogatory No. 4).  If anything, because

5   no one has licensed the Asserted Works using the cart, any license amount shown in

6   the cart is merely what Grecco subjectively "thought he should have earned or wished

7   he had charged" and is not objective evidence that consumers are willing to license

8   the Asserted Works at those rates.  *Jarvis*, 486 F.3d at 534.  For all these reasons,

9   Plaintiff's reliance on the cart is speculative and insufficient to establish the market

10  value for the Asserted Works.

11      Although the cart is the only method disclosed by Plaintiff to date for

12  determining the license fees it purportedly would have charged TTI, Plaintiff did

13  produce seventeen "license" agreements during discovery that it might contend are

14  relevant to show its actual damages.  DSOUF No. 94.  These licenses are also

15  insufficient as a matter of law to establish the market rate for the Asserted Works.

16      *First*, of the seventeen licenses produced by Plaintiff, twelve are "retroactive

17  licenses," meaning Plaintiff identified an allegedly infringing use and entered into

18  the license to "settle a potential dispute" with the licensee.  DSOUF No. 95–76;

19  Grecco Depo. at 288:11-15.  These forced "licenses" made under threat of litigation

20  are akin to settlement agreements and are negotiated based on several factors to

21  resolve infringement claims.  DSOUF No. 96–97.  Accordingly, they "do not show

22  what the parties would have willingly negotiated" in the open market.  *Attachmate*

23  *Corp. v. Health Net, Inc.*, No. C09-1161 MJP, 2010 U.S. Dist. LEXIS 156918, at *3

24  (W.D. Wash. June 18, 2010); *Dongxiaoyue v. Chordiant Software*, No. C 08-00019

25  JW, 2010 U.S. Dist. LEXIS 159634, at *10 (N.D. Cal. Apr. 22, 2010) (excluding

26  prior settlement agreements and licenses made under threat of litigation because they

27  "do not provide an accurate reflection of what a willing licensor would do in an arm's

28  length transaction"); *Latin Am. Music Co. v. Spanish Broad. Sys., Inc.*, 232 F. Supp.

-19-

3d 384, 392-93 (S.D.N.Y. 2017) (finding a "settlement agreement is not probative of what Plaintiff's actual damages might be").  Plaintiff refused to produce settlement agreements from its hundreds of prior lawsuits because they are "not relevant" and confirmed it will not rely on prior settlement agreements for purposes of calculating its damages.  DSOUF Nos. 98–100.  Under Plaintiff's own logic, the retroactive licenses are settlement agreements and likewise irrelevant to establishing the market value of the Asserted Works.

*Second*, the five actual prior licenses Plaintiff produced are neither comparable nor probative of the market value of the Asserted Works.  DSOUF Nos. 101–112.  Three of the licenses admittedly do not relate to any of the Asserted Works at issue in this case, *id.* Nos. 102, 104, and 106, and cannot establish the market rate of the Asserted Works.  Another license is with a German magazine and Plaintiff did not know whether it relates to any Asserted Work.  *Id.* Nos. 109.  The single remaining license relates to the Seventh Photograph, but it is for use of the photograph on "businessinsider.my," a Malaysian website, *id.* Nos. 110–112, and is not comparable to a license that would be entered in this case (i.e., one that would permit a TikTok user to use the photograph on TikTok).  *See Oracle*, 765 F.3d at 1093.  Additionally, Plaintiff has not provided any information relating to its negotiations with its licensees, the circumstances for entering these licenses, or how the licensing fees were calculated.  DSOUF Nos. 98.

Because Plaintiff has failed to present evidence relevant to the market rate of the Asserted Works, its actual damages are entirely speculative.  This is unsurprising because Grecco testified "I'm opting for statutory damages" and "we're asking for statutory damages."  DSOUF No. 113, Grecco Depo. at 228:18–25; 230:14–22 (adding in response to a question about the absence of actual damages, "[T]hat's why God created statutory damages").  While Plaintiff has not yet formally elected statutory damages, its complete failure to present "evidence of actual damages is a de facto election of statutory damages."  *See Latin Am. Music Co.*, 232 F. Supp. 3d

at 392 (granting summary judgment on actual damages).  The Court should grant summary judgment on this issue.

## V. <u>CONCLUSION</u>

Plaintiff's claims of secondary copyright infringement liability required Plaintiff to send TTI takedown notices that fully complied with Subsection 512(c)(3) of the DMCA.  But Plaintiff's takedown notices were admittedly sent without *any* consideration of whether the allegedly infringing uses were fair use—which is required by the Ninth Circuit even if serial litigant like Plaintiff regards it as "BS." Plaintiff's failure to provide TTI notice of infringement via legally effective takedown notices warrants granting summary judgment on all of Plaintiff's claims. Additionally, summary judgment is warranted on Plaintiff's claim for vicarious infringement due to an absence of direct financial benefit to TTI, as well as on the issues of TTI's profits and Plaintiff's actual damages, which there is no non-speculative evidence to support.

Dated:    August 22, 2025

DORSEY & WHITNEY LLP

By: */s/ J. Michael Keyes*
J. Michael Keyes (SBN 262281)
  *keyes.mike@dorsey.com*
Connor J. Hansen (*pro hac vice*)
  *hansen.connor@dorsey.com*
Dylan J. Harlow (*pro hac vice*)
  *harlow.dylan@dorsey.com*
Columbia Center
701 Fifth Avenue, Suite 6100
Seattle, WA
Telephone:  206.903.8800
Facsimile:  206.903.8820

DORSEY & WHITNEY LLP
Kent J. Schmidt (SBN 195969)
  *schmidt.kent@dorsey.com*
600 Anton Boulevard, Suite 200
Costa Mesa, CA 92626
Telephone:  714.800.1400
Facsimile:  714.800.1499

*Attorneys for Defendant TikTok, Inc.*

**L.R. 11-6.2. CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant TikTok Inc. certifies that this brief contains 6,870 words, which complies with the word limit of L.R. 11-6.

Dated: August 22, 2025

*/s/ J. Michael Keyes*
J. Michael Keyes, SBN 262281

MEMO OF POINTS AND AUTHORITIES
MOTION FOR SUMMARY JUDGMENT                    Case No. 2:24-CV-04837-FLA-MAR
4925-9770-7865\1

# CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2025, a true and correct copy of the foregoing was filed electronically using the Court's CM/ECF system, which shall send notification of such filing to all counsel of record.  Any counsel of record who has not consented to electronic service through the Court's CM/ECF system will be served by electronic mail.


*/s/ J. Michael Keyes*
J. Michael Keyes, SBN 262281

MEMO OF POINTS AND AUTHORITIES
MOTION FOR SUMMARY JUDGMENT                    Case No. 2:24-CV-04837-FLA-MAR
4925-9770-7865\1