DORSEY & WHITNEY LLP
J. Michael Keyes (SBN 262281)
  keyes.mike@dorsey.com
Connor J. Hansen (*pro hac vice*)
  hansen.connor@dorsey.com
Dylan J. Harlow (*pro hac vice*)
  harlow.dylan@dorsey.com
701 Fifth Avenue, Suite 6100
Seattle, WA 98104
Telephone: 206.903.8800
Facsimile:  206.903.8820

DORSEY & WHITNEY LLP
Kent J. Schmidt (SBN 195969)
  schmidt.kent@dorsey.com
600 Anton Boulevard, Suite 200
Costa Mesa, CA 92626
Telephone:  714.800.1400
Facsimile:   714.800.1499

*Attorneys for Defendant TikTok, Inc.*

REDACTED

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL GRECCO PRODUCTIONS INC., <br><br> *Plaintiff*, <br><br> v. <br><br> TIKTOK, INC., <br><br> *Defendant*. | Case No. 2:24-CV-04837-FLA-MAR <br><br> **DEFENDANT'S STATEMENTS OF UNCONTROVERTED FACTS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT** <br><br> Hon. Fernando L. Aenlle-Rocha <br> Date:  September 26, 2025 <br> Time:  1:30pm <br> Courtroom: 6B <br><br> Filed concurrently with: <br> (1) Notice of Motion and Motion; <br> (2) Memorandum of Points and Authorities; <br> (3) Declaration of Jemili Boutros; <br> (4) Declaration of J. Michael Keyes; and <br> (5) [Proposed] Order |

Defendant TikTok, Inc. ("TTI" or "Defendant") hereby submits its Statement of Uncontroverted Facts in support of its Motion for Summary Judgment or Partial Summary Judgment.

All evidentiary citations herein are to either: (1) the Declaration of Jemili Boutros In Support of Defendant's Motion for Summary Judgment or Partial Summary Judgment ("Boutros Decl."); (2) the Declaration of J. Michael Keyes In Support of Defendant's Motion for Summary Judgment or Partial Summary Judgment ("Keyes Decl."); (3) Defendant's Exhibits 1-15, which are attached to the Boutros Declaration and the Keyes Declaration; or (4) the pleadings in this case.

As cited to in this Statement of Uncontroverted Facts, Exhibits 1-3 are attached to the Boutros Declaration and Exhibits 4-15 are attached to the Keyes Declaration.

## **TTI, the TikTok Platform, and TTI's Copyright Polices**

| Undisputed Fact | Evidence |
|---|---|
| 1. TTI provides the TikTok platform in the United States. | Boutros Decl. ¶ 3. |
| 2. TikTok is an online entertainment platform that allows user to create, share, and engage with content posted by other users. | Boutros Decl. ¶ 3. |
| 3. TikTok users engage with the platform by creating and sharing videos or watching and interacting with videos posted by others. | Boutros Decl. ¶ 4. |
| 4. ████████████████████ | Exh. 6, Boutros Depo. at 28:12-14. |
| 5. ████████████████████ | Boutros Decl. ¶ 4. |

