Lauren M. Hausman (CA Bar No. 349514)
**COPYCAT LEGAL PLLC**
113 N San Vicente Blvd
Suite 232
Beverly Hills, CA 90211
T: (877) 437-6228
E: lauren@copycatlegal.com

Jonathan Alejandrino, *pro hac vice*
**COPYCAT LEGAL PLLC**
3111 North University Drive
Suite 301
Coral Springs, FL 33065
T: (877) 437-6228
E: jonathan@copycatlegal.com

Attorneys for Plaintiff
Michael Grecco Productions, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL GRECCO PRODUCTIONS, INC.,<br><br>               Plaintiff,<br><br>        v.<br><br>TIKTOK, INC.,<br><br>               Defendant. | Civil Action No. 2:24-cv-04837-FLA-MAR<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**<br><br>**(OPPOSED)**<br><br>DATE: September 26, 2025<br>TIME: 1:30 P.M.<br>JUDGE: Fernando L. Aenlle-Rocha |

# <u>TABLE OF CONTENTS</u>

**INTRODUCTION** ...................................................................**5**

**ARGUMENT** ........................................................................**6**

   **I.   Plaintiff's Takedown Notices are Effective as Plaintiff Considered Fair Use in Accord with both the DMCA Requirements and Ninth Circuit Precedent.** ...................................................**6**

   **II.   Defendant Had Actual Knowledge of the Infringement** ...................**9**

   **III.   Summary Judgment is Inappropriate on Plaintiff's Vicarious Copyright Infringement Claim Because TTI Obtained Direct Financial Benefit from the Alleged Infringement** ........................................**11**

      **A.   Direct infringement** .......................................................**12**

      **B.   Defendant has right and ability to supervise the infringing conduct**……………………… ...................................................**12**

      **C.   Defendant has a Direct Financial Interest in the Infringing Activity** ………………………………………………………**14**

   **IV.   Plaintiff is Entitled to Seek Actual Damages** ..................................**17**

      **A.   Defendant's Profits** ........................................................**17**

      **B.   Lost Licensing/Actual Damages** ........................................**18**

**CONCLUSION** ...................................................................**22**

**LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE** ........................**22**

COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

# **TABLE OF AUTHORITIES**

**Cases**

BackGrid USA, Inc. v. Twitter, Inc., No. CV 22-9462-DMG (ADSx), 2024 U.S. Dist. LEXIS 103090 (C.D. Cal. June 7, 2024) ...........................................11, 14

Bender v. City of Rialto, No. 5:20-cv-02171-JWH-SPx, 2022 U.S. Dist. LEXIS 91252, 2022 WL 1502514 (C.D. Cal. Mar. 21, 2022)......................................21

Chalumeau Power Sys. LLC v. Alcatel-Lucent, Civil Action No. 11-1175-RGA (D. Del. July 18, 2012)........................................................................................11

Corson v. NetMedia101, LLC, No. 23-cv-4136 (BMC), 2023 U.S. Dist. LEXIS 191824 (E.D.N.Y. Oct. 25, 2023) ......................................................................19

Davis v. Gap, Inc., 246 F.3d 152 (2d Cir. 2001) ................................................20

Dongxiaoyue v. Chordiant Software, No. C 08-00019 JW (N.D. Cal. Apr. 22, 2010)......................................................................................................................19

Ellison v. Robertson, 357 F.3d 1072 (9th Cir. 2004) ...................................14, 16

Ipvx Patent Holdings v. 8x8, Inc., No. C 13-1707 SBA (N.D. Cal. Mar. 31, 2014) ...............................................................................................................................11

King v. Biter, No. 1:15-cv-00414-JLT-SAB (PC), 2023 U.S. Dist. LEXIS 30285 (E.D. Cal. Feb. 23, 2023) ....................................................................................21

COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

<u>Lenz v. Universal Music Corp.</u>, 815 F.3d 1145 (9th Cir. 2016)............................6

<u>Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.</u>, 591 F. Supp. 2d 1098 (N.D. Cal. 2008) ........................................................................................16

