Lauren M. Hausman (CA Bar No. 349514)
**COPYCAT LEGAL PLLC**
113 N San Vicente Blvd
Suite 232
Beverly Hills, CA 90211
T: (877) 437-6228
E: lauren@copycatlegal.com

Jonathan Alejandrino, *pro hac vice*
**COPYCAT LEGAL PLLC**
3111 North University Drive
Suite 301
Coral Springs, FL 33065
T: (877) 437-6228
E: jonathan@copycatlegal.com

Attorneys for Plaintiff
Michael Grecco Productions, Inc.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL GRECCO PRODUCTIONS, INC.<br><br>Plaintiff,<br><br>v.<br><br>TIKTOK, INC.<br><br>Defendant. | Civil Action No. 2:24-cv-04837-FLA-MAR<br><br>**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT** |

Plaintiff Michael Grecco Productions, Inc. ("Plaintiff") hereby files its Statement of Genuine Disputes of Material Fact in Response to Defendant's

Statement of Uncontroverted Facts in Support of Defendant's Motion for Summary

Judgment or Partial Summary Judgment.

**TTI, the TikTok Platform, and TTI's Copyright Polices**

| Undisputed Fact and Evidence | Disputed/Undisputed and Evidence |
|---|---|
| 1. TTI provides the TikTok platform in the United States. Boutros Decl. ¶ 3. | Undisputed. |
| 2. TikTok is an online entertainment platform that allows user to create, share, and engage with content posted by other users. Boutros Decl. ¶ 3. | Undisputed. |
| 3. TikTok users engage with the platform by creating and sharing videos or watching and interacting with videos posted by others. Boutros Decl. ¶ 4. | Undisputed. |
| 4. ███████████████ Exh. 6, Boutros Depo. at 28:12-14. | Undisputed. |
| 5. ███████████████ Boutros Decl. ¶ 4. | Undisputed. |

| | |
|---|---|
| 6.      Videos on TikTok relate to a variety of topics including politics, educational content, news, family, comedy, and users' jobs and hobbies.<br><br>Boutros Decl. ¶ 4. | Undisputed. |
| 7.      Use of the TikTok platform is subject to TTI's Copyright Policy.<br><br>Boutros Decl. ¶ 6. Exh. 1 at 5 ("As a condition of your access to and use of [TikTok], you agree to the terms of the Copyright Policy.") | Undisputed. |
| 8.      The Copyright Policy informs users that TTI does "not allow any content that infringes copyright."<br><br>Exh. 2 at 1 ("We do not allow any content that infringes copyright.") | Undisputed. |
| 9.      The Copyright Policy sets forth procedures for copyright owners to report alleged infringement.<br><br>Exh. 2 at 2. Exh. 6, Boutros Depo. at 16:3-16. | Undisputed to the extent that TTI's Copyright Policy provides *suggestions* on how to report alleged infringements (e.g., contacting the user directly or using TTI's online form). |
| 10.      Copyright owners may submit a "Copyright Infringement Report" to request removal of alleged infringing content from TikTok.<br><br>Exh. 2 at 2 ("You may . . . file a Copyright Infringement Report to request the removal of the alleged infringing content from TikTok via our online form or in-app.") | Undisputed. |

| | |
|---|---|
| 11. The Copyright Policy instructs copyright owners to submit a Copyright Infringement Report using an online form or the TikTok app.<br><br>Exh. 2 at 2 ("You may . . . file a Copyright Infringement Report to request the removal of the alleged infringing content from TikTok via our online form or in-app.") | Undisputed to the extent that TTI's Copyright Policy permits copyright owners to use its online form or in app.<br><br>Disputed to the extent that TTI can ***require*** that using TTI's online form or app be the only way to report copyright infringement (as the DMCA provides other methods for copyright owners). <u>See</u> 17 U.S.C. § 512. |
| 12. The Copyright Policy requires that copyright owners comply with statutory requirements necessary for the evaluation of their Reports.<br><br>Exh. 2 at 2 ("Please be aware that the United States Digital Millennium Copyright Act (DMCA) or similar laws in other countries outline the statutory requirements necessary for reporting copyright infringement by submitting a compliant notification.") | Undisputed that TTI's Copyright Policy contains the following language: "Please be aware that the United States Digital Millennium Copyright Act (DMCA) or similar laws in other countries outline the statutory requirements necessary for reporting copyright infringement by submitting a compliant notification."<br><br>Disputed to the extent that TTI cannot require submission of DMCA notices to be submitted via TTI's online form or in app as a "compliant notification." <u>See</u> 17 U.S.C. § 512. |
| 13. The Copyright Policy instructs copyright owners that before submitting a Report they should consider whether the content they want to report may be a permissible use of their copyrights.<br><br>Exh. 2 at 2 ("Before submitting a report, you should consider whether the content you want to report may | Undisputed. |

| | |
|---|---|
| be a permissible use of your copyright.") | |
| 14.    The Copyright Policy warns that submitting a misleading or fraudulent report will result in the report being denied.<br><br>Exh. 2 at 2 ("Please also be aware that intentionally submitting a misleading or fraudulent report will result in your report being denied.") | Undisputed. |
| 15.    TTI received more than 400,000 copyright removal requests in 2023.<br><br>Boutros Decl. ¶ 10. Exh. 3 at 1. | Undisputed. |
| 16.    In 2023, approximately 58% of the copyright removal requests received by TTI resulted in content being removed from TikTok.<br><br>Boutros Decl. ¶ 10. Exh. 3 at 1. | Undisputed. |
| 17.    TTI received more than 500,000 copyright removal requests in 2024.<br><br>Boutros Decl. ¶ 10. Exh. 3 at 1. | Undisputed. |
| 18.    In 2024, approximately 67% of the copyright request received by TTI resulted in content being removed from TikTok.<br><br>Boutros Decl. ¶ 10. Exh. 3 at 1. | Undisputed. |



