Lauren M. Hausman (CA Bar No. 349514)
**COPYCAT LEGAL PLLC**
113 N San Vicente Blvd
Suite 232
Beverly Hills, CA 90211
T: (877) 437-6228
E: lauren@copycatlegal.com

Jonathan Alejandrino, *pro hac vice*
**COPYCAT LEGAL PLLC**
3111 North University Drive
Suite 301
Coral Springs, FL 33065
T: (877) 437-6228
E: jonathan@copycatlegal.com

Attorneys for Plaintiff
Michael Grecco Productions, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL GRECCO PRODUCTIONS, INC. | Civil Action No. 2:24-cv-04837-FLA-MAR |
| Plaintiff, | |
| v. | **DECLARATION OF JONATHAN ALEJANDRINO** |
| TIKTOK, INC. | |
| Defendant. | |

Jonathan Alejandrino does hereby declare pursuant to 28 U.S.C. § 1746:

1.    I am over the age of 18 and otherwise competent to testify.

2.    I submit this declaration in support of plaintiff Michael Grecco Productions, Inc.'s ("Plaintiff") Memorandum in Opposition to defendant TikTok, Inc.'s ("Defendant") Motion for Summary Judgment or Partial Summary Judgment. I am counsel of record for Plaintiff.  This declaration and the facts stated herein are based upon my personal knowledge.

3.    A true and correct copy of the July 10, 2025, Deposition Transcript of Jemi B (the 30(b)(6) representative for Defendant) (the "Boutros Tr.") is attached hereto as **Exhibit "A."**

4.    A true and correct copy of the July 18, 2025, Deposition Transcript of Michael Grecco (the sole owner of/ the 30(b)(6) representative for Plaintiff) (the "Grecco Tr.") is attached hereto as **Exhibit "B."**

5.    A true and correct copy of Plaintiff's Initial Disclosures (the "Initial Disclosures") is attached hereto as **Exhibit "C."**

6.    A true and correct copy of Plaintiff's Amended Responses to Defendant's Request for Production (the "Responses to Defendant's Request for Production") is attached hereto as **Exhibit "D."**

7.    A true and correct copy of Plaintiff's Responses to Defendant's First Set of Interrogatories (the "Responses to Defendant's Interrogatories") is attached hereto as **Exhibit "E."**

1      I declare under penalty of perjury under the laws of the United States of

2  America that the foregoing is true and correct.

3      DATED: September 5, 2025.

4

5                     /s/ Jonathan Alejandrino

6                     Jonathan Alejandrino, Esq.

# EXHIBIT "A"

CONFIDENTIAL    CONFIDENTIAL    CONFIDENTIAL

12

1      A    If any?  So the content gets uploaded.

2    There's a series of different ways how content can

3    get flagged.  And depending on how the flag happens,

4    it would go to a particular team for review.

5      Q    So upon initial upload, it is monitored to

6    be flagged if there is anything that's, I guess, in

7    violation of any rules?

8      A    Can you ask the question one more time?

9      Q    So when a video's uploaded, it is

10    monitored to be flagged in the instance that it is

11    in violation of any standards that TikTok has?

12      A    I would say that any video that gets

13    flagged by algorithms or users reporting the content

14    is more of how it would get flagged.

15      Q    So if I'm understanding correctly, when a

16    user uploads the video, it's not being monitored for

17    flagging?

18      A    There's too much content for human review,

19    which is why there's different mechanisms in place.

20      Q    So these mechanisms, do they -- I guess,

21    essentially, they're sort of like an AI sort of

22    thing that's reviewing these uploaded videos.

23          MR. KEYES:  Objection, vague.

24          But go ahead and answer if you can.

25      A    I'm actually not sure on those specifics

CONFIDENTIAL    CONFIDENTIAL    CONFIDENTIAL

13

1    when it comes to AI, since it's new technology.  I

2    just know that, broadly speaking, there's different

3    strategies in place.

4    BY MR. ALEJANDRINO:

5        Q    So it's possible for someone to upload a

6    video, and it be immediately flagged?

7        A    Yes.

8        Q    Is that the only way that these are

9    monitored upon initial uploading, these mechanisms

10   that you described?

11       A    I'm not sure of the full extent of that,

12   since my expertise is more in the IP scope.

13       Q    If a user uploads content that is flagged

14   or reported, does that page get -- or that user now,

15   anything they upload now is more heavily scrutinized

16   or more heavily reviewed?

17       A    So are you asking what happens before it

18   gets flagged and enforced?

19       Q    No.  So if a user is flagged or their

20   content is flagged, are they more closely monitored

21   moving forward?

22       A    I'm not sure about that one.

23       Q    I guess the same question, if content was

24   removed for a user, is that user's content now more

25   closely monitored?

CONFIDENTIAL    CONFIDENTIAL    CONFIDENTIAL

16

1    those terms that they agree to?

2         A    Yes.

3         Q    Does TikTok have sort of overbroad

4    standards or policies that guide what can be posted

5    on TikTok's platform?

6         A    The question is generalization of

7    community guidelines?

8         Q    Correct.

9         A    So on TikTok, there are different

10   verticals of community guidelines that are

11   specified.

12        Q    And if a video violates those guidelines,

13   how can that be reported?

14        A    A user can report in-app or on the most

15   relevant Web form report so it gets to the proper

16   team for review.

17        Q    If it's not a user, then it would be those

18   mechanisms you discussed earlier?

19        A    Yes.

20        Q    Is there any human review?

21        A    Yes.

22        Q    When does that occur?

23        A    So human review happens when a video is

24   flagged by those strategy mechanisms I was referring

25   to earlier, as well as when someone, a human,

CONFIDENTIAL    CONFIDENTIAL    CONFIDENTIAL

17



1    reports the content as well.

2    Q    If a video is reported for violation of

3    those standards and guidelines, how long does TikTok

4    take to remove any content that it deems in

5    violation?

6    A    I can speak to the IP side, but not for

7    the rest of the community guidelines, I would say.

CONFIDENTIAL    CONFIDENTIAL    CONFIDENTIAL

18

1

CONFIDENTIAL    CONFIDENTIAL    CONFIDENTIAL

26

```
 1        A     I'm not sure of the criteria.  Whether all
 2   of the criteria has to be met or some of it, I'm not
 3   sure of those details.
 4        Q     Of the 24 users that are in this case,
 5   would you say about half have been admitted into the
 6   Creator Program?
 7        A     I truly don't know the answer to that.
 8        Q     Do you have, like, a ballpark idea of how
 9   many?
10        A     Not a number, just some of the 24.
11        Q     Less than 10?
12        A     I'm not sure.
13        Q     Now, for this Creator Program and the
14   users that are able to monetize their content, how
15   is TikTok benefiting from this arrangement?
16        A     I would say TikTok doesn't necessarily
17   benefit.  I would say that the users who are able to
18   monetize off of their content are the ones who are
19   profiting themselves for doing that. TikTok doesn't
20   necessarily take a cut from those profits gained by
21   those creators.
22        Q     How does TikTok make money off of people
23   uploading content?
24        A     I would say, broadly speaking, from my
25   understanding, TikTok can make money from
```

CONFIDENTIAL    CONFIDENTIAL    CONFIDENTIAL

27

```
 1    advertisements or brand partnerships, maybe through

 2    TikTok Shop sales, but that's probably as much as I

 3    know in terms of concepts of how the company can

 4    make money.

 5         Q    Does TikTok make money only on users that

 6    are admitted to the Creator Program?

 7         A    Your question is, does TikTok make money

 8    from creators who make money from the Creator

 9    Program?

10         Q    Is it solely those creators?

11         A    But TikTok doesn't take a profit from

12    their funds, so my answer would be no to that.

13         Q    So TikTok makes a profit regardless of

14    whether the content is coming from a user admitted

15    into the Creator Program?

16         A    TikTok generates their money from other

17    revenue streams.  It's not from the creators who are

18    creating content and monetizing off of it.

19         Q    So you mentioned the TikTok Shop.

20    Sometimes creators advertise products from the

21    TikTok Shop, correct?

22         A    I would say there's more of an affiliate

23    program.  I'm not sure about, like, the advertising

24    concept with that.

25         Q    So in that instance where the creator has
```

CONFIDENTIAL    CONFIDENTIAL    CONFIDENTIAL

28

1    an affiliation with the TikTok Shop, TikTok is then

2    making money off of that specific content pushing

3    that product?

4        A    Well, I'm not sure of those details.

5        Q    If a user is in the Creator Program, is

6    TikTok pushing that content over non-monetized

7    content to users -- to other users?

