DORSEY & WHITNEY LLP
J. Michael Keyes (SBN 262281)
  keyes.mike@dorsey.com
Connor J. Hansen (*pro hac vice*)
  hansen.connor@dorsey.com
Dylan J. Harlow (*pro hac vice*)
  harlow.dylan@dorsey.com
701 Fifth Avenue, Suite 6100
Seattle, WA 98104
Telephone: 206.903.8800
Facsimile: 206.903.8820

DORSEY & WHITNEY LLP
Kent J. Schmidt (SBN 195969)
  schmidt.kent@dorsey.com
600 Anton Boulevard, Suite 200
Costa Mesa, CA 92626
Telephone: 714.800.1400
Facsimile: 714.800.1499

REDACTED

*Attorneys for Defendant TikTok, Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL GRECCO PRODUCTIONS INC., *Plaintiff*, v. TIKTOK, INC., *Defendant*. | Case No. 2:24-CV-04837-FLA-MAR **DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** Hon. Fernando L. Aenlle-Rocha Date: September 26, 2025 Time: 1:30pm Courtroom: 6B Filed concurrently with: (1) Statement of Genuine Disputes of Material Fact; (2) Statement of Additional Uncontroverted Facts; (3) Declaration of Jemili Boutros; (4) Declaration of J. Michael Keyes; and (5) [Proposed] Order. |

1

# **TABLE OF CONTENTS**

2   I.     INTRODUCTION .......................................................................... 1

3   II.    STATEMENT OF FACTS ............................................................ 1

4          A.    Plaintiff and the Asserted Works ....................................... 1

5          B.    The Alleged Infringement by TikTok Users ....................... 3

6                1.    User Thumbnails ...................................................... 3

7                2.    User Videos .............................................................. 4

8          C.    Plaintiff's Flawed Takedown Notices ................................ 7

9          D.    ████████████████████████████████████
                 ████████████████████████ ............................ 8

10

11  III.   LEGAL STANDARD ................................................................... 8

12  IV.    ARGUMENT ............................................................................... 9

13         A.    There are Material Disputes of Fact Relating to Plaintiff's
                 Ownership f and Rights In the Asserted Works ................ 10

14         B.    The User's Videos and Thumbnail Images are Fair Use and
15               There is No Direct Infringement ...................................... 12

16               1.    The Short Videos and Thumbnails Are Transformative,
                       Non-Commercial Uses ........................................... 12

17               2.    The Asserted Works Were Previously Published And Are
18                     Minimally Creative ................................................ 16

19               3.    The Users Used Portions of The Asserted Works
                       Necessary for Their Transformative Purposes ........ 17

20               4.    The Alleged Infringements Have No Effect on Plaintiff's
21                     Market ..................................................................... 17

22         C.    Plaintiff's Takedown Notices Are Ineffective to Trigger the
                 DMCA's Expeditious Removal Requirement or to Put TTI on
23               Notice of Infringement ..................................................... 19

24  V.     CONCLUSION ......................................................................... 21

25

26

27

28

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT          Case No. 2:24-CV-04837-FLA-MAR

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*A&M Records v. Napster, Inc.*,
   239 F.3d 1004 (9th Cir. 2001) ................................................................ 9

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ........................................................................... 9

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
   598 U.S. 508 (2023) ...................................................................... 12, 13

*Aquarian Found., Inc. v. Lowndes*,
   127 F.4th 814 (9th Cir. 2023) ............................................................ 10

*Barlow v. Ground*,
   943 F.2d 1132 (9th Cir. 1991) ........................................................... 8

*Bartz v. PBC*,
   No. C 24-05417 WHA, 2025 U.S. Dist. LEXIS 118989 (N.D. Cal.
   June 23, 2025) ..................................................................................... 13

*Calkins v. Playboy Enters. Int'l, Inc.*,
   561 F. Supp. 2d 1136 (E.D. Cal. 2008) ............................................ 15

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994) ...................................................................... 12, 13

*Cleveland v. Policy Mgmt. Sys. Corp.*,
   526 U.S. 795 (1999) ........................................................................... 20

*Edge Sys. LLC v. Ageless Serums LLC*,
   No. 2:20-cv-09669-FLA, 2023 U.S. Dist. LEXIS 53267 (C.D. Cal.
   Mar. 28, 2023) ...................................................................................... 8

*Ellison v. Robertson*,
   357 F.3d 1072 (9th Cir. 2004) ........................................................... 20

*Golden v. Michael Grecco Prods.*,
   524 F. Supp. 3d 52 (E.D.N.Y. 2021) .................................................. 2

*Hannley v. Mann*,
   No. 2:21-cv-02043-JLS, 2023 U.S. Dist. LEXIS 40022
   (C.D. Cal. Mar. 8, 2023) ................................................................... 14

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT    Case No. 2:24-CV-04837-FLA-MAR

*Harper & Row Publishers, Inc. v. Nation Enters.*,
471 U.S. 539 (1985) ............................................................... 13, 16

*Hollingsworth Solderless Terminal Co. v. Turley*,
622 F.2d 1324 (9th Cir. 1980) ...................................................... 9

*Kelly v. Arriba Soft Corp.*,
336 F.3d 811 (9th Cir. 2003) ........................................... 13, 14, 16, 17

*Lenz v. Universal Music Corp.*,
815 F.3d 1145 (9th Cir. 2016) ..................................................... 19

*Magnum Photos Int'l, Inc. v. Houk Gallery, Inc.*,
No. 16-CV-7030 (VSB), 2018 U.S. Dist. LEXIS 162357
(S.D.N.Y. Sep. 21, 2018).......................................................... 14

*Michael Grecco Photo., Inc. v. Everett Collection, Inc.*,
589 F. Supp. 2d 375 (S.D.N.Y. 2008) .......................................... 10, 11

*Michael Grecco Prods. v. Livingly Media*,
No. CV 20-0151 DSF, 2021 U.S. Dist. LEXIS 117652
(C.D. Cal. Apr. 16, 2021) ...................................................... 15, 16

*Michael Grecco Prods. v. Valuewalk LLC*,
345 F. Supp. 3d 482 (S.D.N.Y. 2018) .............................................. 16

*Monge v. Maya Magazines, Inc.*,
688 F.3d 1164 (9th Cir. 2012)...................................................... 16

