# Exhibit C

To the Declaration of J. Michael Keyes in Support of Defendant's Opposition to Plaintiff's Motion to Exclude and/or Strike Defendant's Expert Witness and Report

Case 2:24-cv-04837-FLA-MAR     Document 83-4     Filed 09/05/25     Page 2 of 18     Page ID #:2980

Michael Grecco                      Confidential          Michael Grecco Productions, Inc. vs. TikTok, Inc.

```
 1                UNITED STATES DISTRICT COURT

 2                CENTRAL DISTRICT OF CALIFORNIA

 3

 4
    MICHAEL GRECCO PRODUCTIONS, )
 5  INC.,                       )
                                )
 6       Plaintiff,             )
                                )
 7            vs.               ) Case No.
                                ) 2:24-CV-04837-FLA-MAR
 8  TIKTOK, INC.,               )
                                )
 9       Defendant.             )
    ___                         )
10

11

12         CONFIDENTIAL VIDEO DEPOSITION OF

13                  MICHAEL GRECCO

14                 Santa Monica, CA

15               Friday, July 18, 2025

16

17

18

19
    STENOGRAPHICALLY REPORTED BY:
20
    SUSAN F. MAGEE, RPR, CCRR, CLR, CSR No. 11661
21

22  Job No. 10168456

23

24

25
```

```
 1                 UNITED STATES DISTRICT COURT

 2                CENTRAL DISTRICT OF CALIFORNIA

 3

 4
     MICHAEL GRECCO PRODUCTIONS, )
 5   INC.,                       )
                                 )
 6        Plaintiff,             )
                                 )
 7            vs.                ) Case No.
                                 ) 2:24-CV-04837-FLA-MAR
 8   TIKTOK, INC.,               )
                                 )
 9        Defendant.             )
     ___                         )
10

11

12           Confidential video deposition of

13   MICHAEL GRECCO, taken on behalf of Defendant,

14   appearing remotely from Santa Monica, CA, beginning

15   at 9:37 a.m. and ending at 6:00 p.m. on Friday,

16   July 18, 2025 before SUSAN F. MAGEE, RPR, CCRR, CLR,

17   CSR No. 11661.

18

19

20

21

22

23

24

25
```

```
 1   APPEARANCES:
 2       For the Plaintiff:
 3           COPYCAT LEGAL PLLC
 4           JONATHAN ALEJANDRINO, ESQ.
 5           LAUREN M. HAUSMAN, ESQ.
 6           (Appearing via videoconference)
 7           3111 North University Drive
 8           Suite 301
 9           Coral Springs, FL 33065
10           (877) 437-6228
11           jonathan@copycatlegal.com
12           lauren@copycatlegal.com
13
14       For the Defendant:
15           DORSEY & WHITNEY LLP
16           J. MICHAEL KEYES, ESQ.
17           CONNOR J. HANSEN, ESQ.
18           (Appearing via videoconference)
19           701 Fifth Avenue
20           Suite 6100
21           Seattle, WA 98104
22           (206) 903-8800
23           keyes.mike@dorsey.com
24           hansen.connor@dorsey.com
25
```

Case 2:24-cv-04837-FLA-MAR Document 83-4 Filed 09/05/25 Page 5 of 18 Page ID #:2983

Michael Grecco     Confidential     Michael Grecco Productions, Inc. vs. TikTok, Inc.

```
 1   APPEARANCES (continued):
 2       Also Present (Appearing via videoconference):
 3           BENJAMIN HALPERIN
 4           ALEXA LIBERT
 5
 6       The Videographer
 7       (Appearing via videoconference):
 8           MEYNARD BERNARDO
 9                          --o0o--
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Case 2:24-cv-04837-FLA-MAR   Document 83-4   Filed 09/05/25   Page 6 of 18   Page ID #:2984

Michael Grecco                           Confidential           Michael Grecco Productions, Inc. vs.
                                                                                      TikTok, Inc.

