1   DORSEY & WHITNEY LLP
    J. Michael Keyes (SBN 262281)
2     *keyes.mike@dorsey.com*
    Connor J. Hansen (*pro hac vice*)
3     *hansen.connor@dorsey.com*
    Dylan J. Harlow (*pro hac vice*)
4     *harlow.dylan@dorsey.com*
    701 Fifth Avenue, Suite 6100
5   Seattle, WA 98104
    Telephone: 206.903.8800
6   Facsimile: 206.903.8820

7   DORSEY & WHITNEY LLP
    Kent J. Schmidt (SBN 195969)
8     *schmidt.kent@dorsey.com*
    600 Anton Boulevard, Suite 200
9   Costa Mesa, CA 92626
    Telephone: 714.800.1400
10  Facsimile: 714.800.1499

11  *Attorneys for Defendant TikTok, Inc.*

12              **UNITED STATES DISTRICT COURT**

13              **CENTRAL DISTRICT OF CALIFORNIA**

14

15  MICHAEL GRECCO                    Case No. 2:24-CV-04837-FLA-MAR
    PRODUCTIONS INC.,
16                                    **DEFENDANT'S REPLY IN**
                                      **SUPPORT OF ITS MOTION FOR**
17              *Plaintiff*,          **SUMMARY JUDGMENT OR**
                                      **PARTIAL SUMMARY JUDGMENT**
18  v.
                                      Hon. Fernando L. Aenlle-Rocha
19  TIKTOK, INC.,                     Date: September 26, 2025
                                      Time: 1:30pm
20              *Defendant*.          Courtroom: 6B
21
22                                    Filed concurrently with:
                                      (1) Response to Plaintiff's Statement of
23                                        Genuine Disputes of Material Fact;
24                                    (2) Objections to Plaintiff's Evidence
                                        and [Proposed] Order Relating to
25                                        Those Objections
26
27
28

DEFENDANT'S NOTICE OF MOTION
AND MOTION TO DISMISS COMPLAINT            Case No. 2:24-CV-04837-FLA-MAR

# **TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................. 1

II.  ARGUMENT ................................................................................... 1

    A.   Plaintiff's Takedown Notices Are Ineffective and Grecco's Contradictory Declaration Cannot Create a Genuine Dispute of Fact ........................................................................................... 1

        1.   The Sham Affidavit Rule ........................................................... 2

        2.   Grecco's Subsequent Testimony Is Barred by the Sham Affidavit Rule Because it Contradicts His Original Testimony ................................................................................ 3

        3.   Plaintiff Cannot Establish Defendant Had the Requisite Knowledge of the Infringement ............................................... 5

    B.   There is No Evidence of a "Direct Financial Benefit" and Plaintiff's Vicarious Copyright Infringement Claim Fails ................. 7

        1.   The Undisputed Facts Establish TTI Did Not Receive a Direct Financial Benefit from the Alleged Infringement .......... 7

        2.   Plaintiff's Arguments are Irrelevant to the Alleged Infringements and Fail to Show a Causal Connection .............. 8

    C.   Plaintiff Concedes it Is Not Seeking TTI's Profits ........................... 10

    D.   The Court Should Grant Summary Judgment as To Plaintiff's Actual Damages ................................................................................ 10

III.  CONCLUSION ............................................................................... 13

# TABLE OF AUTHORITIES

**Cases**                                                                                  **Page(s)**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................. 10

*Attachmate Corp. v. Health Net, Inc.*,
    No. C09-1161 MJP, 2010 U.S. Dist. LEXIS 156918
    (W.D. Wash. June 18, 2010) ...................................................... 11

*BackGrid USA, Inc. v. Twitter Inc.*,
    No. CV 22-9462-DMG-ADS, 2024 U.S. Dist. LEXIS 103090
    (C.D. Cal. June 7, 2024) ............................................................. 7

*Chalumeau Power Sys. LLC v. Alcatel-Lucent*,
    No. 11-1175-RGA, 2012 U.S. Dist. LEXIS (D. Del. July 18, 2012) .................. 6

*Chapman v. Maraj*,
    No. 2:18-cv-09088-VAP-SSx, 2020 U.S. Dist. LEXIS 198684
    (C.D. Cal. Sep. 16, 2020) ........................................................... 4

*Cleveland v. Policy Mgmt. Sys. Corp.*,
    526 U.S. 795 (1999) ................................................................... 2

*Corbis Corp. v. Amazon.com, Inc.*,
    351 F. Supp. 2d 1090 (W.D. Wash. 2004) ..................................... 6

*Davis v. Pinterest, Inc.*,
    No. 19-cv-07650-HSG, 2021 U.S. Dist. LEXIS 44173
    (N.D. Cal. Mar. 9, 2021) ......................................................... 5, 6

*Ellison v. Robertson*,
    357 F.3d 1072 (9th Cir. 2004) ................................................ 7, 8, 9