| Undisputed Fact | Evidence |
|---|---|
| 6. Videos on TikTok relate to a variety of topics including politics, educational content, news, family, comedy, and users' jobs and hobbies. | Boutros Decl. ¶ 4. |
| 7. Use of the TikTok platform is subject to TTI's Copyright Policy. | Boutros Decl. ¶ 6.<br>Exh. 1 at 5 ("As a condition of your access to and use of [TikTok], you agree to the terms of the Copyright Policy.") |
| 8. The Copyright Policy informs users that TTI does "not allow any content that infringes copyright." | Exh. 2 at 1 ("We do not allow any content that infringes copyright.") |
| 9. The Copyright Policy sets forth procedures for copyright owners to report alleged infringement. | Exh. 2 at 2.<br>Exh. 6, Boutros Depo. at 16:3-16. |
| 10. Copyright owners may submit a "Copyright Infringement Report" to request removal of alleged infringing content from TikTok. | Exh. 2 at 2 ("You may . . . file a Copyright Infringement Report to request the removal of the alleged infringing content from TikTok via our online form or in-app.") |
| 11. The Copyright Policy instructs copyright owners to submit a Copyright Infringement Report using an online form or the TikTok app. | Exh. 2 at 2 ("You may . . . file a Copyright Infringement Report to request the removal of the alleged infringing content from TikTok via our online form or in-app.") |
| 12. The Copyright Policy requires that copyright owners comply with statutory requirements necessary for the evaluation of their Reports. | Exh. 2 at 2 ("Please be aware that the United States Digital Millennium Copyright Act (DMCA) or similar laws in other countries outline the statutory requirements necessary for reporting copyright infringement by submitting a compliant notification.") |
| 13. The Copyright Policy instructs copyright owners that before submitting a Report they should consider whether the content they want to report may be a permissible use of their copyrights. | Exh. 2 at 2 ("Before submitting a report, you should consider whether the content you want to report may be a permissible use of your copyright.") |

| Undisputed Fact | Evidence |
|---|---|
| 14. The Copyright Policy warns that submitting a misleading or fraudulent report will result in the report being denied. | Exh. 2 at 2 ("Please also be aware that intentionally submitting a misleading or fraudulent report will result in your report being denied.") |
| 15. TTI received more than 400,000 copyright removal requests in 2023. | Boutros Decl. ¶ 10. Exh. 3 at 1. |
| 16. In 2023, approximately 58% of the copyright removal requests received by TTI resulted in content being removed from TikTok. | Boutros Decl. ¶ 10. Exh. 3 at 1. |
| 17. TTI received more than 500,000 copyright removal requests in 2024. | Boutros Decl. ¶ 10. Exh. 3 at 1. |
| 18. In 2024, approximately 67% of the copyright request received by TTI resulted in content being removed from TikTok. | Boutros Decl. ¶ 10. Exh. 3 at 1. |
| 19. ████████ | Exh. 6, Boutros Depo. at 17:16-24; 30:24-31:12. Boutros Decl. ¶ 8. |
| 20. ████████ | Boutros Decl. ¶ 11. Exh. 6, Boutros Depo. at 17:16-24; 44:12-21. |
| 21. ████████ | See Boutros Decl. ¶ 11. Exh. 6, Boutros Depo. at 44:12-2; 44:25-45:8. |
| 22. ████████ | Exh. 6, Boutros Depo. at 48:10-14; 65:6-11. Boutros Decl. ¶ 11. |
| 23. ████████ | Exh. 6, Boutros Depo. at 108:23-25. Boutros Decl. ¶ 11. |
| 24. Upon review of the notices, TTI determined the alleged acts of | Boutros Decl. ¶ 12. |

| Undisputed Fact | Evidence |
|---|---|
| infringement are fair use and did not need to be removed. | |

**Plaintiff Michael Grecco Productions, Inc. ("Plaintiff" or "MGP"), its Copyrights, and the Asserted Works**

| Undisputed Fact | Evidence |
|---|---|
| 25.  MGP is a corporation formed for liability and tax reasons. | Exh. 4, Grecco Depo. at 55:21-24. |
| 26.  MGP has no employees. | Exh. 4, Grecco Depo. at 21:5-22:15. |
| 27.  Michael Grecco ("Grecco") is the sole owner of MGP. | Exh. 4, Grecco Depo. at 21:5-10. |
| 28.  MGP alleges it owns the copyrights at issue in this case. | Dkt. 46 ¶ 10. |
| 29.  Plaintiff alleges it owns the copyright to twenty-two photographs that have been infringed in this case. | Dkt. 46 ¶¶ 12-54. |
| 30.  Each of the Asserted Works is a photograph of one or more celebrities. | Dkt. 46 ¶¶ 12-54. |
| 31.  Each of the Asserted Works was created between 1980 and 2004. | Dkt. 46 ¶¶ 12-54. Exh. 4, Grecco Depo. at 78:20-79:1; 97:5-19; 100:23-101:1; 102:16-19; 113:8-14; 119:2-4; 119:15-120:1. |
| 32.  Grecco took each of the photographs at issue in this case. | Dkt. 46 ¶¶ 12-55. |
| 33.  Grecco was commissioned by third parties to take each of the Asserted Works. | Exh. 4, Grecco Depo. at 33:14-16 (Q: . . . you were commissioned to take those photographs; right? A: That is correct); 60:9-17; 103:6-10; 73:1-13; 69:6-15; 111:5-16; 111:21-112:7; 112:19-113:7. |
| 34.  Plaintiff has filed over 100 copyright litigation lawsuits in federal court. | Exh. 4, Grecco Depo. at 140:18-24 (Q: . . . how many federal complaints for copyright infringement has Michael Grecco Productions, Inc. or you |