<u>McRoberts Software, Inc. v. Media 100, Inc.</u>, 329 F.3d 557 (7th Cir. 2003) ...... 18

<u>Oracle Corp. v. SAP AG</u>, 765 F.3d 1081 (9th Cir. 2014) ...................................18

<u>Perfect 10, Inc. v. Amazon.com, Inc.</u>, 508 F.3d 1146 (9th Cir. 2007) ........... 10, 11

<u>Perfect 10, Inc. v. Giganews, Inc.</u>, 847 F.3d 657 (9th Cir. 2017)........................ 16

<u>Polar Bear Prods. v. Timex Corp.</u>, 384 F.3d 700 (9th Cir. 2004).................. 17, 18

<u>Reiffer v. Shearwater Pac. Capital Mgmt. LLC</u>, No. 18-cv-06053-JSW (RMI), 2020 U.S. Dist. LEXIS 227579 (N.D. Cal. May 13, 2020) ...............................20

<u>Religious Tech. Ctr. v. NetCom On-Line Comm. Servs.</u>, 907 F. Supp. 1361 (N.D. Cal. 1995) ...........................................................................................9

<u>Wall Data Inc. v. L.A. Cnty. Sheriff's Dep't</u>, 447 F.3d 769 (9th Cir. 2006)....... 18

## **Statutes**

17 U.S.C. § 504(b) .............................................................................17

17 U.S.C. § 512 (c)(3)............................................................................6

COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

Plaintiff Michael Grecco Productions, Inc. ("Plaintiff") hereby files this memorandum in opposition to defendant TikTok, Inc.'s ("Defendant") Motion for Summary Judgment or Partial Summary Judgment (the "Motion") [D.E. 70].

## **INTRODUCTION**

Defendant crafts a novel story (the first five pages of its Motion) spinning tales of woe. Defendant endeavors to paint Plaintiff as a villain for protecting its copyright. Defendant's thin attempts to attack Plaintiff's reputation are nothing more than desperate smoke and mirrors to distract from its failures to comply with its requirements under the DMCA. Defendant consistently misses the point of what the law requires and instead mischaracterizes the facts to support its incorrect narrative.

Defendant, as promised in its own copyright policy, claims to "respect IP rights," yet ***deliberately disregards*** what is required of it. Interestingly, and undisputedly, Defendant has promoted itself from a neutral third-party into the role of fact finder to make its own fair use assessments. The Court should not tolerate Defendant's encroachment on the role of this Court or the jury.

While Defendant's efforts are laudable, its Motion falls woefully short. The Court should unequivocally deny the Motion.

COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

# **ARGUMENT**

I.    **Plaintiff's Takedown Notices are Effective as Plaintiff Considered Fair Use in Accord with both the DMCA Requirements and Ninth Circuit Precedent.**

Uniquely, in one stroke of the keyboard Defendant chastises Plaintiff for its DMCA takedown notice 'template' and 'boilerplate language,' but conversely touts that there are mandatory requirements that must be met for a DMCA takedown notice to be compliant. Plaintiff concurs with Defendant that there are requirements that must be met—and those requirements were met here.

Simply put, Plaintiff's takedown notices comply with 17 U.S.C. § 512(c)(3)(A) as a matter of law. While Defendant may prefer to deal in half-truths, Plaintiff unequivocally considered fair use before sending its DMCA takedown notices.

> Section 512(c)(3)(A) sets forth the elements that such a 'takedown notification' must contain. These elements include identification of the copyrighted work, identification of the allegedly infringing material, and, critically, a statement that the copyright holder believes in good faith the infringing material 'is not authorized by the copyright owner, its agent, or the law.