| 19. ▮▮ | Undisputed. |
| Exh. 6, Boutros Depo. at 17:16-24; 30:24-31:12. Boutros Decl. ¶ 8. | |
| 20. ▮▮ | ▮▮ |
| Boutros Decl. ¶ 11. Exh. 6, Boutros Depo. at 17:16-24; 44:12-21. | ▮▮ |
| | Declaration of Jonathan Alejandrino dated September, 2025 (the "Alejandrino Decl."), at ¶ 3, Exhibit A (the "Boutros Tr.") at 44:15-44:21. |
| 21. ▮▮ | Undisputed. |
| *See* Boutros Decl. ¶ 11. Exh. 6, Boutros Depo. at 44:12-2; 44:25-45:8. | |
| 22. ▮▮ | Disputed in part. ▮▮ |
| Exh. 6, Boutros Depo. at 48:10-14; 65:6-11. Boutros Decl. ¶ 11. | ▮▮ |

|  |  |
|---|---|
| |  |
| | Alejandrino Decl. at ¶ 3, Exhibit A, at Boutros Tr. at 47:9-47:17; 53:13-53:17; 56:16-56:21; 57:14-57:19; 59:9-59:14: 60:5-60:9; 61:1-61:5; 62:6-62:11; 69:15-69:21; 70:18-70:23; 71:16-71:21; 72:16-72:20; 73:12-73:16; 74:10-74:14; 75:7-75:11; 76:4-76:8; 76:24-77:3; 77:22-77:25; 78:16-78:20; 79:8-79:13; 80:6-80:10; 81:3-81:7; 81:25-82:4; 82:22-83:2. |
| |  |
| | Alejandrino Decl. at ¶ 3, Exhibit A, at Boutros Tr. at 126:12-126:17 |
| 23. <br><br>Exh. 6, Boutros Depo. at 108:23-25. Boutros Decl. ¶ 11. | Neither disputed nor undisputed. Plaintiff is not privy to Defendant's internal affairs such that it would have knowledge of such. |
| 24.  Upon review of the notices, TTI determined the alleged acts of infringement are fair use and did not need to be removed.<br><br>Boutros Decl. ¶ 12. | Undisputed that TTI made the determination.<br><br>Disputed that TTI had any such right to make the determination under the DMCA, as its sole |

|  | obligation was to remove the Works and not inject its own subjective determinations. Further, TTI refused to explain the basis for its determination, testifying only that the determination was made but refusing to explain how it was made, why it was made, what factors were considered, etc.<br><br>See 17 U.S.C. § 512.; Alejandrino Decl. at ¶ 3, Exhibit A, at Boutros Tr. at 18:21-18:25, 42:7-44:4, 51:24-52:5, 52:12-52:17, 53:1-53:6; 67:21-68:23; 93:24-94:20; 111:1-112:4; 127:1-127:8. |

**Plaintiff Michael Grecco Productions, Inc. ("Plaintiff" or "MGP"), its**

**Copyrights, and the Asserted Works**

| Undisputed Fact and Evidence | Disputed/Undisputed and Evidence |
|---|---|
| 25.    MGP is a corporation formed for liability and tax reasons.<br><br>Exh. 4, Grecco Depo. at 55:21-24. | Disputed. The deposition testimony is as follows: "Q. Why did you change -- or why did you form Michael Grecco Photography, Inc.? A. For a combination of -- for a combination of liability and tax reasons." Alejandrino Decl. at ¶ 4, Exhibit B, (the "Grecco Tr.") at 55:21-24.<br><br>The testimony inquires about |

| | Michael Grecco Photography, Inc., a predecessor corporation to Plaintiff. Plaintiff is Michael Grecco Productions, Inc. (or "MGP"), which is *not* the same as what is being addressed in the deposition testimony. |
|---|---|
| 26.    MGP has no employees.<br><br>Exh. 4, Grecco Depo. at 21:5-22:15. | Undisputed that Plaintiff does not have employees. However, Plaintiff has subcontractors/independent contractors.<br><br>Alejandrino Decl. at ¶ 4, Exhibit B, at Grecco Tr. at 22:1-22:15. |
| 27.    Michael Grecco ("Grecco") is the sole owner of MGP.<br><br>Exh. 4, Grecco Depo. at 21:5-10. | Undisputed. |
| 28.    MGP alleges it owns the copyrights at issue in this case.<br><br>Dkt. 46 ¶ 10. | Undisputed. |
| 29.    Plaintiff alleges it owns the copyright to twenty-two photographs that have been infringed in this case.<br><br>Dkt. 46 ¶¶ 12-54. | Undisputed. |
| 30.    Each of the Asserted Works is a photograph of one or more celebrities.<br><br>Dkt. 46 ¶¶ 12-54. | Undisputed. |
| 31.    Each of the Asserted Works was created between 1980 and 2004. | Undisputed. |

| | |
|---|---|
| Dkt. 46 ¶¶ 12-54.Exh. 4, Grecco Depo. at 78:20-79:1; 97:5-19; 100:23-101:1; 102:16-19; 113:8-14; 119:2-4; 119:15-120:1. | |
| 32.    Grecco took each of the photographs at issue in this case.<br><br>Dkt. 46 ¶¶ 12-55. | Undisputed. |
| 33.    Grecco was commissioned by third parties to take each of the Asserted Works.<br><br>Exh. 4, Grecco Depo. at 33:14-16 (Q: . . . you were commissioned to take those photographs; right? A: That is correct); 60:9-17; 103:6-10; 73:1-13; 69:6-15; 111:5-16; 111:21-112:7; 112:19-113:7. | Undisputed. |
| 34.    Plaintiff has filed over 100 copyright litigation lawsuits in federal court.<br><br>Exh. 4, Grecco Depo. at 140:18-24 (Q: . . . how many federal complaints for copyright infringement has Michael Grecco Productions, Inc. or you personally, sir, filed. How many? A: I would have to look at the records. It's over 100.) Exh. 5, Yamada Depo. at 41:15-42:5 (Q: Okay. So somewhere between 100 to 150 cases since January of 2018; is that right? A: Approximately.) | Undisputed. |
| 35.    Plaintiff has generated more than $5 million from its copyright litigation lawsuits. | Undisputed. |