8        A    I'm not sure how the algorithm works.  I

9    just know for the For You feed, it's pushing content

10    for the user who's using it to what they like or

11    have engaged with.

████    ██    ██████████████████████████████

████    ████████

████    ██    ████████████████████████████████

15        Q    What percentage of those users or how many

16    of those users are part of the Creator Program?

17        A    I don't know.

18        Q    You mentioned that, essentially, for a

19    video to get onto the For You page, it's sort of

20    curated to the individual user's For You page?

21        A    From my understanding, yes.

22        Q    I don't know if you would know this

23    answer.

24            So if a video is becoming viral, is it

25    then pushed to all users' For You page or is it

CONFIDENTIAL   CONFIDENTIAL   CONFIDENTIAL

29

```
 1    still curated to the specific user?

 2              MR. KEYES:  Objection, vague.

 3              But go ahead and answer.

 4    A    Yeah, I'm not sure of that one.

 5    BY MR. ALEJANDRINO:

 6    Q    So does TikTok make money off of the

 7    advertisement in partnerships that you discussed

 8    regardless of content being uploaded to TikTok?

 9    A    I'm not sure of the latter part.

10    Q    What role does content play in TikTok's

11    ability to earn revenue?

12    A    I'm not sure.

13    Q    Is TikTok's revenue tied to the amount of

14    users on TikTok?

15    A    I don't know.

16    Q    When a user is in the Creator Fund, is the

17    money they're making or earning dependent on the

18    number of views or clicks or visits?

19    A    I'm not sure of the criteria.  Yeah, I

20    think that information may be available on TikTok's

21    website, the criteria, that is.

22    Q    I know you mentioned that, again, the For

23    You page is sort of curated to the individual users

24    and their likes and whatnot.

25              Does TikTok ever play a role in pushing
```

CONFIDENTIAL    CONFIDENTIAL    CONFIDENTIAL

30



1    certain content out?

2         A    I don't think so.

3         Q    And that's all algorithm-based, correct?

4         A    The For You feed that is?

5         Q    Yes.

6         A    Yes, yes, yes.

7         Q    Are you aware if the algorithm is ever

8    tweaked or changed?

9         A    I couldn't tell you that.

21    BY MR. ALEJANDRINO:

22         Q    What is the Gmail account?

23         A    I don't know.

CONFIDENTIAL   CONFIDENTIAL   CONFIDENTIAL

31



13      Q    And you mentioned that takedown notice can

14  be submitted in-app or other ways.

15           What are the other ways that it can be

16  submitted besides in-app?

17      A    It could be submitted through in-app,

18  through the desktop version for Copyright and

19  Trademark Notice and Takedowns.  It can be submitted

20  if someone sent it to the Gmail inbox.  I just don't

21  know what the e-mail is.

22           And the other way that it could be

23  submitted is through an internal database where we

24  have trusted partners who can submit those notice

25  and takedowns in that system.

CONFIDENTIAL   CONFIDENTIAL   CONFIDENTIAL

42

CONFIDENTIAL    CONFIDENTIAL    CONFIDENTIAL

44

22      Q      Okay.  Just to confirm, that Gmail is the

23      copyright@tiktok.com?

24      A      Correct.

CONFIDENTIAL   CONFIDENTIAL   CONFIDENTIAL

47

1    if I've seen this specific one to this user and

2    video ID, I can't address that.  But the nature of

3    the document you're showing, I'm familiar with it.

4         Q    What type of document is this?

5         A    This looks to be a DMCA notice off the

6    bat.  I don't know if there's more to scroll

7    through.

8         Q    I'll give it a scroll.

9         A    Yes.  So this is -- how do I say this --

10   an e-mailed version versus a template that the Web

11   form and in-app reporting system has.

12        Q    Can you see where this was -- what e-mail

13   this was addressed to?

14        A    Copyright@tiktok.com.

15        Q    And is that TikTok's designated DMCA

16   e-mail?

17        A    Correct.

18        Q    Can you see when this e-mail was dated?

19        A    January 26th, 2024.

20        Q    And are you aware of when this e-mail

21   would have been received?

22        A    If the system was working correctly, we

23   would have received it on that date.

24        Q    And when would the e-mail or this document

25   have been actually viewed?

51

1          information that we've already testified is

2          attorney-client privileged communications.

3          A    Well, I was going to say, so the notice

4     and takedowns received from Mr. Grecco, they were

5     reviewed by the legal team specifically.

6     BY MR. ALEJANDRINO:

7          Q    Is that typical?

8          A    Typically, IP ops would have been

9     involved, but I think given the nature of the

10    circumstance, that's why it was escalated to the

11    legal team.

12         Q    So in this instance, and I guess with

13    Mr. Grecco's photos, they were already by the legal

14    team?

15         A    From my understanding.

16         Q    Was there any role that an IP operator

17    played in this review?

18         A    Not in these DMCA reviews, no.

19         Q    So this was not -- this did not follow the

20    typical procedure that TikTok has for DMCA takedown

21    notices; is that fair to say?

22         A    Yeah, given the nature of how these

23    reports were taken into the system.

24         Q    And so you said the legal team is the one

25    who reviewed them and made the determination.

CONFIDENTIAL    CONFIDENTIAL    CONFIDENTIAL

52

1          Are you aware of what the determination

2   was?

3       A    I only know the determination was that

4   they didn't hit on policy.  But in terms of the

5   assessment, I wasn't privy to that.

6       Q    What do you mean "they didn't hit on

7   policy"?

8       A    Our internal policies for copyright.

9       Q    Can you be more specific?

10      A    The descriptors and guidelines used to

11  make a determination.

12      Q    What specific policy did TikTok apply that

13  allowed it to not be considered warranted for

14  removal?

15      A    Well, I wasn't a part of the assessment

16  and wasn't included in the conversations for the

17  assessment, so I can't answer that.

18      Q    Did you not review any documents

19  pertaining to that assessment in preparation for

20  this deposition?

21      A    No.  That wasn't my role in this.

22      Q    So is it fair to say you're not aware of

23  any of the reasoning for any of the photos at issue

24  and their evaluation in review?

25      A    Can you ask the question again, please?

CONFIDENTIAL     CONFIDENTIAL     CONFIDENTIAL

53

```
 1        Q     So is it fair to say that you are not
 2   familiar nor aware of the reasoning as to why
 3   certain photos at issue were not removed?
 4        A     Other than saying that it didn't hit the
 5   policy guidelines and that legal made that decision,
 6   I can't speak further to that.
 7              MR. ALEJANDRINO:  I'm going to show you
 8        what I'm marking as Plaintiff's Exhibit 4.
 9              (Whereupon, Plaintiff's Exhibit Number 4
10        was marked for Identification.)
11   BY MR. ALEJANDRINO:
12        Q     Do you see that here?
13        A     I see Exhibit 4.
14        Q     And what is this document?
15        A     It's a Copyright Infringement Notice.
16        Q     And can you see who this was e-mailed to?
17        A     Copyright@tiktok.com.
18        Q     Do you see when this e-mail was dated?
19        A     March 20th, 2024.
20        Q     And would that have been the same day that
21   it was received in the Gmail?
22        A     In our operations if everything was
23   working perfectly, that is when we would have
24   received it.
25        Q     Are you aware of when this was actually
```

CONFIDENTIAL    CONFIDENTIAL    CONFIDENTIAL

56

1    viewed or reviewed this e-mail?

2        A    Is the question -- sorry -- asking if I

3    know or when it was?

4        Q    Do you know when it was actually viewed?

5        A    I don't know.

6        Q    Do you know if this content was removed?

7        A    Based on the URL, I can't tell.

8             MR. ALEJANDRINO:  I can move on to the

9        next one.  I'm going to be showing you what I

10       am marking as Plaintiff's Exhibit 6.

11            (Whereupon, Plaintiff's Exhibit Number 6

12       was marked for Identification.)

13   BY MR. ALEJANDRINO:

14       Q    I will go ahead and scroll through the

15   document for you.  It is three pages.

16            Do you know what this document is?

17       A    It appears to be an e-mail copy of what

18   looks to be a Copyright Infringement Notice.

19       Q    And who was this addressed to?

20       A    The e-mail it was addressed to,

21   copyright@tiktok.com.

22       Q    And can you tell me the date of the

23   e-mail?