*Omnia Studios, LLC v. JD E-Commerce Am. Ltd.*,
No. 23-CV-6186-FPG-CDH, 2025 U.S. Dist. LEXIS 61199
(W.D.N.Y. Mar. 31, 2025) ......................................................... 20

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007)...................................................... 14

*Perfect 10, Inc. v. Visa Int'l Serv., Ass'n*,
494 F.3d 788 (9th Cir. 2007) ........................................................ 9

*Perfect 10, Inc. v. Yandex N.V.*,
962 F. Supp. 2d 1146 (N.D. Cal. 2013) ............................................ 14

*Religious Tech. Ctr. v. NetCom On-Line Comm. Servs.*,
907 F. Supp. 1361 (N.D. Cal. 1995).............................................. 19

*Sedlik v. Drachenberg*,
No. CV 21-1102 DSF, 2023 U.S. Dist. LEXIS 183184
(C.D. Cal. Oct. 10, 2023) ....................................................................... 12

*Seltzer v. Green Day, Inc.*,
725 F.3d 1170 (9th Cir. 2013) ........................................... 15, 17, 18, 19

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*,
809 F.2d 626 (9th Cir. 1987) ................................................................... 9

*UMG Recordings, Inc. v. Shelter Capital Partners Ltd. Liab. Co.*,
718 F.3d 1006 (9th Cir. 2013) ............................................................... 20

*Ventura Content, Ltd. v. Motherless, Inc.*,
885 F.3d 597 (9th Cir. 2018) ........................................................... 19, 20

*VHT, Inc. v. Zillow Group, Inc.*,
918 F.3d 723 (9th Cir. 2019) ................................................................... 9

*Von Der Au v. Michael G. Imber, Architect, PLLC*,
No. SA-20-CV-00360-XR, 2021 U.S. Dist. LEXIS 55298
(W.D. Tex. Mar. 24, 2021) ..................................................................... 14

**Statutes**

17 U.S.C. § 106 .............................................................................. 9, 11

17 U.S.C. § 107 ....................................................................... 9, 12, 17

17 U.S.C. § 512(c) ............................................................................ 19

## I.     <u>INTRODUCTION</u>

Plaintiff's Motion for Partial Summary Judgment (the "Motion") (Dkt. 68) is loaded with factual disputes and must be denied.   Plaintiff Michael Grecco Productions, Inc. ("Plaintiff" or "MGP") claims Defendant TikTok, Inc. ("Defendant" or "TTI") is liable for contributory copyright infringement because Plaintiff sent "takedown" notices relating to infringement by a couple dozen TikTok users (the "Users") and TTI failed to expeditiously remove the infringing content.   In reality, a reasonably jury could readily find that Plaintiff does not hold rights in all of the photographs at issue and, in any event, each of the alleged acts of "infringement" is fair use.   The Court should reject the Motion for at least three reasons.

*First*, Plaintiff has failed to establish that it actually owns the copyright to several of the photographs at issue.   Rather, the record shows that third parties, including Grecco and TV studios, own the rights Plaintiff seeks to enforce.

*Second*, all of the purportedly infringing uses are protected fair use.   Each use is either a small, low resolution thumbnail image used to identify a TikTok profile or is a photo shown for a few seconds within transformative videos.   All of the uses are highly transformative and do not supersede Plaintiff's intended use of the photos or otherwise have any effect on Plaintiff's market for the photos.

*Finally*, Grecco testified that he did not even *review* each alleged infringement before Plaintiff's takedown notices were sent, let alone consider fair use in good faith as required by law.   Plaintiff's ineffective notices therefore failed to put TTI on notice of the alleged infringement as required to impose secondary liability.

## II.     <u>STATEMENT OF FACTS</u>

### A.     **Plaintiff and the Asserted Works**

As fully set forth in Defendant's pending Motion for Summary Judgment, Dkt. 70, Plaintiff is "a litigious and opportunistic copyright holder" that relies on an army of overseas contractors to identify uses of its photographs online and extract

-1-

settlement payments from third parties on pain of litigation costs.  *Golden v. Michael Grecco Prods.*, 524 F. Supp. 3d 52, 65 (E.D.N.Y. 2021).

Plaintiff alleges it owns copyrights to 22 photographs (collectively the "Asserted Works," individually the "First" through "Twenty-Second" photographs). Dkt. 68-3 ¶¶ 9–10.  It is undisputed that Grecco was commissioned by third parties (generally, film and television studios or magazines) to capture each of the Asserted Works.  DSAUF[1] No. 103.  When commissioned by these third parties, Plaintiff routinely granted them broad rights to distribute the photographs—indeed the obvious purpose of these photographs was to publicize the underlying media.

For example, the First, Second, Eighth, Ninth, and Tenth Photographs are images of characters from the TV show *Xena: Warrior Princess*, commissioned by MCA Television Group ("MCA").  DSAUF No. 104.  An "Assignment Invoice" relating to this photoshoot provides: "Unlimited usage rights are granted to the client [MCA].  Michael Grecco retains the copyright to all photographs.  Michael Grecco also retains the right to use any photograph for personal portfolio and promotional use."  DSAUF No. 105.  The Assignment Invoice relating to the Eleventh Photograph, a photograph of the cast of the TV show *Sliders* commissioned by USA Networks, includes these same terms.  DSAUF No. 106–107.

Similarly, the Twelfth, Nineteenth, and Twentieth Photographs are images of characters from *The X-Files*, commissioned by Fox Broadcasting Company ("F.B.C." or "Fox").  DSAUF No. 108.  This Assignment Invoice provides: "F.B.C. all rights for publicity and advertising only.  Michael Grecco Photography, Inc. retains the Copyright to all photographs and the right to use any photographs for personal portfolio and promotional use."  DSAUF No. 109.

In sum, Grecco granted ostensibly unlimited licenses to MCA, USA Networks, and Fox (the "Studios") when they commissioned him to create images to publicize

---

[1] "DSAUF" refers to Defendant's Statement of Additional Uncontroverted Facts filed herewith.

their shows.   As Grecco testified in another matter, his own licensing of these photographs occurred "with the active consent or indifference of the [S]tudios." DSAUF No. 110; Keyes Decl. Exh 7 ¶ 7, *id.* ¶ 8 ("with the studio's knowledge, I had authorized many of these images to be licensed").