```
 1   best of my ability.
 2        Q.   Okay.  And so in response to the question I
 3   just asked in terms of are there any topics that you
 4   are not prepared to talk about today, is the answer
 5   to that no?
 6        A.   The answer to that is I'm prepared to talk
 7   about everything on that list unless objected to by
 8   my attorney.
 9             MR. KEYES:  Okay.  Speaking of which, let's
10   pull up Exhibit 3 to your deposition today.
11             (Exhibit 3, Plaintiff's Objections to
12   Notice of 30(b)(6) Deposition of Michael Grecco
13   Productions, Inc. Corporate Representative, marked
14   for identification.)
15             THE WITNESS:  Can I close the previous?
16             MR. KEYES:  You know, you might just want
17   to minimize it because we'll be returning to it.
18   But however you'd like to do it is fine by me.
19             THE WITNESS:  Okay.
20   BY MR. KEYES:
21        Q.   Let me know when you have Exhibit 3 up.
22        A.   I have Exhibit 3 up.
23        Q.   Have you seen Exhibit 3 to your deposition
24   before?
25        A.   Yes.
```

```
 1   before?
 2        A.   I'm opening up now.
 3        Q.   Okay.  So this is the invoice related to
 4   the -- to the "Sliders" shoot; right?
 5        A.   Yep.
 6        Q.   And this invoice relates to the "Sliders"
 7   image that's at issue in this case; right?
 8        A.   Yes.
 9        Q.   And per the terms of this invoice, you were
10   giving them "unlimited usage rights"; right?
11        A.   Yes.
12        Q.   And you generated --
13        A.   But this was not the invoice sent to them.
14   Maggie licensed what she negotiated.  And in every
15   one of her licenses she just wrote advertising and
16   publicity use, just like she did on the Fox one.
17             That was her -- that was her standard
18   license that she gave.
19        Q.   Right, so --
20        A.   Yeah?
21        Q.   So unlimited usage rights are granted to
22   the client.  That means they could do whatever they
23   wanted to with the images; right?
24        A.   No, because this isn't what was sent to
25   client.  I just said that.  This was sent to my
```

Case 2:24-cv-04837-FLA-MAR   Document 83-4   Filed 09/05/25   Page 8 of 18   PageID #:2986

Michael Grecco                    Confidential        Michael Grecco Productions, Inc. vs.
                                                                              TikTok, Inc.

1  agent with me not knowing the details of what she
2  negotiated, and when she invoiced them, she invoiced
3  them and put in the license that she negotiated with
4  them which is all she said -- it was not very
5  sophisticated -- was advertising and publicity use.
6       Q.   So this Exhibit 14, this was not sent on
7  to --
8       A.   Who is it addressed to?  Who is it
9  addressed to, Mike?  Who is it addressed to?  Who is
10 it addressed to?
11      Q.   Right.  To Maggie Hamilton.
12      A.   Okay.
13      Q.   Right.
14      A.   So no, she did the billing because she's
15 not going to do the billing.  She's going to do the
16 billing at the full rate.  She gets the check.
17           Her -- she would send my terms and
18 conditions.  That was part of our deal.  But -- but
19 she would -- she would write it up the way she
20 negotiated it.
21      Q.   So this has your letterhead at the top;
22 right?  "Grecco," Michael Grecco?
23      A.   Yes.
24      Q.   All right.  So I'm just trying to
25 understand the chain of custody here.

Case 2:24-cv-04837-FLA-MAR   Document 83-4   Filed 09/05/25   Page 9 of 18   Page ID #:2987

Michael Grecco                                   Confidential            Michael Grecco Productions, Inc. vs.
                                                                                              TikTok, Inc.