*Erickson Prods. v. Kast*,
    921 F.3d 822 (9th Cir. 2019) ...................................................... 8

*Fazio v. City & County of San Francisco*,
    125 F.3d 1328 (9th Cir. 1997) .................................................. 10

*Fox Broad. Co. v. Dish Network, L.L.C.*,
    No. CV 12-04529-DMG, 2014 U.S. Dist. LEXIS 182473
    (C.D. Cal. Aug. 11, 2014) ........................................................ 12

*Grecco v. Age Fotostock Am., Inc.*,
   No. 21-cv-423 (JSR), 2021 U.S. Dist. LEXIS 227974
   (S.D.N.Y. Nov. 29, 2021)......................................................................... 11

*Hansen Bev. Co. v. Vital Pharm., Inc.*,
   No. 08-CV-1545-IEG (POR), 2010 U.S. Dist. LEXIS 79218
   (S.D. Cal. Aug. 3, 2010).......................................................................... 12

*Hanson v. Alpine Valley Ski Area, Inc.*,
   718 F.2d 1075 (Fed. Cir. 1983) ............................................................... 11

*Ipvx Patent Holdings v. 8x8, Inc.*,
   No. C 13-1707 SBA, 2014 U.S. Dist. LEXIS 205789
   (N.D. Cal. Mar. 31, 2014) ......................................................................... 6

*Jarvis v. K2 Inc.*,
   486 F.3d 526 (9th Cir. 2007)................................................................... 10

*Kennedy v. Allied Mut. Ins. Co.*,
   952 F.2d 262 (9th Cir. 1991)................................................................. 2, 3

*Lenz v. Universal Music Corp.*,
   815 F.3d 1145 (9th Cir. 2016)................................................................ 1, 4

*Louis Vuitton Malletier S.A. v. Akanoc Sols., Inc.*,
   591 F. Supp. 2d 1098 (N.D. Cal. 2008) ..................................................... 9

*Luvdarts, Ltd. Liab. Co. v. AT&T Mobility, Ltd. Liab. Co.*,
   710 F.3d 1068 (9th Cir. 2013)................................................................... 6

*Michael Grecco Prods. v. StudioBinder Inc.*,
   No. 8:24-cv-01649-DOC-AJR, 2024 U.S. Dist. LEXIS 241695
   (C.D. Cal. Oct. 8, 2024)......................................................................... 11

*Morrow v. Stay Winning Boutique LLC*,
   No. 2:23-cv-2167 WBS AC, 2025 U.S. Dist. LEXIS 36659 (E.D.
   Cal. Feb. 27, 2025) ............................................................................... 11

*Oracle Corp. v. SAP AG*,
   765 F.3d 1081 (9th Cir. 2014).................................................................. 12

REPLY IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT        Case No. 2:24-CV-04837-FLA-MAR

*Perez v. Target Corp.*,
  No. SACV 11-823-JST, 2011 U.S. Dist. LEXIS 124095 (C.D. Cal.
  Oct. 25, 2011) ................................................................................................. 3, 4

*Perfect 10, Inc. v. Amazon.com*,
  508 F.3d 1146 (9th Cir. 2007) ........................................................................... 5

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*,
  213 F. Supp. 2d 1146 (C.D. Cal. 2002) .............................................................. 6

*Perfect 10, Inc. v. Giganews, Inc.*,
  847 F.3d 657 (9th Cir. 2017) .......................................................................... 5, 9

*Perfect 10, Inc. v. Giganews, Inc.*,
  No. CV 11-07098-AB, 2014 U.S. Dist. LEXIS 183590
  (C.D. Cal. Nov. 14, 2014) ................................................................................. 9

*Top Brand LLC v. Cozy Comfort Co. LLC*,
  688 F. Supp. 3d 924 (D. Ariz. 2023) ............................................................... 10

*UMG Recordings, Inc. v. Shelter Capital Partners Ltd. Liab. Co.*,
  718 F.3d 1006, 1022 (9th Cir. 2013) ................................................................. 2

*United States Sec. Holdings v. Andrews*,
  No. CV 21-2263 DSF, 2021 U.S. Dist. LEXIS 253321
  (C.D. Cal. Dec. 24, 2021) .................................................................................. 4

*Van Asdale v. Int'l Game Tech.*,
  577 F.3d 989 (9th Cir. 2009) .......................................................................... 2, 4

*VHT, Inc. v. Zillow Group, Inc.*,
  918 F.3d 723 (9th Cir. 2019) ............................................................................. 5

**Statutes**

17 U.S.C. § 504(b) ............................................................................................. 10

17 U.S.C. § 512(c) ............................................................................................... 6

## I.    <u>INTRODUCTION</u>

Summary judgment is appropriate because Plaintiff's Opposition (Dkt. 78) fails to identify any genuine disputes of material fact.