| Undisputed Fact | Evidence |
|---|---|
| | personally, sir, filed. How many? A: I would have to look at the records. It's over 100.)<br>Exh. 5, Yamada Depo. at 41:15-42:5 (Q: Okay. So somewhere between 100 to 150 cases since January of 2018; is that right? A: Approximately.) |
| 35. Plaintiff has generated more than $5 million from its copyright litigation lawsuits. | Exh. 4, Grecco Depo. at 195:25-196:6. |
| 36. None of Plaintiff's copyright litigation lawsuits have been tried. | Exh. 4, Grecco Depo. at 193:17-194:3 ("No, none of them have been tried."). |
| 37. The majority of Plaintiff's copyright litigation lawsuits have been resolved through default judgment or settlement. | Exh. 4, Grecco Depo. at 194:14-195:1. |
| 38. MGP has a team of independent contractors who search for infringing uses of Plaintiff's works. | Exh. 4, Grecco Depo. at 22:1-6; 26:15-21 (Q: How did you discover the allegedly infringing works in this case? A: . . . we have a team of people that does it.); 27:16-19.<br>Exh. 5, Yamada Depo. 17:14-22. |
| 39. Grecco's wife, Ms. Elizabeth Waterman, manages Plaintiff's independent contractors. | Exh. 4, Grecco Depo. at 26:15-21.<br>Exh. 5, Yamada Depo. at 19:24-20:1; 23:6-8, 98:7–9. |
| 40. Plaintiff's "admin" Torina Yamada searches for infringing uses of Plaintiff's photographs. | Exh. 5, Yamada Depo. at 14:17–19, 15:6–17,17:23-18:1.<br>Exh. 4, Grecco Depo. at 26:22-24, 203:15–3. |
| 41. Ms. Waterman receives a commission from Plaintiff's litigation. | Exh. 5, Yamada Depo. at 98:7-9.<br>Exh. 4, Grecco Depo. at 203:13-14. |
| 42. Ms. Yamada receives a commission for each instance of infringement she locates. | Exh. 4, Grecco Depo. at 202:17-21; 203:15-204:3.<br>Exh. 5, Yamada Depo. at 14:17-15:22. |

### The Alleged Copyright Infringement By TikTok Users

| Undisputed Fact | Evidence |
|---|---|
| 43. Twenty-five TikTok users are alleged to infringe Plaintiff's copyrights. | Exh. 11 (Exh. N to Complaint). Exh. 10. Exh. 4, Grecco Depo. at 120:17-121:3. |
| 44. The TikTok users created the allegedly infringing content. | Dkt. 46 ¶ 60. Boutros Decl. ¶ 12. |
| 45. TTI itself did not create or post any of the allegedly infringing content. | Boutros Decl. ¶ 12. Exh. 4, Grecco Depo. at 120:17-121:7. |
| 46. Twenty of the TikTok users are alleged to infringe by using an Asserted Work in a video posted by the user to TikTok. | Exh. 11 at 2-37, 39-47, 50-56, 66-88, 90-134. |
| 47. Five of the TikTok users are alleged to infringe by using an Asserted Work as a profile picture on their TikTok accounts. | Exh.11 at 38, 48-49, 57-64, 65, 89. Exh. 5, Yamada Depo. at 133:19-134:3; 145:19-3; 153:6-11; 154:15-20; 160:16-161:2 |