Lenz v. Universal Music Corp., 815 F.3d 1145 (9th Cir. 2016) (internal quotations omitted). To Defendant's apparent chagrin, Plaintiff has complied with *all* of 17 U.S.C. § 512 (c)(3)'s requirements. Plaintiff's twenty-five (25) takedown notices

COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

sent to Defendant via its designated DMCA email address: copyright@tiktok.com[1] each contained the required information, including: the identity of the copyrighted work; the location of the infringing material; and, a statement of good faith.[2] Plaintiff (or an agent authorized to act on behalf of Plaintiff) subjectively considered whether the use of each photograph by Defendant's users were fair use.[3] Plaintiff did not subjectively believe the uses to be fair use, and as such, sent out its ***compliant*** DMCA takedown notices.[4]

Each of the DMCA takedown notices was reviewed by Mr. Grecco (Plaintiff's sole owner) or someone else authorized to review it on Plaintiff's behalf.[5] For each infringement, and prior to the DMCA takedown notice being sent, Mr. Grecco or someone else authorized on Plaintiff's behalf formed a good-faith belief that the infringement was not fair use.

---

[1] See the September 5, 2025 Declaration of Jonathan Alejandrino (the "Alejandrino Decl."), at ¶ 3, Exhibit A, at Boutros Tr. at 47:9-47:17; 53:13-53:17; 56:16-56:21; 57:14-57:19; 59:9-59:14: 60:5-60:9; 61:1-61:5; 62:6-62:11; 69:15-69:21; 70:18-70:23; 71:16-71:21; 72:16-72:20; 73:12-73:16; 74:10-74:14; 75:7-75:11; 76:4-76:8; 76:24-77:3; 77:22-77:25; 78:16-78:20; 79:8-79:13; 80:6-80:10; 81:3-81:7; 81:25-82:4; 82:22-83:2.

[2] D.E. 68-3, Declaration of Michael Grecco, at ¶ 36, Composite Exhibit B.

[3] Alejandrino Decl. at ¶ 4, Exhibit B, (the "Grecco Tr.") at 212:20-213:12.

[4] Alejandrino Decl. at ¶ 4, Exhibit B, at Grecco Tr. at 212:20-213:12; Declaration of Michael Grecco dated September 5, 2025 (the "Grecco Decl.") at ¶¶ 12, 13, 14.

[5] Grecco Decl., at ¶¶ 13, 14; Alejandrino Decl. at ¶ 4, Exhibit B, at Grecco Tr. at 209:8-210:8

COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

As opposed to focusing on what the law requires, Defendant instead chooses to use its word limit to villainize Plaintiff's owner. For example, Mr. Grecco was not criticizing the fair use doctrine in Plaintiff's deposition. Rather, he provided an impassioned opinion of how he believed the fair use defense was being applied here as well as his previous experiences.[6] However, this did not stop Defendant from concocting a tale of Mr. Grecco rebuffing the law. Mr. Grecco, as owner of Plaintiff, respects fair use and does not pursue cases where he believes the use to be fair.[7] This is one instance among many others of defendant mischaracterizing Plaintiff's words.

The Motion likewise seizes on Mr. Grecco's use of the word 'automated' in his deposition to argue that Plaintiff did not consider fair use in the subject takedown notices. Defendant continues to misunderstand (or mischaracterize) Plaintiff's testimony. Plaintiff's takedown process for Defendant was 'automated' to the extent that if Plaintiff's subcontractors did not locate a license (no licenses were located in this case), and the use was determined to not be fair use (each use was determined to not be fair use), the takedown notice was to be sent out (twenty-five notices were sent out).

---

[6] Alejandrino Decl. at ¶ 4, Exhibit B, at Grecco Tr. at 211:1-211:8

[7] Alejandrino Decl. at ¶ 4, Exhibit B, at Grecco Tr. at 212:14-213:12, 325:11-325:21; Grecco Decl., at ¶ 13.

COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

Ultimately, the narrative is clear—Plaintiff considered fair use. And, because fair use was considered, Plaintiff's DMCA takedown notices were compliant six ways to Sunday.

## II.    Defendant Had Actual Knowledge of the Infringement

As Defendant aptly points out, "the law requires an online service provider to be on notice of the infringement to be held liable for secondary infringement."[8] As Defendant had knowledge and was on notice of these infringements, Defendant can (and should) be held liable for secondary infringement.