| | |
|---|---|
| Exh. 4, Grecco Depo. at 195:25-196:6. | |
| 36.    None of Plaintiff's copyright litigation lawsuits have been tried.<br><br>Exh. 4, Grecco Depo. at 193:17-194:3 ("No, none of them have been tried."). | Undisputed to the extent that a case has never proceeded all the way to trial. |
| 37.    The majority of Plaintiff's copyright litigation lawsuits have been resolved through default judgment or settlement.<br><br>Exh. 4, Grecco Depo. at 194:14-195:1. | Undisputed. |
| 38.    MGP has a team of independent contractors who search for infringing uses of Plaintiff's works.<br><br>Exh. 4, Grecco Depo. at 22:1-6; 26:15- 21 (Q: How did you discover the allegedly infringing works in this case? A: . . . we have a team of people that does it.); 27:16-19. Exh. 5, Yamada Depo. 17:14-22. | Undisputed. |
| 39.    Grecco's wife, Ms. Elizabeth Waterman, manages Plaintiff's independent contractors.<br><br>Exh. 4, Grecco Depo. at 26:15-21. Exh. 5, Yamada Depo. at 19:24-20:1; 23:6-8, 98:7–9. | Undisputed in part. Elizabeth Waterman and Torina Yamada manage Plaintiff's independent contractors.<br><br>Declaration of Michael Grecco dated September 5, 2025 (the "Grecco Decl.") at ¶ 3. |
| 40.    Plaintiff's "admin" Torina Yamada searches for infringing | Undisputed in part. Ms. Yamada serves as Plaintiff's Executive |

| | |
|---|---|
| uses of Plaintiff's photographs.<br><br>Exh. 5, Yamada Depo. at 14:17–19, 15:6–17,17:23-18:1. Exh. 4, Grecco Depo. at 26:22-24, 203:15–3. | Administrator. Her job responsibilities do not encompass searching for infringements—that is a task she undertakes on her own accord/time. Ms. Yamada's responsibilities include assistance with daily operations and clerical tasks; managing/providing comparable, licensing, email records, and all other documents; assisting in litigation tasks as needed; and, bookkeeping.<br><br>Grecco Decl., at ¶ 5. |
| 41. Ms. Waterman receives a commission from Plaintiff's litigation.<br><br>Exh. 5, Yamada Depo. at 98:7-9. Exh. 4, Grecco Depo. at 203:13-14. | Undisputed in part. Ms. Waterman manages and supervises a significant portion of Plaintiff's business. She receives a percentage of all infringement income, regardless of litigation.<br><br>Grecco Decl., at ¶ 4. |
| 42. Ms. Yamada receives a commission for each instance of infringement she locates.<br><br>Exh. 4, Grecco Depo. at 202:17-21; 203:15-204:3. Exh. 5, Yamada Depo. at 14:17-15:22. | Disputed in part. Ms. Yamada receives a commission from infringements she locates **only** if the matter resolves, not for **each** instance of infringement she locates<br><br>Alejandrino Decl. at ¶ 4, Exhibit B, at Grecco Tr. at 203:15-203:18. ("But Torina only gets paid for her efforts in finding these alleged infringements if you ultimately get paid in the case; right? A. That's true."). |

**The Alleged Copyright Infringement By TikTok Users**

| Undisputed Fact and Evidence | Disputed/Undisputed and Evidence |
|---|---|
| 43.    Twenty-five TikTok users are alleged to infringe Plaintiff's copyrights.<br><br>Exh. 11 (Exh. N to Complaint). Exh. 10. Exh. 4, Grecco Depo. at 120:17-121:3. | Disputed.  The lawsuit concerns the infringement of twenty-two (22) of Plaintiff's copyrighted photographs by twenty-four (24) TikTok users. Exhibit N to the Complaint includes reference to a twenty-third (23) copyrighted photograph of Plaintiff's that was infringed by a twenty-fifth (25) TikTok user, but the photograph of Jerry Springer ("100406_Springer_Jerry_MGP_0409"), posted by TikTok user @wordsofwarning is not at issue in this lawsuit.<br><br>Grecco Decl., at ¶ 6. |
| 44.    The TikTok users created the allegedly infringing content.<br><br>Dkt. 46 ¶ 60. Boutros Decl. ¶ 12. | Undisputed to the extent that TikTok users posted content that included Plaintiff's copyrighted work. |
| 45.    TTI itself did not create or post any of the allegedly infringing content.<br><br>Boutros Decl. ¶ 12. Exh. 4, Grecco Depo. at 120:17-121:7. | Undisputed. |
| 46.    Twenty of the TikTok users are alleged to infringe by using an Asserted Work in a video posted by the user to TikTok.<br><br>Exh. 11 at 2-37, 39-47, 50-56, 66-88, 90-134. | Disputed.  Of the twenty-four (24) TikTok users whose content is at issue in this lawsuit, nineteen (19) TikTok users infringed by using one of Plaintiff's copyrighted photographs in a video posted by the user to TikTok.<br><br>Grecco Decl., at ¶ 7; Complaint, Exhibit N [D.E. 1]; First Amended Complaint, Exhibit N [D.E. 23]; Second Amended Complaint, Exhibit N [D.E. 46]. |
| 47.    Five of the TikTok users are | Undisputed. The Sixth Photograph, the |

| | |
|---|---|
| alleged to infringe by using an Asserted Work as a profile picture on their TikTok accounts.<br><br>Exh.11 at 38, 48-49, 57-64, 65, 89. Exh. 5, Yamada Depo. at 133:19-134:3; 145:19-3; 153:6-11; 154:15-20; 160:16-161:2 | Tenth Photograph, the Fourteenth Photograph, the fifteenth Photograph, and the Eighteenth Photograph were used by TikTok users as profile pictures to the TikTok user's account.<br><br>Complaint, Exhibit N [D.E. 1]; First Amended Complaint, Exhibit N [D.E. 23]; Second Amended Complaint, Exhibit N [D.E. 46]. |