24       A    March 19th, 2024.

25       Q    When was this received?

CONFIDENTIAL   CONFIDENTIAL   CONFIDENTIAL

57

```
1       A    I don't know when it was received.

2       Q    When was it viewed?

3       A    I don't know when it was viewed.

4       Q    Was it removed?

5       A    I can't tell based on the URL if it was

6   removed or not.

7            MR. ALEJANDRINO:  I'm now showing you what

8       I'm marking as Plaintiff's Exhibit 7.

9            (Whereupon, Plaintiff's Exhibit Number 7

10       was marked for Identification.)

11   BY MR. ALEJANDRINO:

12       Q    I will once again scroll through with you.

13   It's also three pages.

14            What is this document?

15       A    It appears to be an e-mail receipt or copy

16   for a Copyright Infringement Notice.

17       Q    And who was this addressed to?

18       A    It appears that the e-mail is

19   copyright@tiktok.com.

20       Q    And can you tell me the date of this

21   notice?

22       A    The notice says March 21st, 2024.

23       Q    When was it received?

24       A    I don't know.

25       Q    When was it viewed?
```

CONFIDENTIAL    CONFIDENTIAL    CONFIDENTIAL

59

```
 1              MR. ALEJANDRINO:  I'm going to show you
 2         what I will be marking as Plaintiff's Exhibit
 3         8.
 4              (Whereupon, Plaintiff's Exhibit Number 8
 5         was marked for Identification.)
 6    BY MR. ALEJANDRINO:
 7         Q    I'll go ahead and scroll through the
 8    document.
 9              And what is this document?
10         A    It is appears to be an e-mail receipt of a
11    Copyright Infringement Notice.
12         Q    And who is it addressed to?
13         A    The e-mail it was addressed to is
14    copyright@tiktok.com.
15         Q    When is this e-mail dated?
16         A    The e-mail is dated March 27th, 2024.
17         Q    When was this received?
18         A    I don't know.
19         Q    When was it reviewed?
20         A    I don't know.
21         Q    Do you know if this post was removed?
22         A    Based on the URL, I can't tell if it was
23    removed or not.
24              MR. ALEJANDRINO:  I'm showing you what I'm
25         marking as Plaintiff's Exhibit 9.
```

CONFIDENTIAL   CONFIDENTIAL   CONFIDENTIAL

60

```
 1              (Whereupon, Plaintiff's Exhibit Number 9

 2         was marked for Identification.)

 3    BY MR. ALEJANDRINO:

 4         Q    I will scroll through the document.

 5              What is this document?

 6         A    It appears to be an e-mail copy of a

 7    Copyright Infringement Notice.

 8         Q    And to whom was it addressed to?

 9         A    The e-mail says copyright@tiktok.com.

10         Q    And the date?

11         A    March 18th, 2024.

12         Q    And when was this one received?

13         A    I don't know.

14         Q    When was it actually viewed?

15         A    I don't know.

16         Q    And do you know if this was removed or

17    not?

18         A    Based on the URL, I can't tell if it was

19    removed or not.

20              MR. ALEJANDRINO:  I'm now showing you what

21         I'm marking as Plaintiff's Exhibit 10.

22              (Whereupon, Plaintiff's Exhibit Number 10

23         was marked for Identification.)

24    BY MR. ALEJANDRINO:

25         Q    I'll scroll through the document as well.
```

CONFIDENTIAL   CONFIDENTIAL   CONFIDENTIAL

61

1                   And what is this document?

2         A     It looks to be an e-mail copy of a

3    Copyright Infringement Notice.

4         Q     And who is this addressed to?

5         A     It's addressed to copyright@tiktok.com.

6         Q     And when was this e-mail dated?

7         A     Well, just to confirm, underneath

8    copyright department towards the top, it says

9    "Wednesday, 3/6/2024," but then there's another date

10   saying, "March 6th, 2024."

11        Q     I'm sorry.  You said up here it says

12   March 6th, 2024?

13        A     Oh, my gosh.  Those are the same dates.

14   Yes.

15        Q     Do you know when this was received?

16        A     I don't know.

17        Q     Do you know when this would have been

18   viewed?

19        A     I don't know.

20        Q     And are you aware of whether this post was

21   removed?

22        A     Based on the URL, I can't tell if it was

23   removed or not.

24              MR. ALEJANDRINO:  I'm now showing you what

25        I'm marking as Plaintiff's Exhibit 11.

CONFIDENTIAL    CONFIDENTIAL    CONFIDENTIAL

62

```
 1                    (Whereupon, Plaintiff's Exhibit Number 11
 2           was marked for Identification.)
 3    BY MR. ALEJANDRINO:
 4           Q    And I will go ahead and scroll through
 5    this one as well.
 6                 And what is this document?
 7           A    It looks to be an e-mail copy of a
 8    Copyright Infringement Notice.
 9           Q    And can you tell me who this is addressed
10    to?
11           A    It's addressed to copyright@tiktok.com.
12           Q    And when would this e-mail have been
13    received?
14           A    I don't know when the e-mail was received.
15           Q    When was it actually viewed?
16           A    I don't know when it was actually viewed.
17           Q    Are you aware of whether it was removed or
18    not?
19           A    Based on the URL, I can't tell if it was
20    removed or not.
21           Q    So I do have about, I believe, 14 of these
22    left.  So instead of just hammering you over the
23    head with that, I'm just going to ask:  Is it fair
24    to say that the answers will be the same for every
25    single one of the takedown notices?
```

CONFIDENTIAL   CONFIDENTIAL   CONFIDENTIAL

64



1        Q     I'm going to stop sharing my screen.

2              Now, going back to what we discussed, is

3     it fair to say that the steps that are typically

4     followed when a DMCA takedown notice is received by

5     TikTok were not followed in this case?

6        A     Your question is were the steps not taken

7     according to the normal procedure?

8        Q     Yes.

CONFIDENTIAL   CONFIDENTIAL   CONFIDENTIAL

65



22   BY MR. ALEJANDRINO:

23        Q    Earlier we discussed when users are

24   notified that their content is being removed.

25             Were any of the users in this case

CONFIDENTIAL   CONFIDENTIAL   CONFIDENTIAL

67



```
 1      A     No.

 2      Q     So does this mean none of the users that

 3   their content was removed were notified?

 4      A     Content removed from TikTok?

 5      Q     Correct.

 6      A     So the question is:  The content that

 7   TikTok removed, were any of the users notified?

 8      Q     Yes.

 9      A     So there was one content that was impacted

10   by this from an irrelevant -- like another issue.

11   I'm not sure what communications they got.  But any

12   time TikTok removes something, there is a form of

13   communication.

14           MR. ALEJANDRINO:  I think this is a good

15      place to take a break.  We can go off record.

16           (Lunch recess from 3:31 p.m. EST to 4:15

17      EST.)

18           MR. ALEJANDRINO:  We can go back on the

19      record.

20   BY MR. ALEJANDRINO:
```

CONFIDENTIAL   CONFIDENTIAL   CONFIDENTIAL

68



24          MR. ALEJANDRINO:  I also now want to go

25      back.  Because your attorney did object when I

CONFIDENTIAL    CONFIDENTIAL    CONFIDENTIAL

70

```
1        A    I don't know.

2        Q    When was this reviewed by TikTok?

3        A    I don't know.

4        Q    Was this content removed?

5        A    I can't tell from this document.

6             MR. KEYES:  Counsel, are you marking this

7        at an exhibit?

8             MR. ALEJANDRINO:  Yes.  I specified that

9        it will be marked as Plaintiff's Exhibit 12.

10            MR. KEYES:  Okay.  Thank you.

11            MR. ALEJANDRINO:  Now I'm going to show

12       you what I'm marking as Plaintiff's Exhibit 13.

13            (Whereupon, Plaintiff's Exhibit Number 13

14       was marked for Identification.)

15   BY MR. ALEJANDRINO:

16       Q    I will go ahead and scroll through. It is

17   a three-page document.

18            And can you tell me what this document is?

19       A    It appears to be an e-mail copy of a

20   Copyright Infringement Notice.

21       Q    Who was this addressed to?

22       A    The e-mail that this was sent to was

23   copyright@tiktok.com.

24       Q    Can you tell me the date of this e-mail?

25       A    The date is listed as October 29th, 2023.
```