### B.   The Alleged Infringement by TikTok Users

TTI provides the popular TikTok entertainment platform ("TikTok") in the U.S.   DSAUF No. 82. ████████████████████████████████

████████████████████████████████████████ DSAUF Nos. 85-86.

Plaintiff alleges that 24 Users[2] have infringed the Asserted Works by using the images as thumbnail profile pics or in TikTok videos.  SGDF[3] No. 11.  None of the images were used in advertising or promotion.  DSAUF No. 260.  Instead, all of the uses reflect the individual Users' creative expression and commentary on popular culture.  A summary of the purpose and character of the uses follows.

### 1.   User Thumbnails

As shown below, five Users allegedly infringe the Sixth, Tenth, Fourteenth, Fifteenth, and Eighteenth Photographs, respectively, by using the photographs as a thumbnail image on their TikTok profiles.  DSAUF Nos. 222–239.



Dkt. 46-14 at 38, 48, 57, 65, 89.  As shown above, each photograph is cropped into

---

[2] Plaintiff initially identified 25 alleged infringements, but has now clarified that one of the uses is "not at issue in this case."  SGDF Nos. 3, 13.

[3] "SGDF" refers to Defendant's Statement of Genuine Disputes of Material Fact filed herewith.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT          Case No. 2:24-CV-04837-FLA-MAR

a circle, excluding portions of the Asserted Work, and is a small, low-resolution version of the Asserted Work. DSAUF Nos. 222–239.

### 2. User Videos

Nineteen Users are alleged to infringe the remaining Asserted Works by briefly including them in short videos they created and posted to TikTok.[4] DSAUF No. 118.

First Photograph. Users bellamy227 and filmeseseriesxz each allegedly infringe the First Photograph, a photo of characters from *Xena*. DSAUF Nos. 119, 123. The video by bellamy227 is 21 seconds long and shows the First Photograph for 2 seconds. DSAUF Nos. 120-121. This occurs as bellamy227 explains that her Halloween costume is inspired by the *Xena* character shown in the photograph. DSAUF No. 122. The video by filmeseseriesxz is 43 seconds long and shows the First Photograph for 3 seconds. DSAUF Nos. 124-125. Portuguese text is displayed over the image for the entire duration it is shown, translating to "Xena and Gabrielle were girlfriends and I can prove it." DSAUF Nos. 126-127.

Second Photograph. User gsp.xena allegedly infringes the Second Photograph, an image of *Xena*, by using it for 2 seconds within a 9 second video, explaining that the User's dog is named after *Xena*. DSAUF Nos. 128-132. Similarly, User tigresha_of.fo.zi.ell allegedly infringes the Second Photograph by using it for 2 seconds within an 8 second video. DSAUF Nos. 133-135. During those 2 seconds, foreign language text appears over the image, translating to "my role model Xena." DSAUF Nos. 136-137.

Third Photograph. User christineb_2469 allegedly infringes the Third Photograph, a photo of Andy Garcia, by using it for 1 second within an 8 second video. DSAUF Nos. 128-140. The video is a comedic video depicting two females who pretend to faint when shown different images of Mr. Garcia. DSAUF No. 141.

---

[4] Copies of available User videos are provided electronically via a CD as set forth in the Keyes Declaration and the Notice of Lodging filed herewith.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT          Case No. 2:24-CV-04837-FLA-MAR

1        <u>Fourth Photograph</u>.    User 90sgirlgroups allegedly infringes the Fourth

2    Photograph, a photo of the music group En Vogue, for 2 seconds within a 29 second

3    video.  DSAUF No. 145.  The video shows multiple images of the members of

4    En Vogue over the years, with the text "En Vogue Then vs. Now" appearing over all

5    images.  DSAUF No. 146.

6        <u>Fifth Photograph</u>.  User iam4ranny72 allegedly infringes the Fifth Photograph,

7    a photo of the band Til Tuesday, by using it for 2 seconds within a 49 second video

8    commenting on the belief that the band is a one hit wonder.  DSAUF Nos. 147–151.

9    The text "Til Tuesday One Hit Wonder" is displayed over the Fifth Photograph and

10   the video is accompanied by audio.  DSAUF No. 150–152.

11       <u>Seventh Photograph</u>.    User henrybelcaster allegedly infringes the Seventh

12   Photograph, a photo of Google founders Sergie Brin and Larry Page, by using it for

13   2 seconds within a 60 second video.  DSAUF Nos. 153–155.   In the video, the User

14   explains—via narration and text appearing over the Seventh Photograph—who

15   Mr. Brin and Mr. Page are, how they met, and how the Google company was

16   founded.  DSAUF Nos. 156–158.

17       <u>Eighth Photograph</u>.  User paulaandwinston1998 allegedly infringes the Eighth

18   Photograph, another *Xena* photo, by using a portion of the photograph for 2 seconds

19   within an 8 second video.  DSAUF Nos. 159–161.  The Eighth Photograph is cropped

20   in the video and the User added a filter or effect to make hearts come out of Xena's

21   head.  DSAUF No. 162–163.

22       <u>Ninth Photograph</u>.    User wherearetheyfilms allegedly infringes the Ninth

23   Photograph, another *Xena* photo, by using it for 2 seconds within a 14 second video.

24   DSAUF Nos. 164–165.  In the video, the Ninth Photograph includes a stylized *Xena:*

25   *Warrior Princess* logo used by MCA to promote the show, and the text "Where are

26   they now: Xena: Warrior Princess cast" and is used to provide commentary on the

27   cast of the show.  DSAUF Nos. 166–169.

28

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT    Case No. 2:24-CV-04837-FLA-MAR

Eleventh Photograph. User myndcruzer2023 allegedly infringes the Eleventh Photograph, a photo of the cast of *Sliders*, by using it for 2 seconds in a 9 second video. DSAUF Nos. 170-172. The video is accompanied by audio and includes a text box reading "Does anyone remember SLIDERS?." DSAUF Nos. 173-174.

Twelfth Photograph. User bg_ijam allegedly infringes the Twelfth Photograph, a photo of actress Gillian Anderson from *The X-Files*, by using it for 2 seconds within a 13 second video. DSAUF Nos. 175–177. The video is accompanied by audio and shows multiple pictures of Ms. Anderson at various points in her career. DSAUF Nos. 178-179.