```
 1            This invoice that was generated here with
 2   the terms, who generated this document?
 3        A.   Me.
 4        Q.   Okay.  And then you sent it to
 5   Ms. Hamilton?
 6        A.   Correct.
 7        Q.   Okay.  And so the "Unlimited usage rights
 8   are granted to the client," that's the language that
 9   you used; right?
10        A.   That was what I made up or anticipated.  It
11   was not what she negotiated.  She negotiated
12   advertising and publicity use, and all of her
13   invoices just said advertising and publicity use.
14        Q.   And where are those invoices?
15        A.   She went out of business about 15 years
16   ago.  And we've looked for her records, and she said
17   she's destroyed everything, which she obviously
18   shouldn't have because there's licenses that pertain
19   to copyrights there, but she would say advertising
20   and publicity.
21        Q.   Okay.  And you know that because what?
22   You've seen these documents before?
23        A.   Yes.  And I've been told that by her.
24        Q.   Okay.  And is she still with us?  I know
25   she's not in the business you said, so -- but she's
```

Case 2:24-cv-04837-FLA-MAR   Document 83-4   Filed 09/05/25   Page 10 of 18   Page ID #:2988

| Michael Grecco | Confidential | Michael Grecco Productions, Inc. vs. TikTok, Inc. |

1  still alive?
2       A.  I -- I don't know.  I have no idea, and I
3  have no way of finding her these days.  I haven't
4  spoken to her in ten years at least.
5       Q.  Okay.  So if we -- now I think I
6  understand.  If we went back to Exhibit 13 and we
7  looked at that Assignment Invoice, you generated
8  Exhibit 13; right, and sent it --
9       A.  Correct --
10      Q.  -- Ms. Hamilton?
11      A.  Correct.  And they were altered based on
12 her discussions with the client.
13      Q.  And in Exhibit 13 again, you've said the
14 document you provided to Ms. Hamilton is -- you were
15 giving unlimited usage rights to client?
16      A.  Yeah, but she didn't negotiate that.  She
17 didn't negotiate it as unlimited rights.  She
18 negotiated it as advertising and publicity so that
19 she never added merchandising rights.  She never
20 added product rights.  She never added -- so she
21 negotiates the fee and the license, you know,
22 concurrently related to each other and put the terms
23 in of what she negotiated.
24      Q.  So is it a fair statement, Mr. Grecco that,
25 for example, with respect to Exhibit 13, when you

Case 2:24-cv-04837-FLA-MAR   Document 83-4   Filed 09/05/25   Page 11 of 18   Page ID #:2989

Michael Grecco                           Confidential        Michael Grecco Productions, Inc. vs.
                                                                                    TikTok, Inc.

```
 1   of any legal authority.
 2              Or is that just Michael Grecco on
 3   copyright?
 4              MR. ALEJANDRINO:  Object to form.
 5              THE WITNESS:  That's the experience --
 6              MR. ALEJANDRINO:  I do want to clarify,
 7   Mr. Keyes, are we -- because you keep saying Michael
 8   and you.  And I know this is, like, a 30(b)(6) as
 9   well as Mr. Grecco's personal deposition.
10              MR. KEYES:  Yeah.
11              MR. ALEJANDRINO:  Are these questions
12   directly at Michael Grecco or Michael Grecco
13   Productions, Inc.?
14              MR. KEYES:  Well, I asked specifically
15   whether his company considered fair use before
16   issuing any of these takedown notices.
17   BY MR. KEYES:
18       Q.  And my understanding, Mr. Grecco, is that
19   you said no.
20       A.  Well, I -- look.  We always consider fair
21   use.  If I see something used in an educational
22   informational site, you know, for educational
23   purposes with a not-for-profit company, I won't
24   approve that case.  If I see -- you know, if I see
25   someone criticizing or critiquing one of my works,
```

Case 2:24-cv-04837-FLA-MAR   Document 83-4   Filed 09/05/25   Page 12 of 18   Page ID #:2990

| Michael Grecco | Confidential | Michael Grecco Productions, Inc. vs. TikTok, Inc. |

```
 1   then it's obviously protected by the first
 2   amendment, and it's fair use.
 3           If I see something that's truly
 4   transformative, then we would consider fair use.
 5           But that's not the case here with TikTok.
 6   There's -- there's no criteria that I see from my 40
 7   years of experience handling -- 30-some-odd years of
 8   experience handling my copyright cases that relates
 9   to fair use here.
10           So no, we didn't consider it for the
11   entirety of the platform because there's no fair use
12   defense here from my perspective.
13   BY MR. KEYES:
14       Q.  And did you seek legal counsel with respect
15   to fair use in this case?
16       A.  Yes.  Legal counsel wouldn't have taken
17   this case if they really thought it was fair use.
18   And they know it's a BS defense that everyone who
19   has no defense uses, so . . .
20       Q.  You mentioned the phrase a few moments ago
21   "truly transformative."
22           Remember that testimony?
23       A.  Yes.
24       Q.  What makes a use of content truly
25   transformative in your judgment, sir?
```