Grecco repeatedly testified during his deposition that he *did not* review the alleged infringements and Plaintiff *did not* consider fair use before sending its takedown notices to TTI. This renders Plaintiff's takedown notices ineffective as a matter of law, leaving no evidence TTI had knowledge of the alleged infringement. Now, Grecco contradicts his clear testimony by stating in his declaration that he *did* review the alleged infringements and he (or someone) *did* subjectively consider fair use. His conclusory and contradictory declaration cannot create a dispute of fact under the Sham Affidavit Rule, and the Court should grant TTI summary judgment on both of Plaintiff's claims.

The undisputed facts further establish TTI did not receive a direct financial benefit from the alleged infringement. Plaintiff offers no evidence, instead arguing TikTok makes money in general. This is legally and factually insufficient. Summary judgment is necessary on Plaintiff's vicarious copyright infringement claim.

Finally, Plaintiff has failed to present evidence demonstrating what a willing licensee like TTI or its users would pay to license the Asserted Works. Plaintiff's "retroactive licenses" were entered into under threat of litigation and its few remaining licenses are not at all comparable. Left with nothing but speculation, the Court should grant summary judgment on Plaintiff's claim for actual damages.

## II.    <u>ARGUMENT</u>

### A.    **Plaintiff's Takedown Notices Are Ineffective and Grecco's Contradictory Declaration Cannot Create a Genuine Dispute of Fact**

Plaintiff does not dispute that, before sending takedown notice to TTI, it was required to consider in good faith whether each allegedly infringing use of its photographs was fair use. *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1153 (9th

REPLY IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT         Case No. 2:24-CV-04837-FLA-MAR

1   Cir. 2016) ("[A] copyright holder must consider the existence of fair use before
2   sending a takedown notification"); *see* Dkt. 78 at 6-7.  Nor does it dispute that an
3   ineffective takedown notice does not impute knowledge on a service provider.  *See*
4   *UMG Recordings, Inc. v. Shelter Capital Partners Ltd. Liab. Co.*, 718 F.3d 1006,
5   1022 (9th Cir. 2013) (explaining the exclusionary rule).  And yet, it is undisputed
6   that: Plaintiff used a template to prepare its takedown notices; Plaintiff sends TTI a
7   notice automatically if a user does not have a license; and Grecco was responsible
8   for considering fair use before the notices were sent.  Fact Nos. 51-61.  Based on
9   Grecco's sworn deposition testimony, no reasonable jury could find that Plaintiff did
10  consider fair use as required.  Plaintiff now attempts to dispute this by offering a
11  declaration from Grecco (Dkt. 78-3) that clearly contradicts his prior sworn
12  deposition testimony.  Plaintiff's subsequent testimony is barred by the Sham
13  Affidavit Rule.  Grecco's original testimony that he did not consider fair use,
14  including because it is "BS," controls for summary judgment.

### 1.      The Sham Affidavit Rule

16      "[A] party cannot create a genuine issue of fact sufficient to survive summary
17  judgment simply by contradicting his or her own previous sworn statement (by, say,
18  filing a later affidavit that flatly contradicts that party's earlier sworn deposition)
19  without explaining the contradiction or attempting to resolve the disparity."
20  *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806, (1999).  This "Sham
21  Affidavit Rule" is necessary because if a party "could raise an issue of fact" by
22  "contradicting his own prior testimony, this would greatly diminish the utility of
23  summary judgment as a procedure for screening out sham issues of fact." *Kennedy*
24  *v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991).  The Ninth Circuit
25  considers whether (1) the later testimony is "actually a sham" and (2) the
26  inconsistencies are "clear and unambiguous." *Van Asdale v. Int'l Game Tech.*, 577
27  F.3d 989 (9th Cir. 2009).  Sham testimony is "testimony that *flatly contradicts* earlier

28

REPLY IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT                          Case No. 2:24-CV-04837-FLA-MAR

1  testimony in an attempt to 'create' an issue of fact and avoid summary judgment."

2  *Perez v. Target Corp.*, No. SACV 11-823-JST (SSx), 2011 U.S. Dist. LEXIS 124095,

3  at *4 (C.D. Cal. Oct. 25, 2011) (quoting *Kennedy*, 952 F. 2d at 266) (emphasis in

4  original).

5
6
       2.    *Grecco's Subsequent Testimony is Barred by the Sham Affidavit*
                 *Rule Because it Contradicts His Original Testimony*

7         Grecco repeatedly testified during his deposition that he neither reviewed all

8  the alleged infringements nor considered fair use before Plaintiff sent notices to TTI.