### Plaintiff Did Not Consider Fair Use Before Submitting Takedown Notices to TTI

| Undisputed Fact | Evidence |
|---|---|
| 48. Plaintiff sent takedown notices to TTI relating to the twenty-five alleged acts of infringement. | Dkt. 46 ¶ 62. |
| 49. Plaintiff did not submit the takedown notices to TTI using TTI's online form. | Exh. 5, Yamada Depo. at 113:8-12. |
| 50. Plaintiff only submitted the takedown notices to TTI via email. | Exh. 5, Yamada Depo. at 113:13-14. |
| 51. Plaintiff uses a template to prepare its takedown notices (herein after "Takedown Template") | Exh. 4, Grecco Depo. at 259:1-6 ("It's a form. The information gets plugged into it."); 259:20-260:3. Exh. 5, Yamada Depo. at 112:1-24. |

| Undisputed Fact | Evidence |
|---|---|
| 52. Plaintiff's contractors input information into the Takedown Template. | Exh. 4, Grecco Depo. at 259:1-6. Exh. 5, Yamada Depo. at 113:3-7. |
| 53. The takedown notices sent to TTI in this case were prepared using Plaintiff's Takedown Template. | Exh. 4, Grecco Depo. at 258:23-259:6. Exh. 5, Yamada Depo. at 175:2-176:1. |
| 54. The only information that differs between the takedown notices sent by Plaintiff to TTI is the identification of the work, location, file, video stamp, and infringing post. | Exh. 5, Yamada Depo. at 175:9-13 (Q: . . . what information would change in any given takedown notice? A: It would be work, location, file, video stamp, and infringer, infringing post.) |
| 55. The takedown notices MGP sent to TTI contain the statement: "I have a good faith belief that the use of the material that appears on the service is not authorized by myself, the copyright owner, my agent, or by operation of law" (hereinafter, the "good faith belief statement"). | Exh. 12 at 2. Exh. 5, Yamada Depo. at 175:23-176:1. |
| 56. The good faith belief statement in the takedown notices sent to TTI is from Plaintiff's Takedown Template. | Exh. 12 at 2. Exh. 5, Yamada Depo. at 175:23-176:1. |
| 57. The takedown notices MGP sent to TTI contain the statement: "I declare under penalty of perjury, pursuant to the laws of the United States of America, that this notification is true and accurate, and that I am either the copyright owner or I am authorized by the copyright owner, its agent, or by operation of law" (hereinafter, the "accuracy statement"). | Exh. 12 at 2. Exh. 5, Yamada Depo. at 175:23-176:1. |
| 58. The accuracy statement in the takedown notices sent to TTI is from Plaintiff's Takedown Template. | Exh. 12 at 2. Exh. 5, Yamada Depo. at 175:23-176:1. |

| Undisputed Fact | Evidence |
|---|---|
| 59. Plaintiff's takedown process is automated for content on TikTok. | Exh. 4, Grecco Depo. at 208:19-209:7 ("its automated that, if there's no license, that they send a takedown notice"). |
| 60. If a user does not have a license from Plaintiff to use MGP's photographs on TikTok, MGP sends a takedown notice to TTI. | Exh. 4, Grecco Depo. at 208:19-209:7; 210:16-20 (Q: Who made the determination that it was infringing? A: Sans license and sans being tagged, its infringing so that's my rule.). |
| 61. Grecco is responsible for determining whether a potentially infringing use is a fair use. | Exh. 5, Yamada Depo. at 182:3-5 (Q: And ultimately is it Michael who determines if something is or is not fair use? A: Yes.) |
| 62. Grecco did not review the takedown notices before they were submitted to TTI. | Exh. 4, Grecco Depo. at 258:23-25. |
| 63. Grecco did not review each allegedly infringing use before the takedown notices were submitted to TTI. | Exh. 4, Grecco Depo. at 209:15-210:2 ("I did not look at every one, and I did not approve every one."). |
| 64. Grecco did not consider fair use before authorizing MGP to send the takedown notices to TTI. | Exh. 4, Grecco Depo. at 211:1-4 (Q: Did your company consider the doctrine of fair use before issuing the takedown notice with respect to this first video? A: No.); 211:9-15 (Q: So is it fair to say, then, sir, that before your company issued any of the takedown notices in this case, that you didn't consider whether—you didn't consider fair use? A: I still don't consider fair use.); 260:18-24 (Q: And it's your position that the allegations of infringement in these DMCA notices were true and accurate even though you did not consider fair use before sending these DMCA notices; right? A: Correct. I still don't consider fair use; correct.) |