Even if the Court was inclined to deem the DMCA takedown notices insufficient (they are not), Defendant had actual knowledge of the infringement and *failed* to satisfy its obligations under the DMCA.

Defendant itself directs the Court to <u>Religious Tech. Ctr.</u>, finding that:

> Where [a defendant] cannot reasonably verify a claim of infringement, either because of a possible fair use defense, … or the copyright holder's failure to provide the necessary documentation to show that there is a likely infringement, the operator's lack of knowledge will be found reasonable and there will be no liability for contributory infringement for allowing the continued distribution of the works on its system.

<u>Religious Tech. Ctr. v. NetCom On-Line Comm. Servs.</u>, 907 F. Supp. 1361, 1374 (N.D. Cal. 1995). ***Such is not the case here.*** Defendant absolutely could

---

[8] Defendant's Motion, p. 12.

COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

1    reasonably verify a claim of infringement. Plaintiff's Complaint provided: each

2    Certificate of Registration from the Copyright Office; the necessary documentation

3    to show the likelihood of infringement (e.g., providing screenshots of the

4    infringement); and, direct links to each infringement. Regardless of the fact that

5    Defendant now believes that Plaintiff did not consider fair use, at the outset of the

6    issue, Plaintiff's takedown notices included its good-faith belief statement that the

7    uses were not fair use. So, Defendant had no reason not to remove the

8    infringements and allow the put-back process to commence where necessary.

9    ████████████████████████████████████████

10   █████████████████████████████████████████

11   █████████████████████████████████████████

12   ████████████████████.[9] Accordingly, by Defendant's logic, knowledge could

13   not have been conferred by the DMCA takedown notices. That said, the Complaint

14   unequivocally could have (and did) confer actual knowledge. Ergo, Defendant has

15   had actual knowledge about all the infringements since (at the absolute latest) June

16   7, 2024, the date the original Complaint was filed. Egregiously, Defendant has

17   *actively chosen to take no actions to remove the infringing content* and continues

18   to permit it to be viewed/distributed/shared despite its knowledge and obligations.

19

20
_____

[9] Declaration of Jonathan Alejandrino dated September 5, 2025 (the "Alejandrino
Decl."), at ¶ 3, Exhibit A (the "Boutros Tr."), at 64:9-65:21.

COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

1  Cf. Ipvx Patent Holdings v. 8x8, Inc., No. C 13-1707 SBA, at *14 (N.D. Cal. Mar.

2  31, 2014) ("Accordingly, because IPVX only asserts infringement of a method

3  claim within the patent-in-suit, the filing of the instant action constitutes sufficient

4  notice under the plain language of § 287(a)."); Chalumeau Power Sys. LLC v.

5  Alcatel-Lucent, Civil Action No. 11-1175-RGA, at *3 (D. Del. July 18, 2012)

6  ("Service of the original complaint gives the defendants actual notice of the

7  patent's existence."). Defendant *unequivocally* has (and had) knowledge of the

8  infringements – whether the knowledge is deemed to have been conferred vis-à-

9  vis the DMCA takedown notices or the Complaint.

10 **III.    Summary Judgment is Inappropriate on Plaintiff's Vicarious
            Copyright Infringement Claim Because TTI Obtained Direct
11          Financial Benefit from the Alleged Infringement**

12      The Ninth Circuit has explained that one "infringes vicariously by profiting

13 from direct infringement while declining to exercise a right to stop or limit it."

14 Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1173 (9th Cir. 2007). The

15 plaintiff must establish that the defendant exercises the requisite control over the

16 direct infringer and that the defendant derives a direct financial benefit from the

17 direct infringement. Id. "Ninth Circuit authority dictates that 'a defendant exercises

18 control over a direct infringer when he has both a legal right to stop or limit the

19 directly infringing conduct, as well as the practical ability to do so.'" BackGrid

20 USA, Inc. v. Twitter, Inc., No. CV 22-9462-DMG (ADSx), 2024 U.S. Dist. LEXIS

103090, *12–13 (C.D. Cal. June 7, 2024) (quoting Amazon.com, 508 F.3d at

1173).