**Plaintiff Did Not Consider Fair Use Before**

**Submitting Takedown Notices to TTI**

| Undisputed Fact and Evidence | Disputed/Undisputed and Evidence |
|---|---|
| 48. Plaintiff sent takedown notices to TTI relating to the twenty-five alleged acts of infringement.<br><br>Dkt. 46 ¶ 62. | Undisputed.<br><br>However, the takedown notice that Plaintiff sent to TTI relating to the photograph of Jerry Springer ("100406_Springer_Jerry_MGP_0409"), posted by TikTok user @wordsofwarning is not at issue in this lawsuit.<br><br>Grecco Decl., at ¶ 8; D.E. 68-3, Declaration of Michael Grecco, at ¶ 36, Composite Exhibit B. |
| 49. Plaintiff did not submit the takedown notices to TTI using TTI's online form.<br><br>Exh. 5, Yamada Depo. at 113:8-12. | Undisputed. Plaintiff sent its takedown notices to Defendant's DMCA e-mail address (copyright@tiktok.com) as permitted by the DMCA.<br><br>Grecco Decl., at ¶ 9; Alejandrino Decl. at ¶ 3, Exhibit A, at Boutros Tr. at 47:9-47:17; 53:13-53:17; 56:16-56:21; 57:14-57:19; 59:9-59:14: 60:5-60:9; 61:1-61:5; |

| | |
|---|---|
| | 62:6-62:11; 69:15-69:21; 70:18-70:23; 71:16-71:21; 72:16-72:20; 73:12-73:16; 74:10-74:14; 75:7-75:11; 76:4-76:8; 76:24-77:3; 77:22-77:25; 78:16-78:20; 79:8-79:13; 80:6-80:10; 81:3-81:7; 81:25-82:4; 82:22-83:2; <u>See</u> 17 U.S.C. § 512. |
| 50.   Plaintiff only submitted the takedown notices to TTI via email.<br><br>Exh. 5, Yamada Depo. at 113:13-14. | Undisputed. <u>See</u> response to 49. |
| 51.   Plaintiff uses a template to prepare its takedown notices (herein after "Takedown Template")<br><br>Exh. 4, Grecco Depo. at 259:1-6 ("It's a form. The information gets plugged into it."); 259:20-260:3. Exh. 5, Yamada Depo. at 112:1-24. | Undisputed. |
| 52.   Plaintiff's contractors input information into the Takedown Template.<br><br>Exh. 4, Grecco Depo. at 259:1-6. Exh. 5, Yamada Depo. at 113:3-7. | Undisputed. |
| 53.   The takedown notices sent to TTI in this case were prepared using Plaintiff's Takedown Template.<br><br>Exh. 4, Grecco Depo. at 258:23-259:6. Exh. 5, Yamada Depo. at 175:2-176:1. | Undisputed. |

| | |
|---|---|
| 54.    The only information that differs between the takedown notices sent by Plaintiff to TTI is the identification of the work, location, file, video stamp, and infringing post.<br><br>Exh. 5, Yamada Depo. at 175:9-13 (Q: . . . what information would change in any given takedown notice? A: It would be work, location, file, video stamp, and infringer, infringing post.) | Undisputed. A legally effective DMCA takedown notice must include the following, pursuant to 17 U.S.C. § 512(c)(3)(A): A physical or electronic signature of the copyright holder or a person authorized to act on behalf of the copyright holder; Identification of the specific copyrighted work(s) claimed to have been infringed; Identification of the material that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate the material (e.g. URL); Information reasonably sufficient to permit the service provider to contact the complaining party, such as an address, telephone number, and e-mail address; A statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized; and, A statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the copyright holder.<br><br>Plaintiff updates the information that would be different from one DMCA takedown notice to another.<br><br>Grecco Decl., at ¶ 10. |
| 55.    The takedown notices MGP sent to TTI contain the statement: "I have a good faith belief that the use of the material that appears on the service is not authorized by myself, the copyright owner, my agent, or by operation of law" (hereinafter, the "good faith belief | Undisputed. See response to 54. |

| | |
|---|---|
| statement"). <br><br> Exh. 12 at 2. Exh. 5, Yamada Depo. at 175:23-176:1. | |
| 56. The good faith belief statement in the takedown notices sent to TTI is from Plaintiff's Takedown Template. <br><br> Exh. 12 at 2. Exh. 5, Yamada Depo. at 175:23-176:1. | Undisputed. <u>See</u> response to 54. |
| 57. The takedown notices MGP sent to TTI contain the statement: "I declare under penalty of perjury, pursuant to the laws of the United States of America, that this notification is true and accurate, and that I am either the copyright owner or I am authorized by the copyright owner, its agent, or by operation of law" (hereinafter, the "accuracy statement"). <br><br> Exh. 12 at 2. Exh. 5, Yamada Depo. at 175:23-176:1. | Undisputed. <u>See</u> response to 54. |
| 58. The accuracy statement in the takedown notices sent to TTI is from Plaintiff's Takedown Template. <br><br> Exh. 12 at 2. Exh. 5, Yamada Depo. at 175:23-176:1. | Undisputed. <u>See</u> response to 54. |
| 59. Plaintiff's takedown process is automated for content on TikTok. <br><br> Exh. 4, Grecco Depo. at 208:19-209:7 ("its automated that, if | Disputed in part. Plaintiff's takedown process for TikTok is 'automated' to the extent that if Plaintiff's subcontractors do not locate a license, and the use is determined to not be fair use, the takedown notice will be sent out. Plaintiff |