CONFIDENTIAL   CONFIDENTIAL   CONFIDENTIAL

71

```
 1        Q    And when would this e-mail have been
 2   received by TikTok?
 3        A    I'm not sure when TikTok received this
 4   specific e-mail.
 5        Q    When would they have reviewed this e-mail?
 6        A    I don't have that information.
 7        Q    And do you know if this one was removed?
 8        A    I can't tell based on the document itself.
 9             MR. ALEJANDRINO:  I will move on to what
10        I'm marking as Plaintiff's Exhibit 14.
11             (Whereupon, Plaintiff's Exhibit Number 14
12        was marked for Identification.)
13   BY MR. ALEJANDRINO:
14        Q    I'll also scroll through this one.  This
15   is also a three-page document.
16             Can you tell me what this document is?
17        A    It appears to be an e-mail copy of a
18   Copyright Infringement Notice.
19        Q    And to whom is this addressed?
20        A    The e-mail this was sent to is
21   copyright@tiktok.com.
22        Q    And when was this received by TikTok?
23        A    I don't know when this was received by
24   TikTok.
25        Q    When was it viewed by TikTok?
```

72

```
 1       A    I'm not sure when this was viewed by
 2   TikTok.
 3       Q    And was this content removed by TikTok?
 4       A    I can't tell based on what's shown in
 5   front of me.
 6            MR. ALEJANDRINO:  I'm now going to show
 7       you what I'm marking as Plaintiff's Exhibit 15.
 8            (Whereupon, Plaintiff's Exhibit Number 15
 9       was marked for Identification.)
10   BY MR. ALEJANDRINO:
11       Q    I'll also scroll through this one.  This a
12   two-page document.
13            Can you tell me what this document is?
14       A    Do you mind scrolling down to the bottom?
15   Thanks.
16       Q    Sure.
17       A    It appears to be an e-mail for a DMCA
18   notice.
19       Q    Who is this addressed to?
20       A    It was addressed to copyright@tiktok.com.
21       Q    And when was this one dated?
22       A    October 13th, 2023.
23       Q    When was this received by TikTok?
24       A    I don't know.
25       Q    When was it viewed by TikTok?
```

CONFIDENTIAL   CONFIDENTIAL   CONFIDENTIAL

73

```
 1        A    I don't know.

 2        Q    Was this content removed by TikTok?

 3        A    I can't tell based on what's in front of

 4   me.

 5             MR. ALEJANDRINO:  I'm now going to show

 6        you what I am marking as Plaintiff's Exhibit

 7        16.

 8             (Whereupon, Plaintiff's Exhibit Number 16

 9        was marked for Identification.)

10   BY MR. ALEJANDRINO:

11        Q    I will once again scroll.

12             What is this document?

13        A    It appears to be an e-mail copy of a

14   Copyright Infringement Notice.

15        Q    Who is it addressed to?

16        A    It was address to copyright@tiktok.com.

17        Q    Can you tell me the date of this e-mail?

18        A    The date of the e-mail says March 12th,

19   2024.

20        Q    And when was this received by TikTok?

21        A    I'm not sure.

22        Q    When would TikTok have viewed this e-mail?

23        A    I don't know.

24        Q    Was this content removed?

25        A    I can't tell based on what's in front of
```

74

1   me.
2           MR. ALEJANDRINO:  I'm now going to show
3       you what I am marking as Plaintiff's Exhibit
4       17.
5           (Whereupon, Plaintiff's Exhibit Number 17
6       was marked for Identification.)
7   BY MR. ALEJANDRINO:
8       Q    And I will scroll through this one as
9   well.
10          What is this document?
11      A    It appears to be a copy of a Copyright
12  Infringement Notice.
13      Q    And who is this addressed to?
14      A    It was addressed to copyright@tiktok.com.
15      Q    What is the date of this e-mail?
16      A    The date is March 15th, 2024.
17      Q    And on what date was this received by
18  TikTok?
19      A    I don't know.
20      Q    On what date was this viewed by TikTok?
21      A    I don't know.
22      Q    And was the content removed?
23      A    I can't tell based on what's in front of
24  me.
25          MR. ALEJANDRINO:  Now I'm going to show

CONFIDENTIAL   CONFIDENTIAL   CONFIDENTIAL

75

1          you what I'm marking as Plaintiff's Exhibit 18.

2                  (Whereupon, Plaintiff's Exhibit Number 18

3          was marked for Identification.)

4     BY MR. ALEJANDRINO:

5          Q    And I will scroll through this one as

6     well. It's a two-page document.

7                  Can you tell me what this document is?

8          A    It appears to be a copyright notice and

9     takedown e-mail copy.

10         Q    Who was it e-mailed to?

11         A    It was e-mailed to copyright@tiktok.com.

12         Q    What is the date of the e-mail?

13         A    October 13th, 2023.

14         Q    And when was this received by TikTok?

15         A    I don't know.

16         Q    When was it viewed by TikTok?

17         A    I don't know.

18         Q    And was this content removed?

19         A    I can't tell based on what's in front of

20     me.

21                 MR. ALEJANDRINO:  I'm now going to show

22         you what I'm marking as Plaintiff's Exhibit 19.

23                 (Whereupon, Plaintiff's Exhibit Number 19

24         was marked for Identification.)

25

CONFIDENTIAL    CONFIDENTIAL    CONFIDENTIAL

76

```
 1   BY MR. ALEJANDRINO:

 2        Q    I will scroll through this one as well.

 3   It's a four-page document.

 4             Can you tell me what this document is?

 5        A    It appears to be a Copyright Infringement

 6   Notice copy of an e-mail.

 7        Q    To whom is it addressed to?

 8        A    It's addressed to copyright@tiktok.com.

 9        Q    What is the date of this e-mail?

10        A    The date reads as February 12th, 2024.

11        Q    When did TikTok receive this e-mail?

12        A    I don't know.

13        Q    When did TikTok view this e-mail?

14        A    I don't know.

15        Q    Was the content here removed?

16        A    I can't tell based on what's in front of

17   me.

18             MR. ALEJANDRINO:  I'm now going to show

19        you what I'm marking as Plaintiff's Exhibit 20.

20             (Whereupon, Plaintiff's Exhibit Number 20

21        was marked for Identification.)

22   BY MR. ALEJANDRINO:

23        Q    I'll scroll through this one as well.

24   What is this document?

25        A    It appears to be an e-mail copy of a
```

CONFIDENTIAL   CONFIDENTIAL   CONFIDENTIAL

77

```
 1    Copyright Infringement Notice.

 2         Q    And who is it addressed to?

 3         A    Copyright@tiktok.com.

 4         Q    When is this e-mail dated?

 5         A    The date on this e-mail reads as

 6    November 17th, 2023.

 7         Q    When was this received by TikTok?

 8         A    I don't know.

 9         Q    When would it have been viewed by TikTok?

10         A    I don't know.

11         Q    And is the content listed here removed?

12         A    I can't tell based on what's in front of

13    me.

14              MR. ALEJANDRINO:  Now I'm showing you what

15         I'm marking as Plaintiff's Exhibit 21.

16              (Whereupon, Plaintiff's Exhibit Number 21

17         was marked for Identification.)

18    BY MR. ALEJANDRINO:

19         Q    And I will scroll through this one.  It's

20    a four-page document.

21              Can you tell me what this document is?

22         A    It appears to be an e-mail of a Copyright

23    Infringement Notice.

24         Q    And who is this e-mail addressed to?

25         A    To copyright@tiktok.com.
```

78

```
 1        Q    When was this e-mail dated?

 2        A    It reads as February 28th, 2024.

 3        Q    When was the e-mail received?

 4        A    I don't know.

 5        Q    When was it viewed?

 6        A    I don't know.

 7        Q    Was the content removed?

 8        A    I can't tell based on what's in front of

 9   me.

10             MR. ALEJANDRINO:  I'm now showing you what

11        I'm marking as Plaintiff's Exhibit 22.

12             (Whereupon, Plaintiff's Exhibit Number 22

13        was marked for Identification.)

14   BY MR. ALEJANDRINO:

15        Q    And I will scroll through this one.

16             What is this document?

17        A    This document appears to be a Copyright

18   Infringement Notice.

19        Q    And who was this e-mailed to?

20        A    This was e-mailed to copyright@tiktok.com.

21        Q    When was this e-mail received?

22        A    I don't know when the e-mail was received.

23        Q    When was it viewed?

24        A    I don't know when it was viewed.

25        Q    Was the content here removed?
```

CONFIDENTIAL   CONFIDENTIAL   CONFIDENTIAL
79

1       A    I don't know if the content here was

2   removed.

3              MR. ALEJANDRINO:  I'm now showing you what

4       I'm marking as Plaintiff's Exhibit 23.

5              (Whereupon, Plaintiff's Exhibit Number 23

6       was marked for Identification.)