Thirteenth Photograph. User iohndepp allegedly infringes the Thirteenth Photograph, a photo of Johnny Depp, by using a cropped version of it for 2 seconds within a 6 second video. DSAUF Nos. 180-182. The video is accompanied by audio and a caption relating to how attractive the User thinks Mr. Depp is. DSAUF Nos. 183-185.

Sixteenth Photograph. User rogerior.oficial allegedly infringes the Sixteenth Photograph, a photo of Morgan Freeman, by using a cropped, thumbnail size image of the photograph in a 9 second video. DSAUF Nos. 186-187. The image appears in approximately the top third of the video and is about a quarter the width of the video, which is accompanied by audio. DSAUF Nos. 188-189. The majority of the video is comprised of a Portuguese quote that translates to "Learn to say what bothers you when it's bothering you, not when you can't take it anymore. Only then can you say all this with your best words, not with your worst insults." DSAUF No. 190.

Seventeenth Photograph. User nicolemiraswriting allegedly infringes the Seventeenth Photograph, a photo of the four members of the band Siouxie and the Banshees, for 3 seconds within a 77 second video. DSAUF No. 191-193. The video explains the meaning of the term "gothic" and references the image to explain how the term is used in connection with "gothic rock." DSAUF Nos. 194-195. The Seventeenth Photograph is cropped such that only two members of the band are

shown.  DSAUF No. 196.

Nineteenth Photograph.  User scullysbae allegedly infringes the Nineteenth Photograph, a photo from *The X-Files*, by using a cropped version of the photograph in a video slide show of several images from *The-Files.*  DSAUF Nos. 197-198.  The video is accompanied by audio and text appears over the photo.  DSAUF No. 199-201.

Twentieth Photograph.  User ryanbtalkstv allegedly infringes the Twentieth Photograph, also from *The X-Files*, by using it for 10 seconds within a 28 second video.  DSAUF Nos. 202-204.  The User provides audio, video, and textual commentary on the show, superimposed over the image.  DSAUF Nos. 205-208.

Twenty-First Photograph.  User shoyb78 allegedly infringes the Twenty-First Photograph, also from *The X-Files*, in a 27-second long video through which the User is teaching viewers how to play the *The X-Files* theme song on a piano.  DSAUF Nos. 209–211.  The Twenty-First Photograph is cropped and takes up only the top half of the video screen.  DSAUF Nos. 212–214.

Twenty-Second Photograph.  User dfwbass allegedly infringes the Twenty-Second Photograph, an image of Talking Heads bassist Tina Weymouth, by using it for 5 seconds in a 62 second video.  DSAUF Nos. 215–217.  The photo, which is typically black and white, has been edited by the User with sepia tones and text appears over the photograph explaining that the video relates to popular "female bass rockers."  DSAUF Nos. 218–221.

## C.    Plaintiff's Flawed Takedown Notices

Plaintiff has an "automated" system for sending takedown notices to TTI. DSAUF No. 249.  If one of Plaintiff's contractors finds unlicensed content online that includes one of Plaintiff's photographs, the contractor is authorized to send a takedown notice, which is prepared using a template with boilerplate language. DSAUF Nos. 242–250.  Although Grecco is purportedly responsible for reviewing the uses and making a fair use determination before Plaintiff's takedown notices are

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT          Case No. 2:24-CV-04837-FLA-MAR

sent, he did not actually do so here.  DSAUF Nos. 251–254.  Indeed, Grecco emphatically denied considering fair use because he believes it is a "BS" defense. DSAUF Nos. 255–256.  Attempting to undo this testimony, Grecco now submits a declaration stating that he, or some other unidentified person, did consider fair use before sending the notices.  Dkt. 68-3 ¶ 37.  At explained below, this fails to overcome Grecco's clear sworn testimony to the contrary.

**D.** ███████████████████████████████

With hundreds of millions of user-generated videos on its platform, TTI receives and processes an overwhelming number of takedown notices each year.  For example, TTI received over 500,000 copyright reports in 2024, over 60% of which were found meritorious and led to content being removed.  DSAUF Nos. 93–94.

███████████████████████████████████

███████████████████████████████████

████████████████████  DSAUF Nos. 95–97.

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

██████████████  DSAUF No. 99.  Upon review of the notices, TTI determined the alleged acts of infringement are fair use and did not need to be removed.  DSAUF No. 101.  However, a number of the videos and thumbnails at issue have been removed, generally by the Users themselves.  SGDF No. 23.

## III.  <u>LEGAL STANDARD</u>

At summary judgment, all evidence must be construed in the light most favorable to the nonmoving party, here TTI.  *See Barlow v. Ground*, 943 F.2d 1132, 1134 (9th Cir. 1991).  "The court must decide whether the moving party is entitled to judgment as a matter of law in light of the facts presented by the nonmoving party, along with any undisputed facts."  *Edge Sys. LLC v. Ageless Serums LLC*, No. 2:20-

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT          Case No. 2:24-CV-04837-FLA-MAR

cv-09669-FLA (PVCx), 2023 U.S. Dist. LEXIS 53267, at *6 (C.D. Cal. Mar. 28, 2023) (citing *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 & n. 3 (9th Cir. 1987)). "If the nonmoving party produces direct evidence of a material fact, the court may not assess the credibility of this evidence nor weigh against it any conflicting evidence presented by the moving party." *T.W. Elec.*, 809 F.2d at 631. "[S]ummary judgment should not be granted where contradictory inferences may reasonably be drawn from undisputed evidentiary facts." *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1335 (9th Cir. 1980).; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment inappropriate if "a reasonable jury could return a verdict for the nonmoving party").

In this action, Plaintiff asserts claims against TTI for vicarious and contributory copyright infringement, Dkt. 46, but seeks summary judgment only on the latter. Dkt. 68. To prevail on its claim for contributory copyright infringement, Plaintiff must first establish the Users' direct infringement by showing that it owns the Asserted Works and that the Users violated its exclusive rights under 17 U.S.C. § 106. *See A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001). However, fair use "is not an infringement of copyright." 17 U.S.C. § 107. To hold TTI secondarily liable under a contributory infringement theory, Plaintiff must further establish that TTI: "(1) has knowledge of another's [direct] infringement and (2) either (a) materially contributes to or (b) induces that infringement.'" *VHT, Inc. v. Zillow Group, Inc.*, 918 F.3d 723, 745 (9th Cir. 2019) (quoting *Perfect 10, Inc. v. Visa Int'l Serv., Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007)).