```
 1   licensing photographs on mgpstockphotos.com?
 2        A.   It depends on the year.  I mean, anywhere
 3   between -- I mean, we're working on a deal with a
 4   condominium complex in Miami which is going to be
 5   worth $150,000.  But anywhere, you know, 20,000,
 6   30,000 in licensing.
 7        Q.   So let's just take the most recent year,
 8   the complete year.
 9             Are you on a -- in terms of how you run
10   your operation, are you on a calendar year?
11        A.   Cash basis calendar year, yes.
12        Q.   So for the calendar year 2024, how much
13   licensing revenue did you generate through
14   mgpstockphotos.com approximately?
15        A.   I don't know.  People -- people reach out
16   to us to license.  I don't necessarily know.  If
17   they've seen the picture there, they've seen it on
18   my website, they saw it on the Days of Punk website.
19   I'm not sure.  There's -- we don't keep records of
20   who has found it on PhotoShelter.
21        Q.   Okay.  Fair enough.  But in terms of you
22   did mention that people can actually go on to that
23   website and add photos to a cart.
24        A.   People can license through the platform;
25   correct.
```

Case 2:24-cv-04837-FLA-MAR   Document 83-4   Filed 09/05/25   Page 14 of 18   Page ID #:2992

| Michael Grecco | Confidential | Michael Grecco Productions, Inc. vs. TikTok, Inc. |

```
 1         Q.  Right.  So I'm referring specifically to
 2    the revenue generated through -- by people that got
 3    on the platform and licensed works?
 4         A.  Zero.
 5         Q.  Zero for 2024?
 6         A.  Yeah.  But that -- again, no one uses --
 7    the cart, usually they want to have a confirmation
 8    of a specific license, they want to give us the
 9    details, the print run, the record cover run, the da
10    da da da da da da, you know, the space, how big it's
11    being used, da da da, and we usually negotiate that.
12         Q.  Okay.  So for 2023, same answer?  Zero in
13    terms of the amount of revenue generated by somebody
14    getting on to MGP Stock Photos and purchasing a
15    license?
16         A.  Using their cart; that is correct.
17         Q.  Okay.
18         A.  How much revenue we got because they were
19    posted there and they contacted us, it is not
20    correct.  It is not 0.
21             But using the cart, I will in a limited
22    fashion say you're correct.
23         Q.  Would it be the same answer for 2022?
24         A.  Yep.
25         Q.  Same answer for 2021?
```

Case 2:24-cv-04837-FLA-MAR   Document 83-4   Filed 09/05/25   Page 15 of 18   Page ID #:2993

Michael Grecco                      Confidential           Michael Grecco Productions, Inc. vs.
                                                                                TikTok, Inc.

```
 1        A.   Yeah.  I -- there was one instance where
 2   someone bought a print using the cart, and I think
 3   that in the entire history of us using that
 4   PhotoShelter site, that was the only time someone
 5   used the cart.
 6        Q.   Okay.
 7        A.   Amanda Beard's husband bought her a print,
 8   the Olympian, of when I shot her, so . . .
 9             MR. KEYES:  Exhibit 24, please.
10             (Exhibit 24, 10/12/94 Stock Invoice,
11   GRECCO_000608-GRECCO_000607, marked for
12   identification.)
13             THE WITNESS:  Okay.
14   BY MR. KEYES:
15        Q.   Do you recognize this document?
16        A.   I do.
17        Q.   And what is it?
18        A.   It's an invoice.
19        Q.   Who is Delphi Internet?
20        A.   It was an Internet service provider back in
21   the day.
22        Q.   Okay.  And this is one of those invoices
23   that you drafted; right?
24        A.   Well, I drafted it to Maggie, yeah.  I
25   drafted it to Maggie, and I think she did the
```

Case 2:24-cv-04837-FLA-MAR   Document 83-4   Filed 09/05/25   Page 16 of 18   Page ID #:2994

Michael Grecco                     Confidential        Michael Grecco Productions, Inc. vs.
                                                                                TikTok, Inc.