9  Fact Nos. 62–66.   When asked whether he reviewed the alleged infringements,

10  Grecco responded "I did not look at every one, and I did not approve every one."

11  Exh. 4, Grecco Depo. at 209:15-210:2.   When asked whether his "company

12  consider[ed] the doctrine of fair use before issuing the takedown notice with respect

13  to this first video," Grecco unequivocally answered "No."  *Id.* at 211:1-4.   Grecco

14  also testified, twice, that "before [his] company issued any of the takedown notices

15  in this case . . . [he] didn't consider fair use."  *Id.* at 211:9-15, 260:18-24.   Grecco

16  even mocked the fair use doctrine, calling it "a BS defense that every infringer has

17  no defense uses and we hear every day," explaining "we call it the FU defense for a

18  reason." *Id.* at 211:1-8.

19         Plaintiff seeks to obscure this clear testimony by relying in part on the

20  following subsequent deposition testimony, elicited by Plaintiff's counsel:

21
22
      [Plaintiff's Counsel]: So is it fair to say that, when you are considering
      enforcing your copyrights, fair use is one of those considerations?

23      MR. KEYES: Objection. Leading.

24      THE WITNESS: Yes. . . .

25  Dkt. 78 at 8 n.7 (citing Alejandrino Decl. at ¶ 4, Exhibit B, at Grecco Tr. 325:11-15;

26  Grecco Decl., at ¶ 13).  But in simply replying "[y]es," Grecco was not elaborating

27  or simply clarifying his prior deposition testimony.   Such subsequent testimony,

28  elicited by Plaintiff's counsel through leading questions, clearly contradict Grecco's

prior testimony.  This sham testimony is barred under the Sham Affidavit Rule.  *See
Perez*, 2011 U.S. Dist. LEXIS 124095, at *4; *United States Sec. Holdings v. Andrews*,
No. CV 21-2263 DSF (MRWx), 2021 U.S. Dist. LEXIS 253321, at *21 n.4 (C.D.
Cal. Dec. 24, 2021) (sham affidavit rule applies to subsequent deposition testimony).

Grecco also presents the following statements in his Declaration to contradict
his original deposition testimony:

- "I did review the infringements that were subject of the DMCA
  takedown notices.  In my review, I subjectively believed that
  none of the uses by Defendant's users was fair use." Dkt. 78-3
  ¶ 14.

- "A fair use assessment is made before sending out a DMCA
  takedown notice, as that is within Plaintiff's standard operating
  procedure." Dkt. 78-3 ¶ 13.

The inconsistencies between Grecco's original testimony and this new testimony are
clear and unambiguous.[1]  *Van Asdale*, 577 F.3d at 998-999.  Plaintiff cannot "pay[]
lip service to the consideration of fair use by claiming it formed a good faith belief
when there is evidence to contrary." *Lenz*, 815 F.3d at 1154.  Plaintiff impermissibly
"seeks to claw back [Grecco's] prior testimony to create additional issues of fact on
summary judgment." *Chapman v. Maraj*, No. 2:18-cv-09088-VAP-SSx, 2020 U.S.
Dist. LEXIS 198684, *9 (C.D. Cal. Sep. 16, 2020) (applying the Sham Affidavit Rule
in a copyright case).  Grecco "offers a new version of contradictory events[,]" which
"is exactly what the sham affidavit doctrine aims to prevent." *Id*.  Thus, the Court
should treat as undisputed the facts that before the takedown notices were submitted

---

[1] Grecco also testified that the takedown process is "automated that, if there's no
license, [his contractors] send a takedown notice." Exh. 4, Grecco Depo. at 208:19-
209:7.  He explained, "sans license and sans being tagged, its infringing so that's my
rule. . . . .  They look to see if anyone's licensed it. . . .  And if it's not, they send a
takedown notice."  *Id*. at 210:18-25.  Grecco's declaration now indicates the
contractors send a notice if they "do not locate a license, *and the use is determined
not to be fair use*." Dkt. 78-3 ¶ 11 (emphasis added).  This new testimony contradicts
Grecco's testimony regarding his "rule" and likewise fails to create a dispute of fact.

REPLY IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT                    Case No. 2:24-CV-04837-FLA-MAR

(1) Grecco did not review each alleged infringement; and (2) Plaintiff did not consider fair use (and nor did anyone else). Fact No. 62, 64.

Based on Grecco's original, controlling testimony, no reasonable jury could find the "good faith belief" statements in Plaintiff's automated takedown notices were true, rendering those notices ineffective as a matter of law. Dkt. 70-1 at 9-12.[2]

### 3. Plaintiff Cannot Establish Defendant Had the Requisite Knowledge of the Infringement

Plaintiff's ineffective takedown notices cannot be used to show TTI had knowledge of the alleged infringements under the DMCA's exclusionary rule. Dkt. 70-1 § IV.A. Accordingly, Plaintiff cannot demonstrate TTI possessed the knowledge of specific acts of infringement needed for its contributory copyright infringement claim. *See Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 671 (9th Cir. 2017) (contributory infringement requires "actual knowledge that specific infringing material is available using its system") (quoting *Perfect 10, Inc. v. Amazon.com*, 508 F.3d 1146, 1172 (9th Cir. 2007)). Similarly, Plaintiff cannot demonstrate TTI had sufficient information to "identify infringing [] photos among the many photos that users saved or uploaded daily." *VHT, Inc. v. Zillow Group, Inc.*, 918 F.3d 723, 746 (9th Cir. 2019) (the control prong of vicarious infringement requires "the practical ability" to identify and limit direct infringement).