| Undisputed Fact | Evidence |
|---|---|
| 65. Grecco testified that the fair use defense is "BS" | Exh. 4, Grecco Depo. at 211:1-8. |
| 66. Grecco testified that MPG refers to the fair use defense as the "FU defense." | Exh. 4, Grecco Depo. at 211:1-8. |

**Defendant Did Not Receive Any Direct Financial Benefit from the Alleged Infringement.**

| Undisputed Fact | Evidence |
|---|---|
| 67. Plaintiff does not know when TikTok users who engaged with the alleged infringing content joined TikTok. | Exh. 4, Grecco Depo. at 254:6-10 (Q: And with respect to all of these individuals that have either liked, commented, shared, or saved any of the videos, you have no idea when they joined TikTok? A: That is correct.). |
| 68. Plaintiff does not know why TikTok users who engaged with the alleged infringing content joined TikTok. | Exh. 4, Grecco Depo. at 254:11-13 (Q: And you have no idea why they joined TikTok; right? A: That is correct.). |
| 69. Plaintiff has no facts to suggest that TikTok users were drawn to TikTok because of the alleged infringing content. | Exh. 4, Grecco Depo. at 254:14-20 (Q: And you're not aware, again, with respect to all of these individuals that either liked, commented, shared, or saved any of the videos reflected in Exhibit 21, you have no facts to suggest that they were drawn to TikTok because of these videos; right? A: That is correct.); 233:20-23; 249:4-9; 252:3-6. |
| 70. Users do not go to TikTok for one video. | Exh. 4, Grecco Depo. at 222:11-19 ("No one goes to TikTok for one video. They go to be entertained."); 248:12-14. |

| Undisputed Fact | Evidence |
|---|---|
| 71. None of the Asserted Works have been used in an advertisement on TikTok. | Exh. 4, Grecco Depo. at 127:11-12 ("none of my images have been used in an ad on TikTok"); 133:2-3 ("There are—no one is saying that my work was used in an advertisement . . . ."). |
| 72. None of the Asserted Works have been used on TikTok Shop. | Boutros Decl. ¶ 13. |
| 73. None of the Asserted Works have been used to promote or sell products on TikTok. | Boutros Decl. ¶ 13. |
| 74. Certain qualified TikTok users can join the Creator Program. | Exh. 6, Boutros Depo. at 24:7-12. |
| 75. The Creator Program allows TikTok users to monetize their content. | Exh. 6, Boutros Depo. at 24:7-12. |
| 76. TTI does not receive any profits from its users' monetization through the Creator Program. | Exh. 6, Boutros Depo. at 27:5-12 ("TikTok doesn't take a profit from their funds, so my answer would be no to that."); 27:16-18. |
| 77. TTI did not generate any funds from the alleged infringement. | Exh. 6, Boutros Depo. at 95:3-7. |
| 78. TTI did not generate any revenue from the alleged infringement. | Boutros Decl. ¶ 14. |
| 79. TTI did not receive any financial benefit from the alleged infringement. | Exh. 6, Boutros Depo. at 95:8-10 (Q: So they did not receive any financial benefit here? A: No.); 97:5-12. Boutros Decl. ¶ 14. |