### A.    Direct infringement

As detailed in Plaintiff's Motion for Partial Summary Judgment [D.E. 68],

Plaintiff has established direct infringement.[10]

### B.    Defendant has right and ability to supervise the infringing conduct

Defendant has the right and ability to supervise the infringing conduct of its

users. Defendant has numerous ways to monitor content that is posted on its

Platform. Alejandrino Decl. at ¶ 3, Exhibit A, at Boutros Tr. at 12:1-12:4 ("So the

content gets uploaded. There's a series of different ways how content can get

flagged. And depending on how the flag happens, it would go to a particular team

for review."). From the moment content is uploaded to TikTok by a user, the

content can be flagged by either a user or one of Defendant's algorithms. See

Alejandrino Decl. at ¶ 3, Exhibit A, at Boutros Tr. at 12:1-12:4, 12:12-12:14, 13:5-

13:7 ("I would say that any video that gets flagged by algorithms or users reporting

the content is more of how it would get flagged." "So it's possible for someone to

upload a video, and it be immediately flagged? Yes.").

---

[10] Notably, Defendant declines to explain in its own motion that Plaintiff did not
establish direct infringement, and instead relies on its response to Plaintiff's
Motion. See Defendant's Motion pg. 13, FN 6. While the parties are not allowed
to do cross-motions, Defendant has utterly failed to prove that Plaintiff did not
establish direct infringement in its own Motion.

COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

Defendant also has community guidelines in place that dictate how users can/should engage with its Platform.[11]

> A: So on TikTok, there are different verticals of community guidelines that are specified.
> Q: And if a video violates those guidelines, how can that be reported?
> A: A user can report in-app or on the most relevant Web form report so it gets to the proper team for review.
> Q: If it's not a user, then it would be those mechanisms you discussed earlier?
> A: Yes.
> Q: Is there any human review?
> A: Yes.
> Q: When does that occur?
> A: So human review happens when a video is flagged by those strategy mechanisms I was referring to earlier, as well as when someone, a human, reports the content as well.

Alejandrino Decl. at ¶ 3, Exhibit A, at Boutros Tr. at 16:9-17:1. Defendant publishes its policies with respect to infringement on its platform, cautioning that Defendant has adopted a policy of terminating user accounts if found to be repeated infringers.[12] Simply stated, Defendant has numerous ways to supervise and control the content that is uploaded onto its Platform.

Additionally, besides Defendant having the legal right to stop or limit the directly infringing conduct, █████████████████████████

---

[11] https://www.tiktok.com/community-guidelines/en.
[12] https://support.tiktok.com/en/safety-hc/account-and-user-safety/copyright.

COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

1 ███████████████████████████████████████████████ [13] ████████

2 ████████████████████████████████████████████████████████████

3 ██████████████████████ [14]

### C.  Defendant has a Direct Financial Interest in the Infringing Activity

"Direct financial interest exists when a '[f]inancial benefit exists where the availability of infringing material acts as a draw for customers.'" BackGrid USA, Inc., 2024 U.S. Dist. LEXIS 103090, *15 (quoting Ellison v. Robertson, 357 F.3d 1072, 1078 (9th Cir. 2004)). "The standard requires a showing of proximate cause between the infringing activity and any financial benefit to the defendant, but that benefit need not be 'substantial' in light of the defendant's overall profits." Id. at *15–16 (referencing Ellison, 357 F.3d at1078–79). Given Defendant's sheer size and impressive overall profits, the financial benefit (which does exist) need not be substantial. Defendant has sizeable advertising revenue. Grecco Decl., at ¶ 15.

Defendant has a direct financial interest in the infringing conduct of its users. Defendant is an online entertainment platform that allows users to post, share, and engage with content posted by other users. Users engage with the platform – in part – to watch videos that they enjoy. Alejandrino Decl. at ¶ 3, Exhibit A, at Boutros

---

[13] Alejandrino Decl. at ¶ 3, Exhibit A, at Boutros Tr. at 17:16-24; 30:12-20.