| | |
|---|---|
| there's no license, that they send a takedown notice"). | does not have a TikTok, so there is no way that the TikTok user could 'tag' Plaintiff—meaning Plaintiff would not consider the use publicity or marketing.<br><br>Alejandrino Decl. at ¶ 4, Exhibit B, at Grecco Tr. at 208:19-209:7; Grecco Decl., at ¶¶ 11, 12. |
| 60.    If a user does not have a license from Plaintiff to use MGP's photographs on TikTok, MGP sends a takedown notice to TTI.<br><br>Exh. 4, Grecco Depo. at 208:19-209:7; 210:16-20 (Q: Who made the determination that it was infringing? A: Sans license and sans being tagged, its infringing so that's my rule.). | Undisputed. See response to 59. |
| 61.    Grecco is responsible for determining whether a potentially infringing use is a fair use.<br><br>Exh. 5, Yamada Depo. at 182:3-5 (Q: And ultimately is it Michael who determines if something is or is not fair use? A: Yes.) | Undisputed in part. Mr. Grecco is generally responsible for determining whether a potentially infringing use is a fair use.<br><br>Mr. Grecco approves every case at the outset. There is not a case that proceeds that Mr. Grecco has not approved. Given that Mr. Grecco determines whether he subjectively believes a case qualifies as fair use before it commences, he does not review every DMCA notice, as the determination has already been made. A fair use assessment is made before sending out a DMCA takedown notice, as that is within Plaintiff's standard operating procedure.<br><br> Grecco Decl., at ¶ 13. |
| 62.    Grecco did not review the | Disputed in part. Mr. Grecco did not |

| takedown notices before they were submitted to TTI. Exh. 4, Grecco Depo. at 258:23-25. | review the actual notices themselves, but he did review the infringements that were subject of the DMCA takedown notices. Alejandrino Decl. at ¶ 4, Exhibit B, at Grecco Tr. at 209:8-210:8; Grecco Decl., at ¶¶ 13, 14. See response to 61. |
|---|---|
| 63.     Grecco did not review each allegedly infringing use before the takedown notices were submitted to TTI. Exh. 4, Grecco Depo. at 209:15-210:2 ("I did not look at every one, and I did not approve every one."). | Disputed. See response to 61. |
| 64.     Grecco did not consider fair use before authorizing MGP to send the takedown notices to TTI. Exh. 4, Grecco Depo. at 211:1-4 (Q: Did your company consider the doctrine of fair use before issuing the takedown notice with respect to this first video? A: No.); 211:9-15 (Q: So is it fair to say, then, sir, that before your company issued any of the takedown notices in this case, that you didn't consider whether— you didn't consider fair use? A: I still don't consider fair use.); 260:18-24 (Q: And it's your position that the allegations of infringement in these DMCA notices were | Disputed. Fair use was considered before the DMCA takedown notices in this case were sent out. The determination was that the uses by TikTok users were not fair use. Plaintiff 'did not consider fair use,' as in it did not consider that the uses at issue would be deemed fair use. Plaintiff did not mean that fair use was not considered before the DMCA takedown notices were sent out. Alejandrino Decl. at ¶ 4, Exhibit B, at Grecco Tr. at 212:20-213:12. |

| | |
|---|---|
| true and accurate even though you did not consider fair use before sending these DMCA notices; right? A: Correct. I still don't consider fair use; correct.) | |
| 65.    Grecco testified that the fair use defense is "BS"<br><br>Exh. 4, Grecco Depo. at 211:1-8. | Disputed to the extent that Defendant mischaracterizes the full testimony.<br>"Q: Did your company consider the doctrine of fair use before issuing the takedown notice with respect to this first video? A: No. Tiktok's a commercial platform and meets none of the four criteria of fair use. So that's a BS defense that every infringer has no defense uses and we hear every day. That's like – we call it the FU defense for a reason."<br><br>Alejandrino Decl. at ¶ 4, Exhibit B, at Grecco Tr. at 211:1-211:8 |
| 66.    Grecco testified that MPG refers to the fair use defense as the "FU defense."<br><br>Exh. 4, Grecco Depo. at 211:1-8. | See response to 65. |

**Defendant Did Not Receive Any Direct Financial Benefit**

**from the Alleged Infringement.**

| Undisputed Fact and Evidence | Disputed/Undisputed and Evidence |
|---|---|
| 67.    Plaintiff does not know when TikTok users who engaged with the | Undisputed. |

| | |
|---|---|
| alleged infringing content joined TikTok.<br><br>Exh. 4, Grecco Depo. at 254:6-10 (Q: And with respect to all of these individuals that have either liked, commented, shared, or saved any of the videos, you have no idea when they joined TikTok? A: That is correct.). | |
| 68.    Plaintiff does not know why TikTok users who engaged with the alleged infringing content joined TikTok.<br><br>Exh. 4, Grecco Depo. at 254:11-13 (Q: And you have no idea why they joined TikTok; right? A: That is correct.). | Undisputed. |
| 69.    Plaintiff has no facts to suggest that TikTok users were drawn to TikTok because of the alleged infringing content.<br><br>Exh. 4, Grecco Depo. at 254:14-20 (Q: And you're not aware, again, with respect to all of these individuals that either liked, commented, shared, or saved any of the videos reflected in Exhibit 21, you have no facts to suggest that they were drawn to TikTok because of these videos; right? A: That is correct.); 233:20-23; 249:4-9; 252:3-6. | Neither disputed nor undisputed. Plaintiff is not in possession of information that would support why individuals would or would not use TikTok. |
| 70.    Users do not go to TikTok for one video. | Undisputed. Users go to TikTok to watch content that they like or may like – an experience that the TikTok |