7   BY MR. ALEJANDRINO:

8       Q    I'm going to scroll through the document.

9            What is this document?

10      A    It appears to be an e-mail copy of the

11  Copyright Infringement Notice.

12      Q    And who was this e-mailed to?

13      A    This was e-mailed to copyright@tiktok.com.

14      Q    What is the date on this e-mail?

15      A    The date reads on this e-mail as

16  November 3rd, 2023.

17      Q    What date was this e-mail received?

18      A    I don't know.

19      Q    What date was this e-mail viewed?

20      A    I don't know.

21      Q    Was the content removed?

22      A    I don't know based on what's in front of

23  me.

24             MR. ALEJANDRINO:  I'm now showing what you

25      I'm marking as Plaintiff's Exhibit 24.

CONFIDENTIAL    CONFIDENTIAL    CONFIDENTIAL

80

1              (Whereupon, Plaintiff's Exhibit Number 24

2         was marked for Identification.)

3    BY MR. ALEJANDRINO:

4         Q    I will likewise scroll through the

5    document.

6              What is this document?

7         A    It appears to be an e-mail copy of a

8    Copyright Infringement Notice.

9         Q    And who is it addressed to?

10        A    It is addressed to copyright@tiktok.com.

11        Q    When is this dated for?

12        A    The date reads on this document as

13   October 24th, 2023.

14        Q    When was this received?

15        A    I don't know.

16        Q    When was it viewed?

17        A    I don't know.

18        Q    And was the content removed?

19        A    I can't tell based on what's in front of

20   me.

21             MR. ALEJANDRINO:  I'm now showing you what

22        I'm marking as Exhibit 25.

23             (Whereupon, Plaintiff's Exhibit Number 25

24        was marked for Identification.)

25

CONFIDENTIAL   CONFIDENTIAL   CONFIDENTIAL

81

```
 1   BY MR. ALEJANDRINO:
 2        Q    I will scroll through this document as
 3   well.  What is this document?
 4        A    It appears to be an e-mail copy of a
 5   Copyright Infringement Notice.
 6        Q    And who is it addressed to?
 7        A    It's addressed to copyright@tiktok.com.
 8        Q    And when is this e-mail dated for?
 9        A    The date on this e-mail reads as
10   October 20th, 2023.
11        Q    When was the e-mail received by TikTok?
12        A    I don't know.
13        Q    When was it viewed by TikTok?
14        A    I don't know.
15        Q    And was this content removed?
16        A    Based on what's in front of me, I can't
17   make that judgment.
18             MR. ALEJANDRINO:  I'm now going to show
19        you what I am marking as Plaintiff's Exhibit
20        26.
21             (Whereupon, Plaintiff's Exhibit Number 26
22        was marked for Identification.)
23   BY MR. ALEJANDRINO:
24        Q    I will scroll through this document.
25             Can you tell me what this document is?
```

CONFIDENTIAL    CONFIDENTIAL    CONFIDENTIAL

82

```
 1      A    It appears to be an e-mail copy of a
 2  Copyright Infringement Notice.
 3      Q    And to whom is it addressed to?
 4      A    It's addressed to copyright@tiktok.com.
 5      Q    When is it dated for?
 6      A    The date on the e-mail reads as
 7  December 20th, 2023.
 8      Q    And when was it received by TikTok?
 9      A    I don't know.
10      Q    When was it viewed by TikTok?
11      A    I don't know.
12      Q    Was the content listed removed?
13      A    I can't make that judgment based on what's
14  in front of me.
15           MR. ALEJANDRINO:  I'm going to show you
16      what I'm marking as Plaintiff's Exhibit 27.
17           (Whereupon, Plaintiff's Exhibit Number 27
18      was marked for Identification.)
19  BY MR. ALEJANDRINO:
20      Q    I will scroll through this document as
21  well.
22           Can you tell me what this document is?
23      A    It appears to be an e-mail copy of a
24  Copyright Infringement Notice.
25      Q    And who is it e-mailed to?
```

CONFIDENTIAL    CONFIDENTIAL    CONFIDENTIAL
83

1        A     The e-mail it was sent to is

2   copyright@tiktok.com.

3        Q     And what date is listed on this e-mail?

4        A     The date reads as November 27th, 2023.

5        Q     When did TikTok receive this e-mail?

6        A     I don't know.

7        Q     When did TikTok view it?

8        A     I don't know.

9        Q     And was the content listed removed?

10       A     Based on what's in front of me, I can't

11   make that judgment call.

12       Q     I'm going to go ahead and stop sharing my

13   screen.  That is all for those.

14             I'm now going to go back to the

15   monetization and Creator Program that we discussed

16   earlier.

17             I know you had testified that some of the

18   users at issue in this case are part of the Creator

19   Program, correct?

20       A     Yes.

21       Q     I want to go ahead and go through the

22   users to see which of those are admitted into the

23   Creator Program.

24             So the first user is bellamy227.  Do you

25   know if TikTok has an agreement to admit that user

CONFIDENTIAL   CONFIDENTIAL   CONFIDENTIAL
93

1      Q    So aside from that assumption, do you have

2   any evidence supporting the argument that plaintiff

3   does not own these works?

4      A    I think it's a valid concern because the

5   person who takes the photo is the one who has the

6   copyright ownership.  However, the one who hires for

7   work then owns that piece of material.  So I think

8   any supportive documentation to show for either case

9   would help make that assessment.

10     Q    But do you have any evidence showing that

11  it's not owned by the plaintiff in this case?

12     A    I don't have evidence.

13     Q    I want to go up to number 5.  Can you read

14  that for me?

15     A    Yes.

16          "Plaintiff's claims are barred, in whole

17  or in part, because of any alleged infringement by

18  defendant or defendant's users constituents --"

19  Wait.  Did I say that right?  Sorry.

20     Q    Constitutes.

21     A    Oh, my gosh.  My apologies.

22          "-- constitutes fair use under 17 U.S.C."

23  I don't know how to pronounce that symbol -- "107."

24     Q    What is TikTok's basis for the

25  determination of the fair use argument?

CONFIDENTIAL    CONFIDENTIAL    CONFIDENTIAL

94

```
1              MR. KEYES:  Objection, calls for a legal
2       conclusion.
3              Go ahead and answer, Ms. Boutros, if you
4       can.
5       A    Do you mind repeating the question?
6   BY MR. ALEJANDRINO:
7       Q    What is TikTok's basis for asserting fair
8   use?
9              MR. KEYES:  Same objection.
10      A    So TikTok's assessment is based on what is
11  within the DMCA, Digital Millennium Copyright Act.
12             The fair use is the word "declaration" or
13  "outline" in there is what TikTok leans on.
14      Q    What specifically is TikTok leaning on?
15      A    Within fair use, it's my understanding
16  that there's four criterias for the work to be
17  considered for that.
18      Q    And TikTok feels that some of these
19  content that were left up fall into that category?
20      A    Well, legal made that assessment.
21      Q    Understood.
22             I am now going to go to 11.  If you can
23  read that one for me as well.
24      A    "Plaintiff's claims are barred, in whole
25  or in part, because defendant did not and does not
```

CONFIDENTIAL     CONFIDENTIAL     CONFIDENTIAL
98

1    more monetary gain is met, and I don't think that's

2    an accurate statement to be making.

3         Q     So what determines the monetary gain by

4    TikTok?

5              MR. KEYES:   Objection, asked and answered.

6              But go ahead and answer again if you can,

7         Ms. Boutros.

8         A     To the best of my ability, knowing how

9    TikTok generates money, it's through advertisements

10   or partnership brand deals, and maybe through

11   e-commerce channels likes TikTok Shop.

12   BY MR. ALEJANDRINO:

13        Q     When you say "advertisements," where are

14   these advertisements located?

15        A     So advertisements, they typically have a

16   sticker in the video where it says "sponsored" or

17   "promoted content."

18        Q     And so if the content is sponsored, does

19   that directly correlate to the Creator Program?

20        A     I don't think so.

21        Q     So how does TikTok determine when to

22   sponsor content?