## IV.    **ARGUMENT**

Plaintiff's motion should be denied because, construing the evidence most favorably to TTI, a reasonable jury could find that: (1) Plaintiff does not own or hold enforceable rights in all Asserted Works; (2) the allegedly infringing uses—which are highly transformative and do not remotely impact Plaintiff's licensing market—

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT          Case No. 2:24-CV-04837-FLA-MAR

are fair use and therefore not infringing; and (3) TTI was not legally required to act on Plaintiff's flawed takedown notices that expressly ignored fair use.

## A.    There are Material Disputes of Fact Relating to Plaintiff's Ownership of and Rights In the Asserted Works

Plaintiff attempts to establish ownership of the Asserted Works via its copyright registrations. Dkt. 68 at 14–19. But several material disputed facts prevent summary judgment on this issue.

*First*, Registration No. VAu 1-397-398, relating to the Seventeenth Photograph, lists the author and claimant as "Michael Grecco," not Plaintiff, and indicates the photo was not a work for hire. Dkt. 46-9. The registration is prima facie evidence "*of the facts stated in the certificate*." *Aquarian Found., Inc. v. Lowndes*, 127 F.4th 814, 819 (9th Cir. 2023) (emphasis added). Where, as here, the registration is issued "under [an individual's] name with the explicit designation that they are his copyright and not works for hire" the registration is "evidence of [the individual's] authorship, not [Plaintiff's]." *Id.*. The only assignment agreement Plaintiff has produced was executed decades before this registration issued and does not show it was assigned to Plaintiff. Dkt. 68-3, Exh. A. Without evidence of transfer of ownership, a reasonable jury can find Plaintiff does not own this registration.

*Second*, for the First, Second, Eighth, Ninth, Tenth, Eleventh, Twelfth, Nineteenth, and Twentieth Photographs—images from *Xena*, *Sliders*, and *The X-Files*—Grecco granted the Studios <u>unlimited</u> rights to the photographs, subject only to Grecco's "right to use any photographs for personal portfolio and promotional use." DSAUF Nos.104–109. In light of this, at least one court has examined Plaintiff's agreements with MCA and Fox and found that whether Plaintiff possesses any rights that can be enforced "must go to trial." *Michael Grecco Photography, Inc. v. Everett Collection, Inc.*, 589 F. Supp. 2d 375, 384 (S.D.N.Y. 2008). That court found that the language "Michael Grecco also retains the right to use any photograph for personal portfolio and promotional use . . . which appears on Grecco's own

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT          Case No. 2:24-CV-04837-FLA-MAR

invoice and so must be construed against him (the drafter), suggests that, Grecco may well have intended to confer an exclusive license, giving the studios all his § 106 rights except in connection with promoting himself as a photographer." *Id.* at 384. That was further shown by "Grecco's affirmative statement" that he licenses the photographs "with the active consent . . . of the studios." *Id.* (alteration in original). While the court did not examine Grecco's agreement relating to *Sliders*, that agreement includes this same language. DSAUF No. 104–109. Further showing that Grecco did not retain enforceable rights, the Nineteenth Photograph bears a copyright notice attributing the photograph to Fox, specifically: "©1993 FoxBroadcastingCompany." Dkt. 46 ¶ 48. In light of all this, a reasonable jury could easily find that Plaintiff transferred its rights in these images to third parties and does not own the rights it seeks to enforce.

*Third*, although Plaintiff contends Grecco assigned Plaintiff the copyright to images created before 1998, Dkt. 68-3 at 16–22, it is undisputed that Grecco did not similarly assign photographs he created in 1998 or later, DSAUF No. 111, which according to Plaintiff includes all but 8 unidentified Photographs. SGDF No. 34. Instead, Plaintiff contends it owns those Asserted Works because Grecco was an employee of Plaintiff. SGDF No. 42. However, Grecco testified at his deposition that he is *not* an employee of Plaintiff. DSAUF No. 112. Grecco further testified that whether and when he was an employee would be shown by his "operating agreement." DSAUF No. 113. That operating agreement was not produced in discovery, nor submitted with Plaintiff's Motion, so Plaintiff cannot rely on it. DSAUF No. 114 . Without further evidence connecting the necessary dots, a reasonable jury could find that Plaintiff fails to establish its ownership for the majority of the Photographs.

In sum, there are genuine disputes of material fact relating to Plaintiff's ownership of and rights in the Asserted Works discussed above, such that a reasonable jury could find Plaintiff cannot prove infringement.

-11-

**B.     The User's Videos and Thumbnail Images are Fair Use and
There is No Direct Infringement**

As to all Asserted Works, summary judgment should be denied because a reasonable jury could readily find fair use.  Section 107 of the Copyright Act sets forth the following fair use factors: "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107.  Numerous courts have denied motions for summary judgment on copyright infringement claims when the infringement is protected fair use.  *E.g., Sedlik v. Drachenberg*, No. CV 21-1102 DSF (MRWx), 2023 U.S. Dist. LEXIS 183184, at *3 (C.D. Cal. Oct. 10, 2023) (denying summary judgment on copyright infringement where there were disputes of fact as to the fair use defense).  As set forth below, the first and fourth fair use factors—widely regarded as the most important—strongly favor finding fair use here and the remaining factors are either neutral or lean toward fair use.  Plaintiff's motion should be denied on this basis alone.

**1.     The Short Videos and Thumbnails are Transformative, Non-
Commercial Uses**

The first fair use factor "considers the reasons for, and nature of, the copier's use of an original work" including whether the use is commercial and whether it is transformative.  *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 528 (2023).  The "central question" of this factor is "whether the new work merely supersedes the objects of the original creation (supplanting the original), or instead adds something new, with a further purpose or different character." *Id.* at 528 (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994)).  A use that has a further purpose or different character from the original is "transformative." *Id.* at 529.  The more transformative a use is, the more likely it qualifies as fair use and

1    the less important other factors become, including whether the use was commercial.