```
 1         A.  Which is almost in every one of these
 2   cases.
 3         Q.  And this is another instance where you
 4   found that Lifedaily.com was using this image.  And
 5   you sent them a demand letter, I take it; yes?
 6         A.  Yes.
 7         Q.  So this license agreements ended up
 8   potentially -- or not potentially.  It ended up
 9   resolving your copyright infringement claim that you
10   threatened against them?
11         A.  I don't know if we made any threat against
12   them, but we -- they settled the claim, yes.
13         Q.  In your demand letter, you demanded that
14   they stop using the photograph because it was
15   infringing; right?
16         A.  Well, look.  Every one of these is a
17   negotiation.  So if they want to pay more and
18   continue to use the photograph, they can pay more.
19   Like, every one of these is a negotiation based on
20   the size of the company, the size of the platform,
21   so on and so forth.
22         Q.  So why was there a license to MTRNetwork
23   for $10,000 for four years and $7,500 for Lifedaily
24   for five years?
25         A.  Again, it's all a negotiation, you know.
```

Case 2:24-cv-04837-FLA-MAR   Document 83-4   Filed 09/05/25   Page 17 of 18   Page ID #:2995

Michael Grecco | Confidential | Michael Grecco Productions, Inc. vs. TikTok, Inc.

```
 1   Their -- clients will make claims of how small they
 2   are, how little money they have, so on and so forth,
 3   unlike TikTok which is a huge multibillion dollar
 4   company.
 5            MR. KEYES:  Exhibit 38, please.
 6            (Exhibit 38, 1/26/20 Michael Grecco
 7   Photography Stock Invoice, GRECCO_000657-
 8   GRECCO_000662, marked for identification.)
 9            THE REPORTER:  Sorry.  I'm going to have to
10   go off the record.
11            MR. KEYES:  Off the record?
12            THE REPORTER:  Yes.  I'm sorry.
13            MR. KEYES:  Yeah.  Now is probably a good
14   time to take a quick break.
15            THE VIDEOGRAPHER:  Time is 4:51 p.m.  We
16   are off the record.
17            (Recess taken from 4:51 p.m. to 5:03 p.m.)
18            THE VIDEOGRAPHER:  Time is 5:03 p.m.  We
19   are back on the record.
20            MR. KEYES:  One housekeeping matter I
21   wanted to mention.  I want to designate this
22   transcript as Confidential.  So if we can have that
23   marked, Ms. Magee, as Confidential, the whole
24   transcript, I'd appreciate it.
25            THE REPORTER:  Okay.  Thank you.
```

| Michael Grecco | Confidential | Michael Grecco Productions, Inc. vs. TikTok, Inc. |
|---|---|---|

```
 1              I, the undersigned, a Certified Shorthand
 2   Reporter of the State of California, do hereby
 3   certify: That the foregoing proceedings were taken
 4   before me at the time and place herein set forth;
 5   that any witnesses in the foregoing proceedings,
 6   prior to testifying, were administered an oath; that
 7   a record of the proceedings was made by me using
 8   machine shorthand which was thereafter transcribed
 9   under my direction; that the foregoing transcript is
10   a true record of the testimony given.
11              Further, that if the foregoing pertains to
12   the original transcript of a deposition in a Federal
13   Case, before completion of the proceedings, review
14   of the transcript [ ] was [X] was not requested.
15              I further certify I am neither financially
16   interested in the action nor a relative or employee
17   of any attorney or any party to this action.
18              IN WITNESS WHEREOF, I have this date
19   subscribed my name.
20   Dated: July 23, 2025
21
22
23   _____
24          Susan F. Magee, RPR, CCRR, CLR
            CSR No. 11661
25
```

**Page 329**