Plaintiff now relies on the service of its Complaint as evidence of TTI's knowledge. Dkt. 78 at 9-11. But courts require "knowledge of copyright infringement *prior to* [Plaintiff's] filing of the complaint." *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1170 (C.D. Cal. 2002) (emphasis

---

[2] Plaintiff argues elsewhere that TTI "has numerous ways to supervise and control the content that is uploaded onto its Platform," Dkt. 78 at 12-13, but takes the cited testimony out of context. To be clear, TTI does not have the capability to screen the billions of videos on its platform for use of third-party copyrights, and accordingly relies on legally effective takedown notices, which were not provided here as shown.

REPLY IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT                    Case No. 2:24-CV-04837-FLA-MAR

added).   For instance, in *Davis v. Pinterest, Inc.,* a contributory copyright infringement claim was dismissed because "[a]lthough the amended complaint identifies various instances where Plaintiff claims his photographs are available on Defendant's website" it did not allege Defendant was aware of those instances.  No. 19-cv-07650-HSG, 2021 U.S. Dist. LEXIS 44173, at *8-9 (N.D. Cal. Mar. 9, 2021); *see also Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1107 (W.D. Wash. 2004) (finding no evidence of actual knowledge where plaintiff "decided to file [an] infringement suit" instead of sending takedown notices).  Similarly, in *Luvdarts, Ltd. Liab. Co. v. AT&T Mobility, Ltd. Liab. Co.*, Plaintiff's notices did not comply with the DMCA and the contributory copyright infringement claim was dismissed because there was no allegation of knowledge, despite the fact a complaint had been filed. 710 F.3d 1068, 1073 (9th Cir. 2013).  Indeed, the pre-litigation DMCA takedown notice requirements under Section 512(c), would be rendered meaningless if copyright plaintiffs could ignore them and go straight to court.

In opposition, Plaintiff relies on two patent cases, one of which relates to notice required to establish *damages* and in the unique context of a methods patent.  *Ipvx Patent Holdings v. 8x8, Inc.*, No. C 13-1707 SBA, 2014 U.S. Dist. LEXIS 205789, at *14 (N.D. Cal. Mar. 31, 2014).   The other actually undermines Plaintiff's argument, noting "service of the original complaint gives defendants actual notice *of the patent's existence*," yet dismissing the "indirect infringement" claim because the complaint lacked "plausible allegation[s] of knowledge *of the infringing use*." *Chalumeau Power Sys. LLC v. Alcatel-Lucent*, No. 11-1175-RGA, 2012 U.S. Dist. LEXIS at *3 (D. Del. July 18, 2012) (emphasis added).

Plaintiff's ineffective takedown notices cannot confer knowledge on TTI and Plaintiff has no other evidence to establish that knowledge.  Plaintiff's claims for contributory and vicarious copyright infringement fail as a matter of law.

REPLY IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT                    Case No. 2:24-CV-04837-FLA-MAR

**B.      There is No Evidence of a "Direct Financial Benefit" and Plaintiff's Vicarious Copyright Infringement Claim Fails**

Plaintiff fails to refute that TTI received no "direct financial benefit" from the alleged infringements at issue—an "essential element" of a vicarious copyright infringement claim. *Ellison v. Robertson*, 357 F.3d 1072, 1079 n. 10 (9th Cir. 2004) (granting summary judgment due to no evidence of a direct financial benefit). Plaintiff concedes it must show a "proximate cause between the infringing activity and any financial benefit to the defendant." Dkt. 78 at 14 (citing *BackGrid USA, Inc. v. Twitter Inc.*, CV 22-9462-DMG-ADS, 2024 U.S. Dist. LEXIS 103090, at *15-16 (C.D. Cal. June 7, 2024)). Yet, Plaintiff points only to TTI's general revenue rather than anything connected to the alleged infringements.

1.      *The Undisputed Facts Establish TTI Did Not Receive a Direct Financial Benefit from the Alleged Infringement*

The following facts are undisputed:

- Plaintiff has no evidence to show that users joined TikTok because of the alleged infringement. Fact Nos. 67-68.

- Plaintiff has no evidence to suggest that users were drawn to TikTok because of the alleged infringement. Fact No. 69.

- None of the Asserted Works have been used in advertising on TikTok. Fact No. 71.

- None of the Asserted Works have been used on TikTok Shop or to promote or sell any products. Fact Nos. 72-73.