**Plaintiff Has No Evidence to Support its Claim for Defendants Profits or Plaintiff's Actual Damages**

| Undisputed Fact | Evidence |
|---|---|
| *See* Facts Nos. 71-79 above. | |
| 80. The only evidence relating to TTI's advertising revenues provided by Plaintiff to date is Mr. Grecco's | Exh. 4, Grecco Depo. at 148:18-22. |

-11-

| Undisputed Fact | Evidence |
|---|---|
| testimony relating to projected advertising revenue for 2024. | |
| 81.   The projected advertising revenues identified by Plaintiff are from "the Internet." | Exh. 4, Grecco Depo. at 148:18-22. |
| 82.   Plaintiff has not disclosed the source of the projected advertising revenues. | Keyes Decl. ¶ 14. |
| 83.   Plaintiff has not produced the source of the projected advertising revenues. | Keyes Decl. ¶ 14. |
| 84.   Plaintiff claims its actual damages are calculated "by multiplying the license it would have charged by the number of years the photographs were published." | Keyes Decl. ¶ 5.<br>Exh. 7, Plaintiff's Initial Disclosures |
| 85.   The license fee for each of the works is determined by the end user, as calculated by the shopping cart tool on Plaintiff's website. | Exh. 8, Response to Interrogatory Nos. 4 and 5.<br>Keyes Decl. ¶ 6. |
| 86.   "No one uses" the shopping cart tool on Plaintiff's website. | Exh. 4, Grecco Depo. at 265:21-266:11. |
| 87.   Plaintiff generated zero revenue through the shopping cart tool in 2024. | Exh. 4, Grecco Depo. at 266:1-6. |
| 88.   Plaintiff generated zero revenue through the shopping cart tool in 2023. | Exh. 4, Grecco Depo. at 266:12-16. |
| 89.   Plaintiff generated zero revenue through the shopping cart tool in 2022. | Exh. 4, Grecco Depo. at 266:23-24. |
| 90.   Plaintiff generated zero revenue through the shopping cart tool in 2021. | Exh. 4, Grecco Depo. at 266:25-267:1. |
| 91.   In the "entire history" of Plaintiff's website, only one license has been granted using the shopping cart tool. | Exh. 4, Grecco Depo. at 266:25-267:5. |

| Undisputed Fact | Evidence |
|---|---|
| 92. The only license granted using the shopping cart tool relates to a photograph that is not at issue in this case. | Exh. 4, Grecco Depo. at 267:1-8. |
| 93. Grecco testified he does not know how much revenue Plaintiff derived from the Asserted Works. | Exh. 4, Grecco Depo. at 64:10-15; 67:6-11; 72:9-13; 75:8-17; 79:24-80:3; 84:10-19; 85:13-17; 92:2-7; 99:2-11; 112:8-16. |
| 94. Plaintiff produced seventeen prior licensing agreements. | Keyes Decl. ¶ 15.<br>Exh. 4, Grecco Depo. at 296:8-14 (testifying to Exhibits 24 through 40 to the Grecco deposition). |
| 95. Twelve of the license agreements produced by Plaintiff are "retroactive" licenses. | Exh. 4, Grecco Depo. at 296:8-14; 297:22-25 (testifying that Exhibits 29 through 40 to the Grecco deposition are retroactive licenses); 284:24-285:6; 288:11-15; 290:16-291:4; 298:16-22; 299:14-22; 300:7-301:4. |
| 96. Retroactive licenses are the result of Plaintiff locating an unauthorized use of its photographs and contacting the user to negotiate a license. | Exh. 4, Grecco Depo. at 284:24-285:6; 290:16-291:4; 298:16-22; 299:14-22; 300:7-301:4. |
| 97. Plaintiff's retroactive licenses are negotiated after infringement began. | Exh. 4, Grecco Depo. at 292:16-21 ("Every one of these is a negotiation. So if they want to pay more and continue to use the photograph, they pay more. Like, every one of these is a negotiation based on the size of the company, the size of the platform, so on and so forth."); 300:10-17 ("we sent them a demand letter that they need to pay for our content. Whether they get to keep it up or not is a matter of how much they're going to pay and what the negotiation is.") |
| 98. Plaintiff did not produce documents relating to its negotiations with its licensees. | Exh. 9, Response to Requests for Production Nos. 19 and 20.<br>Keyes Decl. ¶¶ 7, 15. |