[14] Alejandrino Decl. at ¶ 3, Exhibit A, at Boutros Tr. at 16:14-16:16; 17:16-17:24; 30:12-30:20: 31:13-31:25; 124:2-124:22; 125:22-126:7.

COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

Tr. at 28:8-28:11 ("I'm not sure how the algorithm works. I just know for the For
You feed, it's pushing content for the user who's using it to what they like or have
engaged with.").

Defendant testified that "broadly speaking, from my understanding, TikTok
can make money from advertisements or brand partnerships, maybe through
TikTok Shop sales, but that's probably as much as I know in terms of concepts of
how the company can make money." Alejandrino Decl. at ¶ 3, Exhibit A, at
Boutros Tr. at 26:22-27:4. Defendant further testified that "knowing how TikTok
generates money, its through advertisements or partnership brand deals, and maybe
through e-commerce channels likes TikTok Shop." Alejandrino Decl. at ¶ 3,
Exhibit A, at Boutros Tr. at 98:3-98:11. Defendant disregards the elementary
connection here. Defendant makes money off of ads that its users view. Users view
ads when they are scrolling through content that the user watches. If a user never
viewed content they liked, the user would not continue to engage with the platform
nor the ads.

Defendant protests that Plaintiff has no idea when or why users joined
TikTok. And while Plaintiff is not in possession of information that would support
why individuals would or would not use/join TikTok (as Plaintiff does not know
the motivations of approximately ████████ TikTok users, and discovery of such

COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

would be unreasonable/unrealistic), there is certainly a draw for users to engage

with a platform that pushes content that they enjoy.

While Defendant relies on <u>Perfect 10, Inc. v. Giganews, Inc.</u>, 847 F.3d 657

(9th Cir. 2017) and <u>Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.</u>, 591 F.

Supp. 2d 1098 (N.D. Cal. 2008), Defendant views the pertinent questions of

vicarious infringement far too myopically. "[T]he central question of the 'direct

financial benefit' inquiry in this case is whether the infringing activity constitutes

a draw for subscribers, not just an added benefit." <u>Ellison</u>, 357 F.3d at 1079.

Defendant is an entertainment platform. People become users of Defendant's

platform to post, share, view, and engage with content they enjoy. Defendant has

created a trade-secret algorithm to ensure that users experiences and content are

curated to what TikTok believes the user will like.[15] Users are *drawn* to

Defendant's platform to be entertained. Plaintiff's Work appearing in TikTok

videos is not merely an added benefit. It is evident on its face, based on the

likes/views/comments, that users were entertained by the infringing content.[16]

Defendant cannot see the forest for the trees, and by stating that Plaintiff

must prove that a user would have joined TikTok not to be entertained, but for the

---

[15] Alejandrino Decl. at ¶ 3, Exhibit A, at Boutros Tr. at 28:8-28:11.
[16] Complaint, Exhibit N [D.E. 1]; First Amended Complaint, Exhibit N [D.E. 23];
Second Amended Complaint, Exhibit N [D.E. 46].

COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

*sole* purpose of viewing Plaintiff's photographs in videos or profile pictures, asks

the Court to get lost on the forest floor with it.

## IV.    Plaintiff is Entitled to Seek Actual Damages

Plaintiff is entitled to recover its actual damages resulting from Defendant's

unauthorized use of the Work and to recover damages based on a disgorgement of

Defendant's profits from infringement of the Work.

> The copyright owner is entitled to recover . . . any profits
> of the infringer that are attributable to the infringement.
> . . . In establishing the infringer's profits, the copyright
> owner is required to present proof only of the infringer's
> gross revenue, and the infringer is required to prove his
> or her deductible expenses and the elements of profit
> attributable to factors other than the copyrighted work.

See 17 U.S.C. § 504(b). "Congress explicitly provides for two distinct monetary

remedies -- actual damages and recovery of wrongful profits. These remedies are

two sides of the damages coin -- the copyright holder's losses and the infringer's

gains." Polar Bear Prods. v. Timex Corp., 384 F.3d 700, 707–708 (9th Cir. 2004).