| | |
|---|---|
| Exh. 4, Grecco Depo. at 222:11-19 ("No one goes to TikTok for one video. They go to be entertained."); 248:12-14. | algorithm attempts to curate.<br><br>Alejandrino Decl. at ¶ 3, Exhibit A, at Boutros Tr. at 28:8-28:11. |
| 71.    None of the Asserted Works have been used in an advertisement on TikTok.<br><br>Exh. 4, Grecco Depo. at 127:11-12 ("none of my images have been used in an ad on TikTok"); 133:2-3 ("There are—no one is saying that my work was used in an advertisement…."). | Undisputed. |
| 72.    None of the Asserted Works have been used on TikTok Shop.<br><br>Boutros Decl. ¶ 13. | Neither disputed nor undisputed. Plaintiff could not possibly search every listing on the TikTok Shop such that it would have knowledge of the veracity of Defendant's assertion. |
| 73.    None of the Asserted Works have been used to promote or sell products on TikTok.<br><br>Boutros Decl. ¶ 13. | See response to 72. |
| 74.    Certain qualified TikTok users can join the Creator Program.<br><br>Exh. 6, Boutros Depo. at 24:7-12. | Undisputed. |
| 75.    The Creator Program allows TikTok users to monetize their content.<br><br>Exh. 6, Boutros Depo. at 24:7-12. | Undisputed. |
| 76.    TTI does not receive any profits from its users' monetization through the Creator Program.<br><br>Exh. 6, Boutros Depo. at 27:5-12 | Disputed. Defendant's 30(b)(6) corporate representative was not aware of all the ways Defendant makes money, nor how content or |

| | |
|---|---|
| ("TikTok doesn't take a profit from their funds, so my answer would be no to that."); 27:16-18. | the number of users impacts revenue. Further, TikTok makes money from people uploading content, in broad terms. |
| | See e.g., Alejandrino Decl. at ¶ 3, Exhibit A, at Boutros Tr. at 26:13-28:11. |
| | Alejandrino Decl. at ¶ 3, Exhibit A, at Boutros Tr. at 26:22-27:4. "Q: How does TikTok make money off of people uploading content? A: I would say, broadly speaking, from my understanding, TikTok can make money from advertisements or brand partnerships, maybe through TikTok Shop sales, but that's probably as much as I know in terms of concepts of how the company can make money." |
| | Alejandrino Decl. at ¶ 3, Exhibit A, at Boutros Tr. at 29:10-29:15. "Q: What role does content play in TikTok's ability to earn revenue? A: I'm not sure. Q: Is TikTok's revenue tied to the amount of users on TikTok? A: I don't know." |
| 77.    TTI did not generate any funds from the alleged infringement.<br><br>Exh. 6, Boutros Depo. at 95:3-7. | Disputed. See response to 76. |
| 78.    TTI did not generate any | Disputed. See response to 76. |

| | |
|---|---|
| revenue from the alleged infringement.<br><br>Boutros Decl. ¶ 14. | |
| 79.   TTI did not receive any financial benefit from the alleged infringement.<br><br>Exh. 6, Boutros Depo. at 95:8-10 (Q: So they did not receive any financial benefit here? A: No.); 97:5-12. Boutros Decl. ¶ 14. | Disputed. See response to 76. |

**Plaintiff Has No Evidence to Support its Claim for**

**Defendants Profits or Plaintiff's Actual Damages**

| Undisputed Fact and Evidence | Disputed/Undisputed and Evidence |
|---|---|
| *See* Facts Nos. 71-79 above. | Disputed in part. *See* Responses to Nos. 71-79. |
| 80.   The only evidence relating to TTI's advertising revenues provided by Plaintiff to date is Mr. Grecco's testimony relating to projected advertising revenue for 2024.<br><br>Exh. 4, Grecco Depo. at 148:18-22. | Disputed to the extent that Defendant contends no evidence exists. Simply stated, Defendant makes money from advertisements.<br><br>Alejandrino Decl. at ¶ 3, Exhibit A, at Boutros Tr. at 26:22-27:4. "Q: How does TikTok make money off of people uploading content?<br>A: I would say, broadly speaking, from my understanding, TikTok can make money from advertisements or brand partnerships, maybe through TikTok Shop sales, but that's probably as much as I know in terms of concepts of how the company can make money." |

| | |
|---|---|
| | <u>Alejandrino Decl.</u> at ¶ 3, Exhibit A, at Boutros Tr. at 98:3-98:11. "Q: So what determines the monetary gain by TikTok?<br><br>[…]<br><br>A: To the best of my ability, knowing how TikTok generates money, its through advertisements or partnership brand deals, and maybe through e-commerce channels likes TikTok Shop." |
| 81.    The projected advertising revenues identified by Plaintiff are from "the Internet."<br><br>Exh. 4, Grecco Depo. at 148:18-22. | Undisputed. |
| 82.    Plaintiff has not disclosed the source of the projected advertising revenues.<br><br>Keyes Decl. ¶ 14. | Disputed in part. Plaintiff identified that sources are from the internet. However, more specifically the sources are as follows:<br>• https://tiktokeconomicimpact.com/?gad_source=1&gad_campaignid=21105539190&gbraid=0AAAAApbYvmx2YmJTdo5-Xqnsf9r2-wGRX&gclid=CjwKCAjwiNXFBhBKEiwAPSaPCaR4hzgkZVSyR-jXG33zcAVlCjG9_1HLmanVLkv7e-TMrE5P2IgKcBoC2-oQAvD_BwE<br>• https://www.demandsage.com/tiktok-ad-revenue/#:~:text=TikTok%20net%20ad%20revenue%20is,of%20the%20video%20ad%20market |

| | |
|---|---|
| | • https://www.marketingdive.com/news/tiktok-ad-revenue-could-top-30-billion-ban-us/742056/<br><br>• https://searchengineland.com/tiktoks-30b-ad-boom-faces-us-uncertainty-453049#:~:text=TikTok%20is%20projected%20to%20achieve,poised%20to%20absorb%20displaced%20spending<br><br>• https://basis.com/blog/tiktok-by-the-numbers-stats-and-facts-for-digital-advertisers<br><br>• https://www.businessofapps.com/data/tik-tok-statistics/<br><br>• https://www.statista.com/statistics/1305708/tiktok-ad-revenue/<br><br>• https://www.warc.com/content/paywall/article/warc-curated-datapoints/tiktok-global-ad-revenue-to-reach-348bn-in-2026/en-gb/156878?<br><br>• https://roirevolution.com/blog/state-of-tiktok-advertising-in-2024/<br><br>• https://resourcera.com/data/social/tiktok-revenue/<br><br>While each source has slightly varying information, there is no shortage of information on Defendant's profits.<br><br>Grecco Decl., at ¶ 15. |
| 83.    Plaintiff has not produced the source of the projected advertising revenues.<br><br>Keyes Decl. ¶ 14. | Undisputed in part. The information is provided herein. Additionally, the information Defendant describes – Defendant's projected advertising revenues – is information squarely within Defendant's possession. |
| 84.    Plaintiff claims its actual | Undisputed in part. Actual damage also |