23        A     I don't have the answer to that.

24              And to be clear, TikTok doesn't sponsor

25   content on their own merit.  The user who wants to

CONFIDENTIAL    CONFIDENTIAL    CONFIDENTIAL

111

1       A     "Identify all employees or persons
2    involved in reviewing the DMCA takedown notices and
3    any subsequent responsive actions taken therein."
4       Q    And if you want to read the portion of the
5    answer starting with "subject to"?
6       A     Sure.
7             "Subject to and without waiving the
8    foregoing objections, defendant incorporates its
9    objections and response to interrogatory number 12
10   and adds that its counsel has reviewed the allegedly
11   infringing uses of the work.  No subsequent
12   responsive actions have been taken because the
13   allegedly infringing uses of the work qualify as
14   fair use."
15      Q    And what does a fair classification mean?
16      A    A fair of a classification mean?
17      Q    What does a fair classification mean or
18   qualification?
19      A    Did I read that on the document, a fair
20   qualification?
21      Q    It qualifies as fair use.
22      A    So the question is:  How does this qualify
23   as fair use?
24      Q    Yes.
25            MR. KEYES:  Objection, asked and answered.

CONFIDENTIAL    CONFIDENTIAL    CONFIDENTIAL

112



1    BY MR. ALEJANDRINO:

2         Q    You can answer the question.

3         A    Well, my understanding is that legal made

4    the assessment for fair use.

18              MR. ALEJANDRINO:  I think this is a good

19        place to take a break.  I'm just going to

20        review my notes, see if I have anymore

21        additional questions.

22              We can go off record.

23              (Recess from 5:20 p.m. EST to 5:34 p.m.

24        EST.)

25

CONFIDENTIAL   CONFIDENTIAL   CONFIDENTIAL

124

CONFIDENTIAL   CONFIDENTIAL   CONFIDENTIAL

125

CONFIDENTIAL    CONFIDENTIAL    CONFIDENTIAL

126



12        Q    We did go through all the takedown notices

13   and the exhibits that were sent to TikTok.

14             Just to clarify, your testimony is that

15   you did not know when any of those notices were

16   actually received or reviewed?

17        A    Correct.

18        Q    And you also don't know if the images

19   themselves were removed?

20        A    I know there were a number of images.  I

21   also know that there were some videos that weren't

22   removed.

23        Q    Do you know the specific content that was

24   removed?

25        A    Not off the top of my head.

CONFIDENTIAL   CONFIDENTIAL   CONFIDENTIAL

127

```
 1        Q    And the ones that were not removed and
 2   remained up, you don't know why they were determined
 3   to be fair use or an exception to the copyright
 4   infringement?
 5             MR. KEYES:  Objection, asked and answered.
 6        Mischaracterizes prior testimony, too.
 7             But go head and answer if you can.
 8        A    Yeah, legal made that assessment.
 9   BY MR. ALEJANDRINO:
10        Q    Would you say that knowing when a takedown
11   notice was received and reviewed would be important
12   information to know?
13        A    It is information that should be included
14   in a report, yes.
15        Q    Do you know why you were designated as
16   TikTok's 30(b)(6) corporate representative?
17        A    Yes.
18        Q    Why is that?
19        A    I'm someone who oversees and is in
20   operations, so I would be able to speak to the
21   details of our operations.
22        Q    Along those lines, what exactly is your
23   scope at TikTok?
24        A    My scope includes reviewing notice and
25   takedown reports themselves.  I also do risk
```

**EXHIBIT "B"**

```
 1          Q.  All right.  Does Michael Grecco Productions
 2    have any employees?
 3          A.  Subcontractors.
 4          Q.  Okay.  So by "subcontractors," I take it
 5    you mean independent contractors?
 6          A.  Correct.
 7          Q.  And how are your subcontractors compensated
 8    for the work they do with Michael Grecco
 9    Productions?
10          A.  With U.S. dollars.
11          Q.  Okay.  I take it you then would provide
12    them with a W-9 at the end of the year?  How does
13    that work?
14          A.  A 1099.
15          Q.  A 1099.  Thank you.  Yes.
16              Okay.  So let's go back to Exhibit 2, if
17    you would, sir.
18          A.  Okay.
19          Q.  You see there are 26 topics here listed
20    here; right?
21          A.  Let me open it up.
22              Yes.
23          Q.  Are there any topics on this list that you
24    are not prepared to talk about today?
25          A.  I'm going to answer every question to the
```

1    compensated through a return of officer loans.

2        Q.  Okay.  At any point did you personally,

3    Michael Grecco, have a written employment agreement

4    with Michael Grecco Photography, Inc.?

5        A.  Whatever agreement I have is in my

6    operating agreement.

7        Q.  Okay.  So you understand, an operating

8    agreement, that's not an employee agreement; right?

9        A.  I believe it might stipulate my role in the

10   company and copyrights and things like that,

11   so . . .

12       Q.  Okay.  Has that operating agreement been

13   produced in this case?

14       A.  I'm not sure.  I don't have the -- all the

15   entire --

16       Q.  Okay.

17       A.  -- document request.  But again, I'm happy

18   to produce it.

19       Q.  Okay.  I appreciate that.  Thank you.

20       A.  Sure.

21       Q.  Why did you change -- or why did you form

22   Michael Grecco Photography, Inc.?

23       A.  For a combination of -- for a combination

24   of liability and tax reasons.

25       Q.  All right.  Now, for images created after

1  net.  The gross received by the company.

2      Q.  So when you testified earlier that nobody

3  other than your law firm has a financial stake in

4  the outcome of this matter, that was incorrect,

5  wasn't it?

6          MR. ALEJANDRINO:  Object to form.

7          THE WITNESS:  I don't think I -- I don't

8  think I testified to that.  No one has a -- this is

9  a commission that I agree to pay a subcontractor for

10  work she's done.

11  BY MR. KEYES:

12      Q.  Yeah, but she only gets paid --

13      A.  You could say my wife has a stake in it

14  too, but it's the company's case, and --

15      Q.  But Torina only gets paid for her efforts

16  in finding these alleged infringements if you

17  ultimately get paid in the case; right?

18      A.  That's true.

19      Q.  All right.  And so is it your position that

20  she doesn't have a financial stake in the outcome of

21  this litigation?

22      A.  Looking at this report and seeing that

23  she's found some of these, which I wasn't aware of

24  earlier, no, that's not my testimony.  It looks like

25  she found some of these herself.

1    who captured these screenshots in Exhibit 21?

2        A.   One of our workers.   You would have to ask

3    Ms. Waterman.

4        Q.   Okay.   Now, this very first one on the very

5    first page of Exhibit 21, there is a video posted by

6    bellamy227.

7            Do you see that?

8        A.   I do.

9        Q.   And it appears that it was posted on 10/30,

10   October 30th of 2022?

11           Do you see that?

12       A.   I do.

13       Q.   And the Xena image shown here on this

14   screen capture, that's one of your images; right?

15       A.   It is.

16       Q.   It's actually the first photograph, isn't

17   it?

18       A.   It is.

19       Q.   Did you personally review this video before

20   sending a takedown notice?

21       A.   They send me all the cases to approve.

22   Routinely if it's a social media use and there's no

23   attribution to me and no hotlink to me -- and I

24   don't have a TikTok account so you couldn't hotlink

25   to me.

1           But if it was Instagram and you hotlinked

2     to me and, you know, you put my handle there, we

3     wouldn't be sending a takedown notice.  We would

4     consider that publicity and marketing.

5           For TikTok, since I don't have an account,

6     they -- it's just automated that, if there's no

7     license, that they send a takedown notice.

8        **Q.  So my question was, did you view -- you**

9     **personally, Mr. Grecco, did you view this video --**

10       A.  Well, I answered you in a bit of a more

11    informative way.  No, because I don't have a TikTok

12    account, and they don't have the ability to tag me

13    or promote my own channel, so they have carte

14    blanche to send take down notices.

15       **Q.  Okay.  So is it fair to say that, with**

16    **respect to all of the videos, the alleged infringing**

17    **videos involved in this suit, that you did not**

18    **review them before your company issued takedown**

19    **notices?**

20       A.  I --

21           MR. ALEJANDRINO:  Object to form.

22           THE WITNESS:  I think I -- I think I looked

23    at some of them and was sort of flabbergasted at how

24    much stuff was on TikTok that was mine without a

25    license.

```
 1           So I believe I looked at it.  I did not
 2    look at every one, and I did not approve every one.
 3    BY MR. KEYES:
 4        Q.  Okay.  But with respect to this very first
 5    video that involves your first photograph, did you
 6    look at this one before you --
 7        A.  I don't -- I don't -- I don't recall which
 8    ones I looked at and which ones I didn't.
 9        Q.  Let me finish my question, please, sir, and
10    then I'll let you answer.
11           So do you know if you looked at this very
12    first video before your company issued a takedown
13    notice?
14        A.  I do not remember if I looked at this one
15    in particular.
16        Q.  Who made the determination that it was
17    infringing?
18        A.  Sans license and sans being tagged, it's
19    infringing so that's my rule.  That's what I'm
20    willing to do.
21           So the team looks for a license.  They look
22    to see if anyone's licensed it or if it was licensed
23    by, you know, Iconic or -- you know, what the dates
24    were, if it was potentially licensed by Getty.  And
25    if it's not, they send a takedown notice.
```

1    Q.  Did your company consider the doctrine of

2  fair use before issuing the takedown notice with

3  respect to this first video?