2    *Campbell*, 510 U.S. at 579.

3    Plaintiff claims the Asserted Works were created "for magazine covers" or, as

4    discussed above, for Studios to promote TV shows.  Dkt. 68-3 ¶ 3; *supra* Section

5    II.A.  These are the "objects of the original creation" against which the alleged

6    infringement must be compared.  *See Andy Warhol*, 598 U.S. at 528.

7            a.    *Use of the Asserted Works as Thumbnail Images and in*
8                  *Videos is Non-Commercial*

9    The "crux" of whether a use was commercial is "whether the user stands to

10   profit from exploitation of the copyrighted material." *Harper & Row Publishers, Inc.*

11   *v. Nation Enters.*, 471 U.S. 539, 562 (1985).  Importantly, the fact that a work is used

12   on a commercial website does not itself render the use commercial.  *See Kelly v.*

13   *Arriba Soft Corp.*, 336 F.3d 811, 818 (9th Cir. 2003); *Bartz v. PBC*, No. C 24-05417

14   WHA, 2025 U.S. Dist. LEXIS 118989, at *30 (N.D. Cal. June 23, 2025) ("That the

15   accused is a commercial entity is indicative, not dispositive.").  In *Kelly*, the Ninth

16   Circuit found the use of images on a commercial website was at most "incidentally"

17   commercial where the infringing images "were among thousands of images" on

18   defendant's website and defendant was not using the images "to directly promote its

19   web site nor trying to profit by selling [Plaintiff's] images." *Kelly*, 336 F.3d at 818.

20   The same is true here.  The 24 alleged infringements are among *billions* of videos

21   and *millions* of profile pictures on TikTok and there is no evidence they were used

22   for any commercial purpose.

23   Specifically, it is undisputed that TikTok did not generate any revenue from

24   the alleged infringement, and that the images were not used in advertisements or to

25   sell products.  DSAUF Nos. 267, 260.  Plaintiff has adduced no evidence suggesting

26   that the Users commercially benefited from their use at all.  DSAUF No. 240.

27   Instead, on their face, the posts at issue are creative content created by the individual

28   Users for entertainment and commentary on popular culture.  *See supra* Section II.B.

-13-

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT          Case No. 2:24-CV-04837-FLA-MAR

Plaintiff cites out-of-Circuit authority to claim that increasing traffic to a website suggests commercial use. Dkt 68 at 21-22 (citing *Von Der Au v. Michael G. Imber, Architect, PLLC*, No. SA-20-CV-00360-XR, 2021 U.S. Dist. LEXIS 55298, at *11 (W.D. Tex. Mar. 24, 2021)). But Plaintiff here has "no facts to suggest [users] were drawn to TikTok because of these videos." DSAUF No. 259. Plaintiff also claims that Users who are part of the Creator Program could *potentially* "profit" from the use of the Asserted Work. Dkt. 68 at 22. ███████████████████████ ███████████████ DSAUF No. 90. And Plaintiff adduced no evidence suggesting that those Users generated revenue attributable to their fleeting use of Plaintiff's images.

Finally, Plaintiff's own witness testified that the uses are *not* commercial. DSAUF No. 240. In fact, she testified that if any of the uses were commercial, Plaintiff would have sent cease and desist letters to the Users rather than takedown notices to TTI. DSAUF No. 241.

> b. *Use of the Asserted Works as Small, Cropped Thumbnail Images is Transformative*

Use of copyrighted photographs as thumbnail images on a website has repeatedly been found "highly transformative." *E.g., Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1165 (9th Cir. 2007); *Perfect 10, Inc. v. Yandex N.V.*, 962 F. Supp. 2d 1146, 1155 (N.D. Cal. 2013). Thumbnail images are "much smaller, lower-resolution images that serve[] an entirely different function" than professional photographs because "users are unlikely to enlarge the thumbnails and use them for [the intended] artistic purposes." *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 818 (9th Cir. 2003). Rather, thumbnail images are used online as a "pointer directing a user to a source of information." *Amazon.com*, 508 F.3d at 1165; *see also Magnum Photos Int'l, Inc. v. Houk Gallery, Inc.*, No. 16-CV-7030 (VSB), 2018 U.S. Dist. LEXIS 162357, at *8 (S.D.N.Y. Sep. 21, 2018) ("thumbnails merely provide information" and do not "usurp" the purpose of the original artistic works); *Hannley v. Mann*, No.

-14-

2:21-cv-02043-JLS, 2023 U.S. Dist. LEXIS 40022, at *11 (C.D. Cal. Mar. 8, 2023) (finding use of a copyrighted photo as a profile picture on Twitter fair).

The same is true here. The thumbnail images are used to identify the Users and their profiles, and they are presented on the Users' profile pages in a small, highly cropped, low-resolution form. DSAUF No. 239. This transformative use does not supersede the original purpose of the Asserted Works.

> c.  *Use of the Asserted Works in Videos with Added Commentary, Editing, and Other Elements is Transformative*

The 19 User videos at issue are likewise transformative. As described above, each includes additional content, including other photographs and video clips, text conveying the User's thoughts, the User's narration providing pop culture commentary, and/or audio. *See supra* Section II.B(2). In addition, several of the Asserted Works are cropped in the videos or include editing and effects added by the User. *Id.*

The use of photographs in this manner within videos has consistently been found transformative. For example, the use of a drawing within a concert "video backdrop" was found transformative where the icon was "only a component" of the video and the video conveyed messages unrelated to the drawing. *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1176 (9th Cir. 2013). Similarly, the use of a copyrighted photograph of an actress, alongside several other photographs, in an article about the actress, was transformative where the article provided "insight into her life" for entertainment purposes. *Calkins v. Playboy Enters. Int'l, Inc.*, 561 F. Supp. 2d 1136, 1141 (E.D. Cal. 2008).

Notably, this District has previously found similar uses of Plaintiff's *X-Files* and *Xena* images on a website to be transformative. *Michael Grecco Prods. v. Livingly Media*, No. CV 20-0151 DSF (JCx), 2021 U.S. Dist. LEXIS 117652, at *26 (C.D. Cal. Apr. 16, 2021). In *Livingly Media*, the defendant used Plaintiff's images (and others) in connection with four articles posted on its website, to provide TV

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT          Case No. 2:24-CV-04837-FLA-MAR

1 show recommendations, Halloween costume ideas, and a quiz relating to *The X-Files*

2 characters. *Id.* at *7, *26. The court found that the articles, commenting on the TV

3 shows and characters depicted in the photographs, "were not based solely around

4 Grecco's photographs" and were created with some "element of creativity" making

5 the uses transformative. *Id.* at *26.