Plaintiff purportedly disputes the facts that (1) TTI did not derive any revenue and did not receive any financial benefit from the alleged infringement; and (2) TTI does not make profits from Users who monetize through the Creator Program. Fact Nos. 76-79. However, there are no genuine disputes here. Plaintiff attempts to muddy the waters by arguing "TikTok makes money from people uploading content, in broad terms." *Id.* It relies on Ms. Boutros' testimony that "broadly speaking" TTI "can make money from advertisement or brand partnerships, maybe through TikTok

-7-

1    Shop sales." *Id.*  But, it is undisputed that did not happen in this case.  Fact Nos. 71-

2    73.

3        Plaintiff next attempts to "dispute" these facts by arguing Ms. Boutros did not

4    know every single way in which TTI makes money.  Fact Nos. 76–79.  This is beside

5    the point.  Ms. Boutros repeatedly and unequivocally testified that TTI did not make

6    any revenues *from the alleged infringements* at issue.  Exh. 6, Boutros Depo. at 27:5-

7    12; 27:7-18 ("TikTok generates their money from other revenue streams.  It's not

8    from creators who are creating content"); 95:3-7 ("Q: Is it your testimony that TikTok

9    did not receive any financial benefit from the usage of any of the photos in this

10   lawsuit? A: My testament is that TikTok did not generate any funds."); 95:8-10 ("Q:

11   So they did not receive any financial benefit here? A: No."); 97:9-12 ("TikTok . . .

12   didn't receive a financial benefit from photographs that were shown for second in

13   featured videos"); Dkt. 70-3, Boutros Decl. ¶ 14 ("TTI did not generate any revenue

14   or profits from the use of the Asserted Works").  No material disputes exist in light

15   of this clear testimony.

16        2.    *Plaintiff's Arguments are Irrelevant to the Alleged Infringements*

17              *and Fail to Show a Causal Connection*

18        With no evidence of financial benefit related to the alleged infringement,

19   Plaintiff resorts to arguing that TikTok makes money *in general*.  Namely, even

20   though none of the Asserted Works were used in advertising, Plaintiff argues

21   "Defendant makes money off of ads" and users "view ads when they are scrolling

22   through content."  Dkt. 78 at 15.  Plaintiff also claims TikTok users are "drawn to

23   TikTok for entertainment" and "users were entertained by the [allegedly] infringing

24   content" as purportedly shown by "likes/views/comments" on the allegedly

25   infringing content.  *Id.* at 15-16.  But these same arguments could be made about *any*

26   content on TikTok and if a platform like TTI had "a direct financial interest in

27   everything on the website that enhanced its appeal to potential customers," then "the

28

-8-

1    requirement of a causal link would be erased." *Erickson Prods. v. Kast*, 921 F.3d
2    822, 829-30 (9th Cir. 2019).

3        In *Ellison*, a case on which both parties rely, the plaintiff's copyrighted short
4    stories were uploaded to defendant's "USENET" network by third-party users.  357
5    F.3d at 1074.  The plaintiff presented evidence that USENET "helps to encourage
6    overall subscriptions" and that defendant's "revenue is directly dependent upon
7    increases in its userbase." *Id.* at 1079.  The Ninth Circuit found this evidence "hardly
8    compelling" and granted summary judgment because plaintiff "ha[d] not offered
9    enough evidence for a reasonable juror" to find a "causal relationship" between
10   defendant's profits and the infringing activity.  *Id.*  The record lacked evidence that
11   defendant "attracted or retained subscribers because of the infringement."  *Id.*; *see
12   also Louis Vuitton Malletier S.A. v. Akanoc Sols., Inc.,* 591 F. Supp. 2d 1098, 1110
13   (N.D. Cal. 2008) (granting summary judgment where plaintiff did not "offer any
14   evidence showing that customers sought or abandoned Defendants' services" due to
15   the infringement).  Like in *Ellison*, Plaintiff has failed to adduce evidence that users
16   were drawn to TikTok *due to the alleged infringement*, which forecloses finding any
17   direct financial benefit to TTI.  Fact Nos. 67–69.

18       To the extent Plaintiff argues TTI financially benefited from users liking,
19   viewing, or commenting on the allegedly infringing content, that fails as well.
20   *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB (SHx), 2014 U.S. Dist.
21   LEXIS 183590, at *11 (C.D. Cal. Nov. 14, 2014), *aff'd* 847 F.3d 657 (9th Cir. 2017)
22   ("Nor is it sufficient to prove that some Giganews' subscribers accessed or posted
23   infringing material once they had already subscribed to Giganews.").  To draw the
24   requisite causal connection, a jury would have to find that the small number of users
25   who engaged with the content did so *because of the inclusion of Plaintiff's
26   photographs*, when the photos are generally shown for a mere seconds in longer
27   videos containing additional content.  Additionally, the jury would need to find that
28

REPLY IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT                    Case No. 2:24-CV-04837-FLA-MAR

these modest likes or shares directly financially benefitted TTI, notwithstanding Ms. Boutros' unrefuted testimony to the contrary. Summary judgment is appropriate because no reasonable jury could draw such tenuous connections. *See, e.g., Giganews*, 847 F.3d at 674 (granting summary judgment where "there was no evidence indicating that anyone subscribed to Giganews because of infringing Perfect10 material").