| Undisputed Fact | Evidence |
|---|---|
| 99. Plaintiff did not produce its settlement agreements because they are "not relevant" to this matter. | Exh. 9, Response to Request for Production No. 7. *See also* Exh. 15 at 1. |
| 100. Plaintiff is not relying on settlement agreements for its actual damages. | Keyes Decl. ¶ 13. Exh. 15 t 1. *See also* Exh. 9, Response to Request for Production No. 7. |
| 101. Plaintiff has a license with Delphi Internet. | Exh. 4, Grecco Depo. at 267:17-19. |
| 102. Plaintiff's license with Delphi Internet does not relate to a photograph at issue in this case. | Exh. 4, Grecco Depo. at 296:2-8. |
| 103. Plaintiff has a license with Anderson Consulting. | Exh. 4, Grecco Depo. at 269:15-270:4. |
| 104. Plaintiff's license with Anderson Consulting does not relate to a photograph at issue in this case. | Exh. 4, Grecco Depo. at 270:19-271:9. |
| 105. Plaintiff has a license with Propane Educational and Research Council. | Exh. 4, Grecco Depo. at 272:5-16. |
| 106. Plaintiff's license with Propane Educational and Research Council does not relate to a photograph at issue in this case. | Exh. 4, Grecco Depo. at 272:22-273:3. |
| 107. Plaintiff has a license with G+J Corporate Editors. | Exh. 4, Grecco Depo. at 273:12-17. |
| 108. G+J Corporate Editors is a German magazine. | Exh. 4, Grecco Depo. at 273:16-19. |
| 109. Grecco was not sure whether the license with G+J Corporate Editors relates to a photograph at issue in this case. | Exh. 4, Grecco Depo. at 274:1-7. |
| 110. Plaintiff has a license with Business Insider. | Exh. 4, Grecco Depo. at 275:2-15. Exh. 13 at 1. |

-14-

DEFENDANT'S STATEMENTS OF UNCONTROVERTED FACTS

Case No. 2:24-CV-04837-FLA-MAR

| | |
|---|---|
| 111. The license with Business Insider permits use of Plaintiff's photograph "on the Businessinsider.my website only." | Exh. 13 at 1. |
| 112. Businessinsider.my is a Malaysian website. | Keyes Decl. ¶ 12. Exh. 14 at 1. |
| 113. Grecco testified he is opting for statutory damages. | Exh. 4, Grecco Depo. at 218:2-4; 228:18-25; 230:14-22. |

Dated: August 22, 2025

DORSEY & WHITNEY LLP

By: */s/ J. Michael Keyes*
J. Michael Keyes (SBN 262281)
  *keyes.mike@dorsey.com*
Connor J. Hansen (*pro hac vice*)
  *hansen.connor@dorsey.com*
Dylan J. Harlow (*pro hac vice*)
  *harlow.dylan@dorsey.com*
Columbia Center
701 Fifth Avenue, Suite 6100
Seattle, WA
Telephone: 206.903.8800
Facsimile: 206.903.8820

DORSEY & WHITNEY LLP
Kent J. Schmidt (SBN 195969)
  *schmidt.kent@dorsey.com*
600 Anton Boulevard, Suite 200
Costa Mesa, CA 92626
Telephone: 714.800.1400
Facsimile: 714.800.1499

*Attorneys for Defendant TikTok, Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2025, a true and correct copy of the foregoing was filed electronically using the Court's CM/ECF system, which shall send notification of such filing to all counsel of record. Any counsel of record who has not consented to electronic service through the Court's CM/ECF system will be served by electronic mail.

/s/ J. Michael Keyes
J. Michael Keyes, SBN 262281