### A.    *Defendant's Profits*

Plaintiff concedes that it is not seeking to recover Defendant's profits under

17 U.S.C. § 504(b) but rather responds solely to Defendant's attack on Plaintiff's

ability to recover actual damages/lost licensing fees.[17]

---

[17] As discussed above, that is not to say Defendant did not receive a financial
benefit/draw, but rather evidence of specific profits will not be presented to the
jury.

COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

### B.    Lost Licensing/Actual Damages

"'"Actual damages are usually determined by the loss in the fair market value of the copyright, measured by the profits lost due to the infringement or by the value of the use of the copyrighted work to the infringer.'" <u>Polar Bear Prods.</u>, 384 F.3d at 708 (quoting <u>McRoberts Software, Inc. v. Media 100, Inc.</u>, 329 F.3d 557, 566 (7th Cir. 2003)). "To calculate the 'market value' of the injury to the plaintiff based on a hypothetical-license theory, we look to 'the amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement for the actual use made by [the infringer] of the plaintiff's work.'" <u>Oracle Corp. v. SAP AG</u>, 765 F.3d 1081, 1087 (9th Cir. 2014) (quoting <u>Wall Data Inc. v. L.A. Cnty. Sheriff's Dep't</u>, 447 F.3d 769, 786 (9th Cir. 2006)). "Thus, we do not ask what the owner would like to have charged if unconstrained by reality, but what a willing owner actually would have charged after negotiation with the buyer." <u>Id</u>. at 1088.

Mr. Grecco has provided Defendant with prior licenses to demonstrate licenses Plaintiff has negotiated in the past. Plaintiff has not pulled an astronomical, pie-in-the-sky figure from out of the blue to establish the notion of actual damages.

Defendant argues that 12 of the 17 license agreements Plaintiff produced in discovery are not probative of actual damages because they were retroactive

stemming from an unauthorized use. ***Not so***. A settlement agreement and a license agreement are not synonymous. "Settlements offered, negotiated, or made under threat of litigation are generally not considered probative of a reasonable royalty because in the usual course they do not provide an accurate reflection of what a willing licensor would do in an arm's length transaction." <u>Dongxiaoyue v. Chordiant Software</u>, No. C 08-00019 JW (N.D. Cal. Apr. 22, 2010). "[E]vidence of the value of Plaintiffs' settlements and licenses negotiated ***after the commencement of litigation*** are not relevant to 'what a willing buyer would have been reasonably required to pay a willing seller of plaintiff's work.'" <u>Id</u>. at 10–11. Plaintiff has not produced licenses that were negotiated after the commencement of litigation. Plaintiff has provided licenses that were negotiated prior to Plaintiff's photographs being used, as well as licenses that were negotiated after Plaintiff's photographs were used. Anyone Plaintiff contacts about unauthorized use is not 'forced' to take a license. Accordingly, whether a license was retroactive or prospective is of little consequence here. Plaintiff has provided both types of licenses with individuals that engaged in negotiation for the use of Plaintiff's photos.

Plaintiff's produced licenses are *objective* evidence of their value. Evidence of a copyright owner's licensing history of other/similar works is regularly considered when determining damages. <u>See, e.g.</u>, <u>Corson v. NetMedia101, LLC</u>,