| | |
|---|---|
| damages are calculated "by multiplying the license it would have charged by the number of years the photographs were published."<br><br>Keyes Decl. ¶ 5. Exh. 7, Plaintiff's Initial Disclosures | encompasses a disgorgement of Defendant's profits reasonably attributable to the infringement. Further, Plaintiff notes in its initial disclosures that "Plaintiff seeks either actual damages/**disgorgement of Defendant's profits** or statutory damages in this lawsuit." (emphasis added).<br><br>Alejandrino Decl. at ¶ 5, Exhibit C. |
| 85.    The license fee for each of the works is determined by the end user, as calculated by the shopping cart tool on Plaintiff's website.<br><br>Exh. 8, Response to Interrogatory Nos. 4 and 5. Keyes Decl. ¶ 6. | Disputed with respect to Defendant's characterization and omission of portions of the Interrogatory response. "The licensing fee for each use of the works is determined by the use of the end user, as calculated by the shopping cart tool on Plaintiff's website."<br><br>Alejandrino Decl. at ¶ 7, Exhibit E. |
| 86.    "No one uses" the shopping cart tool on Plaintiff's website.<br><br>Exh. 4, Grecco Depo. at 265:21-266:11. | Undisputed to the extent that Plaintiff generally generates revenue through direct negotiations – relevant context of Plaintiff's testimony which Defendant omits.<br><br>Alejandrino Decl. at ¶ 4, Exhibit B, at Grecco Tr. at 263:16-263:24. "Q: How does a customer get a license through this website?<br>A: Again, the website is kind of clunky, and they usually reach out to us directly to negotiate it. But there is a cart, and you could put in the information, and you could do it in an automated fashion. But most of people reach out to us, send us an email, and we negotiate a deal." |

| | |
|---|---|
| | <u>Alejandrino Decl.</u> at ¶ 4, Exhibit B, at Grecco Tr. at 264:16-264:22. "Q: Okay. But in terms of the revenue that's generated through mgpstockphotos.com, that revenue goes to your company; right? A: If they call me to negotiate it, it goes 100 percent to us. If they happen to use the cart – and I don't think anyone has in the past – I think photoshelter gets a small percentage." |
| 87. Plaintiff generated zero revenue through the shopping cart tool in 2024.<br><br>Exh. 4, Grecco Depo. at 266:1-6. | Undisputed to the extent that Plaintiff generally generates revenue through direct negotiations – relevant context of Plaintiff's testimony which Defendant omits.<br><br>See response to 86; see also <u>Alejandrino Decl.</u> at ¶ 4, Exhibit B, at Grecco Tr. at 265:21-267:6. |
| 88. Plaintiff generated zero revenue through the shopping cart tool in 2023.<br><br>Exh. 4, Grecco Depo. at 266:12-16. | Undisputed to the extent that Plaintiff generally generates revenue through direct negotiations – relevant context of Plaintiff's testimony which Defendant omits.<br><br>See responses to 86 and 87. |
| 89. Plaintiff generated zero revenue through the shopping cart tool in 2022.<br><br>Exh. 4, Grecco Depo. at 266:23-24. | Undisputed to the extent that Plaintiff generally generates revenue through direct negotiations – relevant context of Plaintiff's testimony which Defendant omits.<br><br>See responses to 86 and 87. |
| 90. Plaintiff generated zero revenue through the shopping cart tool in 2021.<br><br>Exh. 4, Grecco Depo. at 266:25- | Undisputed to the extent that Plaintiff generally generates revenue through direct negotiations – relevant context of Plaintiff's testimony which Defendant omits. |

| | |
|---|---|
| 267:1. | See responses to 86 and 87. |
| 91.   In the "entire history" of Plaintiff's website, only one license has been granted using the shopping cart tool.<br><br>Exh. 4, Grecco Depo. at 266:25-267:5. | Undisputed. |
| 92.   The only license granted using the shopping cart tool relates to a photograph that is not at issue in this case.<br><br>Exh. 4, Grecco Depo. at 267:1-8. | Undisputed. |
| 93.   Grecco testified he does not know how much revenue Plaintiff derived from the Asserted Works.<br><br>Exh. 4, Grecco Depo. at 64:10-15; 67:6-11; 72:9-13; 75:8-17; 79:24-80:3; 84:10-19; 85:13-17; 92:2-7; 99:2-11; 112:8-16. | Undisputed.   Plaintiff's 30(b)(6) deponent was unaware of the information off hand, not that the information does not exist. |
| 94.   Plaintiff produced seventeen prior licensing agreements.<br><br>Keyes Decl. ¶ 15. Exh. 4, Grecco Depo. at 296:8-14 (testifying to Exhibits 24 through 40 to the Grecco deposition). | Undisputed. |
| 95.   Twelve of the license agreements produced by Plaintiff are "retroactive" licenses.<br><br>Exh. 4, Grecco Depo. at 296:8-14; 297:22-25 (testifying that Exhibits 29 through 40 to the Grecco deposition are retroactive licenses); 284:24-285:6; 288:11- | Undisputed. Some of the license agreements Plaintiff produced are retroactive. Plaintiff permits the unauthorized user to negotiate a licensing agreement if the unauthorized user would like a license.<br><br>Grecco Decl., at ¶ 16. |