4    A.  No.  Tiktok's a commercial platform and

5  meets none of the four criteria of fair use.  So

6  that's a BS defense that every infringer has no

7  defense uses and we hear every day.  That's like --

8  we call it the FU defense for a reason.

9    Q.  So is it fair to say, then, sir, that

10  before your company issued any of the takedown

11  notices in this case, that you didn't consider

12  whether -- you didn't consider fair use?

13           MR. ALEJANDRINO:  Object to form.

14           THE WITNESS:  I still don't consider fair

15  use.  There's no fair use defense here on a

16  commercial platform.

17  BY MR. KEYES:

18    Q.  And are you aware of any case that stands

19  for that proposition?

20    A.  Yeah.  We win -- we win fair use cases all

21  the time on summary judgment.  Everyone uses the

22  fair use defense.

23    Q.  But you just made the definitive statement,

24  sir, that there's no such fair use on a commercial

25  platform like TikTok, and I'm asking if you're aware

```
 1   of any legal authority.
 2           Or is that just Michael Grecco on
 3   copyright?
 4           MR. ALEJANDRINO:  Object to form.
 5           THE WITNESS:  That's the experience --
 6           MR. ALEJANDRINO:  I do want to clarify,
 7   Mr. Keyes, are we -- because you keep saying Michael
 8   and you.  And I know this is, like, a 30(b)(6) as
 9   well as Mr. Grecco's personal deposition.
10           MR. KEYES:  Yeah.
11           MR. ALEJANDRINO:  Are these questions
12   directly at Michael Grecco or Michael Grecco
13   Productions, Inc.?
14           MR. KEYES:  Well, I asked specifically
15   whether his company considered fair use before
16   issuing any of these takedown notices.
17   BY MR. KEYES:
18       Q.  And my understanding, Mr. Grecco, is that
19   you said no.
20       A.  Well, I -- look.  We always consider fair
21   use.  If I see something used in an educational
22   informational site, you know, for educational
23   purposes with a not-for-profit company, I won't
24   approve that case.  If I see -- you know, if I see
25   someone criticizing or critiquing one of my works,
```

1    then it's obviously protected by the first

2    amendment, and it's fair use.

3            If I see something that's truly

4    transformative, then we would consider fair use.

5            But that's not the case here with TikTok.

6    There's -- there's no criteria that I see from my 40

7    years of experience handling -- 30-some-odd years of

8    experience handling my copyright cases that relates

9    to fair use here.

10           So no, we didn't consider it for the

11   entirety of the platform because there's no fair use

12   defense here from my perspective.

13   BY MR. KEYES:

14       **Q.  And did you seek legal counsel with respect**

15   **to fair use in this case?**

16       A.  Yes.  Legal counsel wouldn't have taken

17   this case if they really thought it was fair use.

18   And they know it's a BS defense that everyone who

19   has no defense uses, so . . .

20       **Q.  You mentioned the phrase a few moments ago**

21   **"truly transformative."**

22           **Remember that testimony?**

23       A.  Yes.

24       **Q.  What makes a use of content truly**

25   **transformative in your judgment, sir?**

1      A.  No.  I don't see how that pertains to

2   anything in the world here.

3      **Q.  You don't know why they joined TikTok, do**

4   **you?**

5      A.  No.

6      **Q.  Or when they joined TikTok for that matter?**

7      A.  No.  But again, they -- they joined for

8   whatever reason, but they come to get entertained,

9   and they're being entertained by my work that was

10  stolen and not taken down by TikTok.

11      TikTok has refused to take it down.  I keep

12  telling you.  Go to page 15 and -- go to page 15 and

13  see.  That video is still up.

14      **Q.  So you would agree with me that you have no**

15  **facts to show that any of these 6,000 users were**

16  **drawn to the TikTok platform because of this video**

17  **that appears on Exhibit 21; right?**

18      A.  Well, I think that --

19      MR. ALEJANDRINO:  Object to form.

20      THE WITNESS:  No, I don't.  But again, I

21  think that would be pertinent if we were asking for

22  actual damages.

23      We're not asking for actual damages.  We're

24  asking for statutory damages, I believe.  I'm going

25  to defer to my attorney on that, though.

1      Q.  Oh.  So there's editorial licenses that can
2  be purchased?
3      A.  Yes.
4      Q.  Oh.  Print advertising?
5      A.  Yes.
6      Q.  How about digital advertising?
7      A.  Is there any other kind these days?  I
8  mean, there's hardly any magazines.  If you're
9  asking for commercial use, we specify what the
10 platform is, so yes.
11     Q.  And do you have a set license agreement
12 that you would provide to licensees that purchase
13 photos through this website?
14     A.  It would be the usage terms that we supply
15 in the invoice.
16     Q.  How does a customer get a license through
17 this website?
18     A.  Again, the website is kind of clunky, and
19 they usually reach out to us directly to negotiate
20 it.  But there is a cart, and you could put in the
21 information, and you could do it in an automated
22 fashion.
23         But most of people reach out to us, send us
24 an email, and we negotiate a deal.
25     Q.  Okay.  Is there a way to do image searches

1    through this website?

2        A.  By text.  Not --

3        Q.  Just by text?

4        A.  Correct.

5        Q.  Okay.  Is this website, is it operated by

6    your company?

7        A.  No.

8        Q.  Who operates it?

9        A.  A company called PhotoShelter out of

10   New York.

11       Q.  And who is PhotoShelter?

12       A.  They're a company that provides websites

13   for corporations and photographers.

14       Q.  PhotoShelter.  So they're hosting the site?

15       A.  Correct.

16       Q.  Okay.  But in terms of the revenue that's

17   generated through mgpstockphotos.com, that revenue

18   goes to your company; right?

19       A.  If they call me to negotiate it, it goes

20   100 percent to us.  If they happen to use the

21   cart -- and I don't think anyone has in the past --

22   I think PhotoShelter gets a small percentage.  20

23   percent.  Something like that.

24       Q.  On an annual basis, how much revenue does

25   Michael Grecco Productions generate through

Confidential

Michael Grecco                                    Michael Grecco Productions, Inc. vs.
                                                                    TikTok, Inc.

1   licensing photographs on mgpstockphotos.com?

2        A.  It depends on the year.  I mean, anywhere

3   between -- I mean, we're working on a deal with a

4   condominium complex in Miami which is going to be

5   worth $150,000.  But anywhere, you know, 20,000,

6   30,000 in licensing.

7        Q.  So let's just take the most recent year,

8   the complete year.

9            Are you on a -- in terms of how you run

10  your operation, are you on a calendar year?

11       A.  Cash basis calendar year, yes.

12       Q.  So for the calendar year 2024, how much

13  licensing revenue did you generate through

14  mgpstockphotos.com approximately?

15       A.  I don't know.  People -- people reach out

16  to us to license.  I don't necessarily know.  If

17  they've seen the picture there, they've seen it on

18  my website, they saw it on the Days of Punk website.

19  I'm not sure.  There's -- we don't keep records of

20  who has found it on PhotoShelter.

21       Q.  Okay.  Fair enough.  But in terms of you

22  did mention that people can actually go on to that

23  website and add photos to a cart.

24       A.  People can license through the platform;

25  correct.

Michael Grecco                                    Michael Grecco Productions, Inc. vs.
                                                                    TikTok, Inc.

1      Q.  Right.  So I'm referring specifically to

2   the revenue generated through -- by people that got

3   on the platform and licensed works?

4      A.  Zero.

5      Q.  Zero for 2024?

6      A.  Yeah.  But that -- again, no one uses --

7   the cart, usually they want to have a confirmation

8   of a specific license, they want to give us the

9   details, the print run, the record cover run, the da

10  da da da da da da, you know, the space, how big it's

11  being used, da da da, and we usually negotiate that.

12     Q.  Okay.  So for 2023, same answer?  Zero in

13  terms of the amount of revenue generated by somebody

14  getting on to MGP Stock Photos and purchasing a

15  license?

16     A.  Using their cart; that is correct.

17     Q.  Okay.

18     A.  How much revenue we got because they were

19  posted there and they contacted us, it is not

20  correct.  It is not 0.