6   So too here. The Users' videos show the Asserted Works for a matter of

7 seconds to comment on the celebrities, characters, and TV shows depicted therein.

8 *See supra* Section II.B(2). The fleeting images are accompanied by other elements,

9 photographs, and video clips selected by the User and edited into a video to convey

10 that commentary. *Id.* This is paradigmatic transformative fair use.

11    **2.** **The Asserted Works Were Previously Published and Are**

12     **Minimally Creative**

13   The nature of the copyrighted work factor examines the extent to which a

14 copyrighted work is creative and whether it has been published. *Harper & Row,*

15 *Publrs. v. Nation Enters.*, 471 U.S. 539, 563-564 (1985). "Published works are more

16 likely to qualify as fair use because the first appearance of the artist's expression has

17 already occurred." *Kelly*, 336 F.3d at 820 (citing *Harper & Row*, 471 U.S. at 564).

18 Here, each of the Asserted Works was "widely published" years before the alleged

19 infringement began. Dkt. 68-3 ¶ 4, Exh. C.

20   Courts have found photos of celebrities only "marginally creative." *Monge v.*

21 *Maya Magazines, Inc.*, 688 F.3d 1164, 1178 (9th Cir. 2012). Regardless,

22 "[c]onsidering the previous publication of the Photographs and creativity of the

23 image" this fair use factor "weighs neither for nor against fair use." *Livingly Media*,

24 2021 U.S. Dist. LEXIS 117652, at *28-29; *Michael Grecco Prods. v. Valuewalk LLC*,

25 345 F. Supp. 3d 482, 507 (S.D.N.Y. 2018) ("Because the photograph is creative and

26 published, this factor does not weigh in either party's favor.").

27

28

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT   Case No. 2:24-CV-04837-FLA-MAR

### 3.    The Users Used Portions of The Asserted Works Necessary for Their Transformative Purposes

For the third fair use factor, "the extent of permissible copying varies with the purpose and character of the use" and if the "secondary user only copies as much as is necessary for his or her intended use, then this factor will not weigh against him or her." *Kelly*, 336 F.3d at 820.  But because photographs are "not meaningfully divisible," use of an entire photo is deemed more necessary.  *Seltzer* 725 F. 3d at 1178; *see also Kelly*, 336 F.3d at 821 ("It was necessary for Arriba to copy the entire image to allow users to recognize the image . . . if Arriba only copied part of the image, it would be more difficult to identify it").

Here, the Users alleged to infringe the Sixth, Eighth, Tenth, Thirteenth, Fourteenth, Fifteenth, Seventeenth, Eighteenth, Nineteenth, and Twenty-First Photographs utilized (often highly) cropped versions of the images.  *See supra* Section II.B.    Further, the Users's videos displayed the photographs for the transformative purposes described above, and could not have displayed less to provide commentary, comedy, and information in their videos.  Finally, the images appear for only a matter of seconds on the Users' videos. *Id.*  Construing the evidence in favor of TTI as non-moving party, this factor is neutral at worst.

### 4.    The Alleged Infringements Have No Effect on Plaintiff's Market

The fourth fair use factor examines the effect the alleged infringement has on the "potential market for or value of the copyrighted work."  17 U.S.C. § 107(4).  Where there is no effect on the market or the alleged infringement "does not substitute for the original and serves a different market function," this "factor weights in favor of fair use." *Seltzer*, 725 F.3d at 1179.  That is easily the case here.

Initially, Plaintiff has not established that there is a market for its works outside of litigation.  Plaintiff claims it is a "high-end licensor of high-quality imagery" and it licenses the Asserted Works for thousands of dollars to Studios and top-tier outlets

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT          Case No. 2:24-CV-04837-FLA-MAR

for use in magazines.  Dkt. 68 at 23-24; Dkt. 68-3 ¶¶ 3-4, 41.  But there is little support for this in the record.  Instead, Plaintiff's past licensing evidence primarily consists of "retroactive" licenses, which were entered only after Plaintiff threatened the counterparty with costly litigation.  DSAUF Nos. 270–272.  In fact, despite claiming to license images for a premium through Plaintiff's website, Grecco testified that Plaintiff has never licensed *any* of the Asserted Works "in the entire history" of the website.  DSAUF No. 268.  The record further shows that Plaintiff has earned over *$5 million* from litigation over the years, significantly dwarfing any non-litigation-related licensing income provided in discovery.  DSAUF No. 274.  Regardless of Plaintiff's attempt to characterize itself as a "high-end," "boutique" licensor, the law considers the potential market based on evidence, not unsupported rhetoric.  *See Seltzer*, 725 F.3d at 1178 (statement in declaration that image has been licensed in the past insufficient without "further context" for the prior license or revenue derived therefrom).

Regardless, Plaintiff has adduced no evidence that anyone hypothetically interested in licensing its photographs would be deterred from doing so due to the allegedly infringing uses in this case.  For example, there is no evidence that the "high-end" studios and magazines allegedly interested in Plaintiff's work would see the photos in 24 pieces of TikTok content (out of billions of videos on the platform) and choose to not license from Plaintiff for this reason.  Nor is there any evidence that online content creators such as the Users here would ever be interested in licensing directly from Plaintiff given the inflated fees Plaintiff purports to charge. The fact that nobody has ever licensed an image from Plaintiff's website proves this. Given the foregoing, a reasonable jury would readily find that any purported market for Plaintiff's works was not impacted by the allegedly infringing uses.  *See Seltzer*, 725 F.3d at 1179 ("no reasonable argument" that uses were "a substitute for the primary market for" plaintiff's work).

1   In sum, a reasonable jury could find that fair use factors one and four—"the

2   most important factors," *Seltzer*, 725 F.3d at 1179—strongly favor fair use, and that

3   other factors are roughly neutral.  This requires denying Plaintiff's motion outright.