### C.    Plaintiff Concedes it Is Not Seeking TTI's Profits

Plaintiff "concedes that it is not seeking to recover Defendant's profits under 17 U.S.C. § 504(b)." Dkt. 78 at 17. The Court should grant summary judgment on this issue. *See Top Brand LLC v. Cozy Comfort Co. LLC*, 688 F. Supp. 3d 924, 950 (D. Ariz. 2023).

### D.    The Court Should Grant Summary Judgment as To Plaintiff's Actual Damages

Regarding actual damages stemming from its own purported lost revenue, Plaintiff's failure to present "significant probative evidence" supporting its actual damages justifies granting summary judgment. *See Fazio v. City & County of San Francisco,* 125 F.3d 1328, 1331 (9th Cir. 1997) ("[T]he nonmoving party must introduce some 'significant probative evidence' tending to support the complaint.'") (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986)).

The sole evidence identified in Plaintiff's discovery responses as showing the market value for its works was its website "shopping cart tool." Dkt. 70-1 at 18-19. But Plaintiff admits that this tool was never used to license any of the Asserted Works. Fact Nos. 85–92. Any licensing rates shown by that tool are Plaintiff's subjective hopes or wishes, and are insufficient as a matter of law. *See Jarvis v. K2 Inc.*, 486 F.3d 526, 534 (9th Cir. 2007) (noting the requirement for objective evidence, not what Plaintiff "thought he should have earned or wished he had charged").

-10-

1       Plaintiff attempts to distinguish its "retroactive licenses" from settlement
2  agreements, claiming the former are the result of third parties choosing to take a
3  license.  Dkt. 78 at 18-19.  In reality, Plaintiff's retroactive licenses are coerced
4  agreements entered into under threat of litigation.  Fact Nos. 94–96.  Grecco
5  explained Plaintiff sends demand letters to unauthorized users of Plaintiff's works
6  and negotiates retroactive licenses to "settle a claim" or "resolve a claim for copyright
7  infringement."  Exh. 4, Grecco Depo. at 288:11-15; 290:16-291:4; 292:7-21; 298:16-
8  24; 300:13-301:4.  Failure to respond to such demand letters or to agree to retroactive
9  license will result in litigation.  *E.g.*, *Michael Grecco Prods. v. StudioBinder Inc.*,
10  No. 8:24-cv-01649-DOC-AJR, 2024 U.S. Dist. LEXIS 241695, at *2 (C.D. Cal. Oct.
11  8, 2024) (suing after "Plaintiff sent an email to Defendant about the use of the
12  Photograph and offered Defendant a retroactive licensing fee arrangement" to which
13  the Defendant did not respond); *Grecco v. Age Fotostock Am., Inc.*, No. 21-cv-423
14  (JSR), 2021 U.S. Dist. LEXIS 227974, at *3 (S.D.N.Y. Nov. 29, 2021) (Grecco
15  "demanded a retroactive license" and sued when Defendant refused).  The retroactive
16  licenses are not arms-length agreements, they are a choice between an inflated
17  "license" or costly litigation.
18       As Plaintiff acknowledges, "settlements offered, negotiated, or made under
19  threat of litigation" are not "probative," Dkt. 78 at 19, which includes the retroactive
20  licenses.  *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078 (Fed. Cir.
21  1983) (citation and quotations omitted) (offers "made after the infringement had
22  begun and litigation was threatened or probable" should "not be considered
23  evidence" because they are "strongly influenced by a desire to avoid full litigation").
24  The retroactive licenses simply "do not show what the parties would have willingly
25  negotiated" in "an open and fair market."  *Attachmate Corp. v. Health Net, Inc.*, No.
26  C09-1161 MJP, 2010 U.S. Dist. LEXIS 156918, at *3 (W.D. Wash. June 18, 2010).
27
28