No. 23-cv-4136 (BMC), 2023 U.S. Dist. LEXIS 191824, at *3 (E.D.N.Y. Oct. 25, 2023) ("And a plaintiff can certainly disclose her usual licensing fee so that actual damages can be considered as a component of statutory damages."); Davis v. Gap, Inc., 246 F.3d 152, 161 (2d Cir. 2001) ("In addition to his evidence of numerous instances in which rock music stars wore Onoculii eyewear in photographs exhibited in music publications, Davis testified that on one occasion he was paid a royalty of $ 50 for the publication by Vibe magazine of a photo of the deceased musician Sun Ra wearing Davis's eyewear. On the basis of this evidence, a jury could reasonably find that Davis established a fair market value of at least $ 50 as a fee for the use of an image of his copyrighted design."); Reiffer v. Shearwater Pac. Capital Mgmt. LLC, No. 18-cv-06053-JSW (RMI), 2020 U.S. Dist. LEXIS 227579, at *16–17 (N.D. Cal. May 13, 2020) ("The Copyright Act of 1976 entitles Plaintiff to recover actual damages suffered as a result of Defendant's infringement. 17 U.S.C. § 504(b).… In his declaration, Plaintiff states that he would have accepted $5,000.00 in exchange for a one-year license for Defendant to use the photograph. Plaintiff also submitted an invoice for the licensing of an image in 2018 for approximately $6,255.84. Thus, Plaintiff has demonstrated actual damages of at least $5,000 in lost licensing fees for a one-year term.").

Even if Plaintiff produced *no* licenses, a fact finder could look to industry licenses as a benchmark to determine the market value. Defendant synthesizes that

Plaintiff has no actual damages by taking discovery responses and testimony

piecemeal. Defendant is wrong in its assessment. Plaintiff notes that its actual

damages would include its lost licensing. Defendant highlights that Plaintiff

testified that no one uses the shopping cart feature on its website. Defendant

ignores all relevant context. Plaintiff's testimony was that people generally do not

use the shopping cart feature, as negotiations are generally done with Mr. Grecco

directly.[18] Plaintiff unquestionably licenses its photographs—a fact Defendant is

well aware of. Defendant, in asking for summary judgment on actual damages,

implies that there is no value in the Plaintiff's Work. That notion is simply

nonsensical. Plaintiff has established that it has actual damages.

If anything, Defendant is free to argue at trial that the jury should afford less

weight to Plaintiff's prior licensing,[19] but it cannot now (at summary judgment)

seek to preclude Plaintiff from introducing such evidence at trial.

---

[18] <u>Alejandrino Decl.</u> at ¶ 4, Exhibit B, at Grecco Tr. at 263:16-263:24; 264:16-264:22.

[19] <u>See, e.g.,</u> <u>Bender v. City of Rialto</u>, No. 5:20-cv-02171-JWH-SPx, 2022 U.S. Dist. LEXIS 91252, 2022 WL 1502514, at *7 (C.D. Cal. Mar. 21, 2022) (denying motion in limine, noting that "[i]t is best to let the jury decide which party's evidence is more weighty and more credible"); <u>King v. Biter</u>, No. 1:15-cv-00414-JLT-SAB (PC), 2023 U.S. Dist. LEXIS 30285, at *38 (E.D. Cal. Feb. 23, 2023) ("Given the Defense proffer described above, the Court finds that the age of the documents bears on their weight not admissibility; the dates of the document can be addressed by counsel in cross-examination and during argument. Motion in limine six is DENIED on this issue.").

COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order: (a) denying the Motion and (b) for such further relief as the Court deems proper.

## LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 4,471 words, which complies with the word limit of L.R. 11-6.1.

Dated: September 5, 2025.

**COPYCAT LEGAL PLLC**
3111 N. University Dr.
Suite 301
Coral Springs, FL 33065
Telephone: (877) 437-6228
jonathan@copycatlegal.com

*Attorney for Plaintiff*

By: /s/ Jonathan Alejandrino
Jonathan Alejandrino, Esq. (*pro hac vice*)

**COPYCAT LEGAL PLLC**
113 North San Vicente Boulevard
Suite 232
Beverly Hills, CA 90211
Telephone: (877) 437-6228
lauren@copycatlegal.com

*Attorney for Plaintiff*

By: /s/ Lauren M. Hausman
Lauren M. Hausman, Esq.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 5, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will electronically serve all counsel of record.

/s/ Lauren M. Hausman
Lauren M. Hausman, Esq.

COPYCAT LEGAL PLLC
113 N. SAN VICENTE BLVD., SUITE 232 • BEVERLY HILLS, CA 90211
TELEPHONE (877) 437-6228