| | |
|---|---|
| 15; 290:16-291:4; 298:16-22; 299:14-22; 300:7-301:4. | |
| 96.    Retroactive licenses are the result of Plaintiff locating an unauthorized use of its photographs and contacting the user to negotiate a license.<br><br>Exh. 4, Grecco Depo. at 284:24-285:6; 290:16-291:4; 298:16-22; 299:14-22; 300:7-301:4. | Undisputed. See response to 95. |
| 97.    Plaintiff's retroactive licenses are negotiated after infringement began.<br><br>Exh. 4, Grecco Depo. at 292:16-21 ("Every one of these is a negotiation. So if they want to pay more and continue to use the photograph, they pay more. Like, every one of these is a negotiation based on the size of the company, the size of the platform, so on and so forth."); 300:10-17 ("we sent them a demand letter that they need to pay for our content. Whether they get to keep it up or not is a matter of how much they're going to pay and what the negotiation is.") | Undisputed. See response to 95. |
| 98.    Plaintiff did not produce documents relating to its negotiations with its licensees.<br><br>Exh. 9, Response to Requests for Production Nos. 19 and 20. Keyes Decl. ¶¶ 7, 15. | Disputed to the extent that Defendant attempts to synthesize what was specifically requested in Defendant's Document Production Requests 19 and 20.<br><br>Defendant's Document Production Request 19 requested: "All Communications that Plaintiff has sent |

| | |
|---|---|
| | to any third party relating to the unauthorized use of one or more of the Works, including without limitation all demand letters, cease and desist letters, emails, and DMCA takedown notices."<br><br>Defendant's Document Production Request 20 requested: "All Communications between Plaintiff and any third party relating to the unauthorized use of one or more of the Works."<br><br>Undisputed to the extent that Plaintiff objected to Document Requests 19 and 20.<br><br>Alejandrino Decl. at ¶ 6, Exhibit D. |
| 99.    Plaintiff did not produce its settlement agreements because they are "not relevant" to this matter.<br><br>Exh. 9, Response to Request for Production No. 7. *See also* Exh. 15 at 1. | Undisputed. Plaintiff objected to Defendant's Document Production Request 20 as not only irrelevant, but also that any such agreements would be subject to confidentiality.<br><br>Alejandrino Decl. at ¶ 6, Exhibit D. |
| 100.    Plaintiff is not relying on settlement agreements for its actual damages.<br><br>Keyes Decl. ¶ 13. Exh. 15 t 1.<br>*See also* Exh. 9, Response to Request for Production No. 7. | Undisputed. |
| 101.    Plaintiff has a license with Delphi Internet.<br><br>Exh. 4, Grecco Depo. at 267:17-19. | Undisputed. |
| 102.    Plaintiff's license with | Undisputed. |

| | |
|---|---|
| Delphi Internet does not relate to a photograph at issue in this case.<br><br>Exh. 4, Grecco Depo. at 296:2-8. | |
| 103.   Plaintiff has a license with Anderson Consulting.<br><br>Exh. 4, Grecco Depo. at 269:15-270:4. | Undisputed. |
| 104.   Plaintiff's license with Anderson Consulting does not relate to a photograph at issue in this case.<br><br>Exh. 4, Grecco Depo. at 270:19-271:9. | Undisputed. |
| 105.   Plaintiff has a license with Propane Educational and Research Council.<br><br>Exh. 4, Grecco Depo. at 272:5-16. | Undisputed. |
| 106.   Plaintiff's license with Propane Educational and Research Council does not relate to a photograph at issue in this case.<br><br>Exh. 4, Grecco Depo. at 272:22-273:3. | Undisputed. |
| 107.   Plaintiff has a license with G+J Corporate Editors.<br><br>Exh. 4, Grecco Depo. at 273:12-17. | Undisputed. |
| 108.   G+J Corporate Editors is a German magazine.<br><br>Exh. 4, Grecco Depo. at 273:16-19. | Undisputed. |

| | |
|---|---|
| 109.  Grecco was not sure whether the license with G+J Corporate Editors relates to a photograph at issue in this case.<br><br>Exh. 4, Grecco Depo. at 274:1-7. | Undisputed. However, upon review of the license with G+J Corporate Editors following the deposition, Plaintiff can confirm that the license to G+J Corporate Editors pertains to a photograph at issue in this case.<br><br>Grecco Decl., at ¶ 17. |
| 110.  Plaintiff has a license with Business Insider.<br><br>Exh. 4, Grecco Depo. at 275:2-15. Exh. 13 at 1. | Undisputed. |
| 111.  The license with Business Insider permits use of Plaintiff's photograph "on the Businessinsider.my website only."<br><br>Exh. 13 at 1. | Undisputed. |
| 112.  Businessinsider.my is a Malaysian website.<br><br>Keyes Decl. ¶ 12. Exh. 14 at 1. | Undisputed. |
| 113.  Grecco testified he is opting for statutory damages.<br><br>Exh. 4, Grecco Depo. at 218:2-4; 228:18-25; 230:14-22. | Disputed. Plaintiff believes it is likely to elect statutory damages, but has not made a final determination, nor is it required to at this stage.<br><br>Alejandrino Decl. at ¶ 4, Exhibit B, at Grecco Tr. at 228:23-228:25. "We're not asking for actual damages. We're asking for statutory damages, I believe. I'm going to defer to my attorney on that, though." |

COPYCAT LEGAL PLLC
113 North San Vicente Boulevard
Suite 232
Beverly Hills, CA 90211
Telephone: (877) 437-6228
lauren@copycatlegal.com
jonathan@copycatlegal.com

*Attorneys for Plaintiff*

By: /s/ Jonathan Alejandrino
    Jonathan Alejandrino, Esq.
    (*pro hac vice*)

By: /s/ Lauren M. Hausman
    Lauren M. Hausman, Esq.

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 5, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will electronically serve all counsel of record.

/s/ Lauren Hausman
Lauren Hausman, Esq.