21         But using the cart, I will in a limited

22  fashion say you're correct.

23     Q.  Would it be the same answer for 2022?

24     A.  Yep.

25     Q.  Same answer for 2021?

Confidential        Michael Grecco Productions, Inc. vs.
                                                                    TikTok, Inc.

1        A.   Yeah.   I -- there was one instance where

2   someone bought a print using the cart, and I think

3   that in the entire history of us using that

4   PhotoShelter site, that was the only time someone

5   used the cart.

6        Q.   Okay.

7        A.   Amanda Beard's husband bought her a print,

8   the Olympian, of when I shot her, so . . .

9             MR. KEYES:   Exhibit 24, please.

10            (Exhibit 24, 10/12/94 Stock Invoice,

11   GRECCO_000608-GRECCO_000607, marked for

12   identification.)

13            THE WITNESS:   Okay.

14   BY MR. KEYES:

15        Q.   Do you recognize this document?

16        A.   I do.

17        Q.   And what is it?

18        A.   It's an invoice.

19        Q.   Who is Delphi Internet?

20        A.   It was an Internet service provider back in

21   the day.

22        Q.   Okay.   And this is one of those invoices

23   that you drafted; right?

24        A.   Well, I drafted it to Maggie, yeah.   I

25   drafted it to Maggie, and I think she did the

1   commercial platform.  I mean, we -- we look at fair

2   use in a serious manner when -- in class lessons.

3   We might consider it for a not-for-profit.  We might

4   consider it when there's actual criticism or satire

5   for the image itself, not to use the image for

6   satire.

7           So we do view these things pretty

8   carefully.  I'm familiar with the four tests of fair

9   use, and we never felt that that qualified for any

10  of it.

11      **Q.  So is it fair to say that, when you are**

12  **considering enforcing your copyrights, fair use is**

13  **one of those considerations?**

14          MR. KEYES:  Objection.  Leading.

15          THE WITNESS:  Yes.  I mean, we don't --

16  look.  We don't pursue cases that are -- that are

17  not good cases.  And if it clearly looks like a case

18  of fair use, we don't bother.  We have too many

19  sightings for too many different cases to focus on

20  things that were -- that are not going to be

21  successful, so . . .

22  BY MR. ALEJANDRINO:

23      **Q.  Is that one of the steps that's taken when**

24  **sending out a DMCA takedown notice?**

25      A.  Well, I approve all cases.  And I'll do

**EXHIBIT "C"**

## COMPUTATION OF DAMAGES

Plaintiff seeks either actual damages/disgorgement of Defendant's profits or statutory damages in this lawsuit.  Defendant's profits are currently unknown (as discovery is pending).    Plaintiff will make an election of actual damages/disgorgement or statutory damages at the appropriate time.   Because Plaintiff licenses its work on an annual basis, Plaintiff would calculate its actual damages by multiplying the license it would have charged by the number of years the photographs were published.   Plaintiff needs further discovery of Defendant's usage to determine the license that would have been charged.

## INSURANCE AGREEMENTS

Plaintiff is not aware of any insurance agreement relevant to the claims asserted in this lawsuit.


Dated: April 15, 2025.                **COPYCAT LEGAL PLLC**


By: /s/ Lauren M. Hausman
Lauren M. Hausman, Esq.
Jonathan Alejandrino, Esq. *(pro hac vice)*
Attorneys for Plaintiff
Michael Grecco Productions, Inc.

**EXHIBIT "D"**

**RESPONSE:** Plaintiff objects to this request as not relevant to the claims or defenses at issue in this lawsuit. The identity and/or existence of other infringers has no bearing on whether Defendant committed infringement or any of the actual defenses asserted by Defendant.

18.     Documents sufficient to Identify all legal proceedings relating to one or more of the Works or one or more Copyrights for the Works, including without limitation all federal court actions and all copyright claims board proceedings.

**RESPONSE:** Plaintiff objects to this request as not relevant to the claims or defenses at issue in this lawsuit. The identity and/or existence of other infringers has no bearing on whether Defendant committed infringement or any of the actual defenses asserted by Defendant.

19.     All Communications that Plaintiff has sent to any third party relating to the unauthorized use of one or more of the Works, including without limitation all demand letters, cease and desist letters, emails, and DMCA takedown notices.

**RESPONSE:** Plaintiff objects to this request as not relevant to the claims or defenses at issue in this lawsuit. The identity and/or existence of other infringers has no bearing on whether Defendant committed infringement or any of the actual defenses asserted by Defendant.

20.     All Communications between Plaintiff and any third party relating to the unauthorized use of one or more of the Works.

**RESPONSE:** Plaintiff objects to this request as not relevant to the claims or defenses at issue in this lawsuit. The identity and/or existence of other infringers has no bearing on whether Defendant committed infringement or any of the actual defenses asserted by Defendant.

21.    Documents sufficient to identify all third parties who Plaintiff has authorized to use one or more of the Works.

**RESPONSE:** Documents sufficient to this request are being produced contemporaneously herewith.

22.    Copies of all DMCA takedown notices that Plaintiff sent to Defendant relating to the Works, the Copyrights for the Works, or the TikTok users identified in Exhibit N to the Complaint.

**RESPONSE:** Documents responsive to this request are being produced contemporaneously herewith.

23.    All Documents relating Plaintiff's decision to send DMCA takedown notices to Defendant relating to the Works, the Copyrights for the Works, or the TikTok users identified in Exhibit N to the Complaint.

**RESPONSE:** Documents responsive to this request are being produced contemporaneously herewith.

**AMENDED RESPONSE**: Plaintiff does not have responsive documents to this request in its possession, custody, or control.

**EXHIBIT "E"**

Interrogatory as overly broad, unduly burdensome, disproportionate to the needs of this case, and as seeking information irrelevant to any claims or defenses in this case to the extent it seeks information relating to "any other social media page or website controlled by Defendant." Defendant objects to this Interrogatory to the extent it characterizes TikTok as a social media platform, which it is not.

Subject to and without waiving the foregoing objections, each of the allegedly infringing videos identified by Plaintiff in the Second Amended Complaint were posted to TikTok by third-party users. Defendant does not know the identities of persons who participated in the upload of such videos because Defendant does not collect that information in the regular course of business. The dates on which the allegedly infringing videos were posted to TikTok are shown in the screenshots attached as Exhibit N to the Second Amended Complaint.

**INTERROGATORY NO. 4**:

Describe the relationship (if any) between Defendant and the person purportedly responsible for uploading to and/or causing each photograph comprising the Work to be displayed on the Platform, and/or any other social media page or website controlled by Defendant.

**ANSWER:** Defendant incorporates each of the General Objections herein. Defendant objects to this Interrogatory as overly broad, unduly burdensome, disproportionate to the needs of this case, and as seeking information irrelevant to any claims or defenses in this case to the extent it seeks information relating to "any other social media page or website controlled by Defendant." Defendant objects to this Interrogatory to the extent it characterizes TikTok as a social media platform, which it is not.

Subject to and without waiving the foregoing objections, the allegedly infringing videos were posted to TikTok by third-party TikTok users. Use of TikTok

is subject to TikTok's Terms of Service, Intellectual Property Policy, and Community Guidelines.

**INTERROGATORY NO. 5**:

What are the terms of any agreement between Defendant and the person purportedly responsible for uploading to and/or causing each photograph comprising the Work to be displayed on the Platform, and/or any other social media page or website.

**ANSWER:** Defendant incorporates each of the General Objections herein. Defendant objects to this Interrogatory as overly broad, unduly burdensome, disproportionate to the needs of this case, and as seeking information irrelevant to any claims or defenses in this case to the extent it seeks information relating to "any other social media page or website controlled by Defendant." Defendant objects to this Interrogatory to the extent it characterizes TikTok as a social media platform, which it is not.

Subject to and without waiving the foregoing objections, the allegedly infringing videos were posted to TikTok by third-party TikTok users. Use of TikTok is subject to TikTok's Terms of Service, Intellectual Property Policy, and Community Guidelines.

**INTERROGATORY NO. 6**:

Do you contend that Defendant or any of its users was authorized and/or licensed to publish or display any of the photographs comprising the Work on the Platform, and/or any other social media page or website controlled by Defendant? If yes, describe in detail the factual basis for such contention.

**ANSWER:** Defendant incorporates each of the General Objections herein. Defendant objects to this Interrogatory to the extent it seeks information that is not in Defendant's possession, custody or control. Defendant objects to this Interrogatory as overly broad, unduly burdensome, disproportionate to the needs of