### C. Plaintiff's Takedown Notices are Ineffective to Trigger the DMCA's Expeditious Removal Requirement or to Put TTI on Notice of Infringement

6   Finally, Plaintiff's motion should be denied because Plaintiff's ineffective

7   takedown notices did not legally oblige TTI to act, foreclosing liability for

8   contributory infringement.[5]  "[T]o trigger the expeditious removal requirement"

9   under the DMCA, "a copyright owner's notification [to the internet service provider]

10  must substantially comply with the requirements of subsection [512](c)(3)(A). . . ."

11  *Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597, 612 (9th Cir. 2018).  Section

12  512(c)(3)(A) requires, among other things, "[a] statement that the complaining party

13  has a good faith belief that use of the material in the manner complained of is not

14  authorized by the copyright owner, its agent, or the law."    17 U.S.C.

15  § 512(c)(3)(A)(v).  "[F]air use is 'authorized by the law' and a copyright holder *must*

16  consider the existence of fair use before sending a takedown notification under

17  § 512(c)" of the DMCA.  *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1153 (9th

18  Cir. 2016) (emphasis added).

19  Here, as fully explained in TTI's own summary judgment motion, Plaintiff's

20  notices were ineffective to trigger any of the DMCA's takedown requirements

---

[5] Plaintiff criticizes TTI for even considering fair use once it became aware of the alleged infringement via this lawsuit. Dkt. 68 § III.  This is both wrong and irrelevant to any relief sought in Plaintiff's motion.  Under the law, "[w]here [a defendant] cannot reasonably verify a claim of infringement, either because of a possible fair use defense . . . or the copyright holder's failure to provide the necessary documentation to show that there is a likely infringement, the operator's lack of knowledge will be found reasonable and there will be no liability for contributory infringement for allowing the continued distribution of the works on its system." *Religious Tech. Ctr. v. NetCom On-Line Comm. Servs.*, 907 F. Supp. 1361, 1364 (N.D. Cal. 1995).  It is nonsensical that TTI would be forbidden from analyzing infringement when determining how to act in response to infringement allegations.

because Plaintiff did not consider fair use before sending them, as required by the DMCA. Instead, Grecco admitted that he ignored the "BS" issue of fair use and did not even review the allegedly infringing uses at all, despite it being his personal responsibility. DSAUF Nos. 248–256. Thus, the "good faith belief" statement in Plaintiff's automated takedowns are unequivocally false and the notices are legally ineffective to provide notice of infringement to TTI.[6] As a result, Plaintiff did not trigger any obligations under the DMCA and cannot hold TTI liable under any secondary infringement theory, and its motion should be denied for this reason as well. *See Ventura*, 885 F.3d at 612; *UMG Recordings, Inc. v. Shelter Capital Partners Ltd. Liab. Co.*, 718 F.3d 1006, 1022 (9th Cir. 2013) (deficient notices insufficient to show "whether a service provider had actual knowledge").

Further, contrary to Plaintiff's arguments, ███████████████████ ████████████████████████████████████████████████████████ *See* Dkt. 68 at 25-28. In *Ellison*, the service provider was found to have acted unreasonably in making its DMCA email unavailable. *See Ellison v. Robertson*, 357 F.3d 1072, 1076-77 (9th Cir. 2004). ██████████████████████████████████████ ████████████████████████████████ DSAUF Nos. 98–100. A reasonable jury could find that TTI acted reasonably and did not have knowledge of the infringement. *See Omnia Studios, LLC v. JD E-Commerce Am. Ltd.*, No. 23-CV-6186-FPG-CDH, 2025 U.S. Dist. LEXIS 61199, at *25 (W.D.N.Y. Mar. 31, 2025) ("glitches within Wal-Mart's automated takedown system" are relevant "more to the technical difficulties involved in curating an online marketplace than a sign of willful blindness"). Plaintiff's request for summary judgment must be denied.

---

[6] Plaintiff has now submitted a declaration from Grecco representing that he, or some other unidentified person, actually did consider fair use. Dkt. 68-3 at ¶ 37. As further explained in TTI's objections to Plaintiff's evidence, the sham affidavit rule does not allow this. *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999). The Court should disregard Grecco's declaration statement contradicting his original, sworn deposition testimony.

## V.  <u>CONCLUSION</u>

Plaintiff's motion for summary judgment on its claim of contributory copyright infringement should be denied because a reasonable jury could conclude that (1) Plaintiff does not own or hold exclusive rights in the majority of the Asserted Works; (2) all allegedly infringing uses are fair use and therefore non-infringing; and (3) Plaintiff's ineffective takedown notices did not trigger any obligations from TTI nor put TTI on notice of the alleged infringement.  Plaintiff's Motion should be denied in full.

Dated:    September 5, 2025                    DORSEY & WHITNEY LLP


By: */s/ Connor J. Hansen*
J. Michael Keyes (SBN 262281)
  *keyes.mike@dorsey.com*
Connor J. Hansen (*pro hac vice*)
  *hansen.connor@dorsey.com*
Dylan J. Harlow (*pro hac vice*)
  *harlow.dylan@dorsey.com*
Columbia Center
701 Fifth Avenue, Suite 6100
Seattle, WA
Telephone:  206.903.8800
Facsimile:   206.903.8820

DORSEY & WHITNEY LLP
Kent J. Schmidt (SBN 195969)
  *schmidt.kent@dorsey.com*
600 Anton Boulevard, Suite 200
Costa Mesa, CA 92626
Telephone:  714.800.1400
Facsimile:  714.800.1499

*Attorneys for Defendant TikTok, Inc.*

1

## **L.R. 11-6.2. CERTIFICATE OF COMPLIANCE**

2      The undersigned, counsel of record for Defendant TikTok Inc. certifies that

3   this brief contains 6671 words, which complies with the word limit of L.R. 11-6.

4

5   Dated: September 5, 2025

6

7                                    */s/ Connor J. Hansen*
                                      Connor J. Hansen

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2025, a true and correct copy of the foregoing was filed electronically using the Court's CM/ECF system, which shall send notification of such filing to all counsel of record.  Any counsel of record who has not consented to electronic service through the Court's CM/ECF system will be served by electronic mail.

*/s/ Connor J. Hansen*
Connor J. Hansen

-23-

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT                Case No. 2:24-CV-04837-FLA-MAR