1    Plaintiff—who claims to have extensively licensed its works for decades—
2    only produced *five* "prospective" license agreements. Fact Nos. 94–95. While
3    Plaintiff does not address these agreements directly, it suggests they are evidence of
4    "similar" licenses offered by Plaintiff. Dkt. 78 at 19–20. However, three of these
5    license agreements admittedly do not relate to any of the Asserted Works, Fact Nos.
6    101–106, and therefore shed no light on the licensing rate of the Asserted Works.
7    *See Morrow v. Stay Winning Boutique LLC*, No. 2:23-cv-2167 WBS AC, 2025 U.S.
8    Dist. LEXIS 36659, at *12 (E.D. Cal. Feb. 27, 2025) (rejecting "similar" licenses
9    where the licensed photograph was not the photograph at issue in the case). The
10   remaining two relate to use of photographs in a German magazine [3] and on a
11   Malaysian website, Fact Nos. 107–112, and are not comparable to the type of license
12   at issue here, namely one permitting TTI or a User to use a photograph in a TikTok
13   video or profile picture. *See Fox Broad. Co. v. Dish Network, L.L.C.*, No. CV 12-
14   04529-DMG (SHx), 2014 U.S. Dist. LEXIS 182473, at *14 (C.D. Cal. Aug. 11,
15   2014) ("licenses dissimilar in subject matter or scope to those at issue are irrelevant").
16   Further, Plaintiff has failed to provide any context for why or how these agreements
17   were entered, stating only that they are not retroactive. Fact No. 98; Dkt. 78 at 19-
18   20.

19   Plaintiff next argues that in lieu of similar licenses, "a fact finder could look to
20   industry licenses as a benchmark to determine the market value." Dkt. 78 at 20. But
21   Plaintiff has not identified any such benchmark licenses. Further, as Plaintiff argued
22   in its stricken Motion to Exclude And/Or Strike Defendant's Expert Witness and
23   Report, Grecco will purportedly only testify at trial relating to "licensing his work
24   through Plaintiff" based on "his personal experience" and "his own perceptions."

25
26   [3] Grecco was unsure at his deposition whether this agreement with a German
     magazine relates to an Asserted Work. RSGDF No. 109. Grecco now states it does,
27   but provides no explanation and does not identify the subject Asserted Work. Dkt.
     78-3 ¶ 17.
28

-12-

Dkt. 67 at 13-14.  And Plaintiff has no expert witness, or any other witnesses, who may otherwise be able to testify regarding benchmark licenses. *Id.* at 5.  Accordingly, Plaintiff has no avenue for presenting third-party benchmark licenses to jurors.

Because Plaintiff failed to present evidence establishing a "history of granting similar licenses, and has not presented evidence of 'benchmark' licenses in the industry approximating the hypothetical license in question here," Plaintiff lacks sufficient "objective evidence of the market value of the hypothetical license." *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1093 (9th Cir. 2014) (affirming judgment as a matter of law); *see also Hansen Bev. Co. v. Vital Pharm., Inc.*, No. 08-CV-1545-IEG (POR), 2010 U.S. Dist. LEXIS 79218, at *25-26 (S.D. Cal. Aug. 3, 2010) (granting summary judgment on actual damages for false advertising claims where Plaintiff "fail[ed] to provide a sufficient basis" and "any determination of damages would be speculative").  Plaintiff's actual damages are speculative and a reasonable jury could not determine the market value of the Asserted Works nor whether that market value has been damaged in any way.

## III.  <u>CONCLUSION</u>

Plaintiff's deficient takedown notices are ineffective as a matter of law and did not put Defendant on notice of the alleged infringement.  The undisputed facts also show Defendant did not receive a direct financial benefit from the alleged infringement.  Finally, Plaintiff has only speculation to support its claim for actual damages.  The Court should grant summary judgment in Defendant's favor on each issue addressed in its Motion.

REPLY IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT                    Case No. 2:24-CV-04837-FLA-MAR

Dated:   September 12, 2025         DORSEY & WHITNEY LLP


By:  */s/ J. Michael Keyes*
J. Michael Keyes (SBN 262281)
 *keyes.mike@dorsey.com*
Connor J. Hansen (*pro hac vice*)
 *hansen.connor@dorsey.com*
Dylan J. Harlow (*pro hac vice*)
 *harlow.dylan@dorsey.com*
Columbia Center
701 Fifth Avenue, Suite 6100
Seattle, WA
Telephone:  206.903.8800
Facsimile:   206.903.8820

DORSEY & WHITNEY LLP
Kent J. Schmidt (SBN 195969)
 *schmidt.kent@dorsey.com*
600 Anton Boulevard, Suite 200
Costa Mesa, CA 92626
Telephone:  714.800.1400
Facsimile:   714.800.1499

*Attorneys for Defendant TikTok, Inc.*

1

**L.R. 11-6.2. CERTIFICATE OF COMPLIANCE**

2

The undersigned, counsel of record for Defendant TikTok Inc. certifies that

3

this brief contains 4129 words, which complies with the word limit of L.R. 11-6.

4

5

Dated: September 12, 2025

6

7

/s/ J. Michael Keyes
J. Michael Keyes, SBN 262281

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT                    Case No. 2:24-CV-04837-FLA-MAR

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on September 12, 2025, a true and correct copy of the foregoing was filed electronically using the Court's CM/ECF system, which shall send notification of such filing to all counsel of record.  Any counsel of record who has not consented to electronic service through the Court's CM/ECF system will be served by electronic mail.

*/s/ J. Michael Keyes*
J. Michael Keyes, SBN 262281